## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,

               Plaintiffs,

     v.

FRONTIER COMMUNICATIONS CORP. THE RETIREMENT INVESTMENT & ADMINISTRATION COMMITTEE AND JOHN/JANE DOES 1-10,

               Defendants.

Civil Action No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Mary Reidt ("Plaintiff"), on behalf of the Frontier Communications 401(k) Savings Plan (the "Plan" or "Frontier Plan") and a class of similarly situated participants in the Plan, brings this action against Frontier Communications Corp. ("Frontier"), and the Retirement Investment & Administration Committee (the "Committee"), which is the Plan's administrator, and the individual members of the Committee, pursuant to § 502, and alleging violations of §§ 404, 405, 409, of the Employee Retirement Income Security Act of 1974 ("ERISA") (codified, respectively, at 29 U.S.C. §§ 1132, 1104, 1105, and 1109). Plaintiff alleges the following based upon the investigation conducted by her counsel, including, among other things, a review of filings by Frontier Communications and Verizon Communications, Inc. ("Verizon") with the United States Securities and Exchange Commission and the United States Department of Labor; press releases and other public statements issued by Frontier and Verizon; analyst reports; media reports about Frontier and Verizon; and participant communications sent to Plaintiff by Defendants.

Plaintiff believes that discovery will provide substantial additional evidentiary support for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.      This action concerns the Plan's excessive concentration in Verizon common stock (ticker "VZ"). In July, 2010, Frontier acquired of certain locations from Verizon. As a result, between July, 2010 and December 30, 2011, the Plan received and retained approximately $150 million in Verizon stock, representing over 15 percent of the Plan's total assets. In April, 2016, Frontier acquired additional Verizon assets, and Defendants invested over $200 million of additional Plan assets in Verizon stock. The failure of the Plan's fiduciaries to timely liquidate the Plan's significant holdings in Verizon common stock, and the decision to concentrate Plan investments in Verizon common stock, breached their fiduciary duty under ERISA to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). It also violated ERISA's prudence and loyalty requirements under 29 U.S.C. § 1104(a)(1)(A) and (B). As a result of these breaches, Defendants caused the Plan and the Class to suffer more than $100 million in losses.

2.      Plaintiff is a participant in the Plan. She brings this action concerning the Plan's investment in the common stock of Verizon on behalf of the Plan and a class of participants in the Plan whose retirement assets were invested in Verizon common stock, including the "Verizon Stock Fund," from September 1, 2012 until the present (the "Class Period").

3.      Defendants maintained the Verizon Stock Fund — an undiversified fund invested exclusively in Verizon common stock (traded on the New York Stock Exchange under the ticker "VZ"), as a Plan investment option, through at least July 31, 2018.

4.     Defendants' decision to continue to invest Plan assets in a single company's common stock during the Class Period was a breach of their duties of loyalty, prudence, and diversification under ERISA § 404, 29 U.S.C. § 1104.

5.     Verizon common stock is not an "employer security" as that term is defined under ERISA, and thus, the investments are not exempt from ERISA's diversification requirements.

6.     Defendants breached their fiduciary duties by permitting the Plan to invest in Verizon common stock for several reasons, including, but not limited to, the following:

(a)     *First*, Defendants improperly allowed the Plan to continue offering the Verizon Stock Fund, even though they knew that the Fund was undiversified and, as a result, more volatile and riskier for Plan Participants than alternative investment options;

(b)     *Second*, Defendants caused the Plan to be undiversified by their failure to liquidate the Plan's substantial holdings of Verizon common stock, thereby subjecting the Plan and its participants to the risks associated with being too heavily invested in one company ("company risk") and industry ("industry risk"). At the end of 2016, Verizon common stock represented over 13% of the Plan's total holdings — an imprudent and unnecessary undiversified risk for the workers and retirees who depend on the Plan for their retirement savings.

(c)     *Third*, Defendants' failure to liquidate the Plan's Verizon common stock holdings subjected participants to additional risks because, for much of the Class Period, the Plan was also heavily invested in AT&T common stock. Verizon and AT&T are telecommunications stocks — exposing the Plan to an enormous concentration within a single sector and industry. At the end of 2014, the Plan's Verizon and AT&T common stock holdings collectively comprised more than 15% of the Plan's total assets (7.8% was Verizon; 7.3% was AT&T)

(d)      *Fourth*, the imprudence of Defendants in holding such massive amounts of Verizon common stock is further evidenced by the fact that Verizon is a volatile stock. Indeed, in the year prior to the Plan's new $200 million investment in Verizon stock in 2016, Verizon common stock was approximately 31% more volatile than the stock market as a whole.

(e)      *Fifth*, not only did Defendants fail to remove Verizon from the Plan after the 2010–2011 transfers, they accepted and subsequently failed to remove over $200 million in additional Verizon investment in 2016. Defendants knew long in advance of the December 2011 and April 2016 acquisitions that Verizon stock should be sold. In light of the Verizon Stock Fund's undiversified nature, its volatility, and the facts that it represented the largest investment in the Plan, was positively correlated with another major, undiversified Plan investment (AT&T company stock), and was no longer was an "employer security" exempt from ERISA's diversification requirements, Defendants should have immediately commenced a process to liquidate the Plan's investment in the Verizon Stock Fund.  Had they done so, all or at least most Plan Participants would have divested their Verizon Stock Fund holdings by the beginning of the Class Period or, in the case of participants acquired in 2016, at or shortly after their accounts were acquired by the Plan.

7.      Frontier is liable for the acts of the Committee in that the Committee and its members were acting within the scope of their employment with Frontier. Moreover, Frontier failed to adequately monitor the Committee and its members to ensure that they were meeting their fiduciary obligations.

8.      Prudent fiduciaries of retirement plans would not have permitted such a concentrated investment in the volatile stock of a single company, particularly for so long. Defendants breached their duties under ERISA to diversify the Plan's investments by allowing the

Plan to have an unreasonably high percentage of its assets invested in Verizon common stock during the Class Period.

9.      As a result of these breaches, each of the Defendants are liable to the Plan for the resulting losses. Plaintiff also seeks equitable relief.

## JURISDICTION AND VENUE

10.     <u>Subject Matter Jurisdiction</u>. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11.     <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over all Defendants because they are all residents of the United States and ERISA provides for nation-wide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

12.     <u>Venue</u>. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because it was where the Plan is administered and some or all of the fiduciary breaches for which relief is sought occurred.

## PARTIES

13.     Plaintiff Mary Reidt is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares of Verizon common stock in her Plan account during the Class Period. She is a resident of Spring Hill, Florida. During the Class Period, the value of the Verizon common stock held in Plaintiff's account diminished and Plaintiff, like thousands of other Plan participants, suffered losses resulting from Defendants' breaches of fiduciary duty.

14.     Frontier is a Delaware Corporation with its principal place of business in Norwalk, Connecticut.

15.     Frontier is a fiduciary because it exercised discretionary authority or control over management of the Plan, exercised authority or control over the management or disposition of Plan assets and/or had discretionary authority, and because it had discretionary authority to appoint and

monitor Plan fiduciaries who had authority or control over management or disposition of Plan assets.

16.     The Committee is an unincorporated association with a principal place of business in Norwalk, Connecticut. Upon information and belief, its members are appointed by the Retirement Plan Committee of the Frontier Communications Board of Directors.

17.     The Committee is the named fiduciary of the Plan.  In addition, the Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control over management of the Plan, exercised authority or control over the management or disposition of Plan assets and/or had discretionary authority to appoint and monitor Plan fiduciaries who had authority or control over management or disposition of Plan assets.

18.     John and Jane Does 1-10, inclusive, are the individual members of the Committee, or any other committee(s) responsible for administering the Plans.  Their names and identities are not currently known.

### THE ACQUISITIONS OF VERIZON

19.     On July 1, 2010, Verizon spun-off to its stockholders a subsidiary of Verizon ("Spinco") which held defined assets and liability of the local exchange business and related landline activities of Verizon in predominantly rural areas in 14 states. Immediately following the spin-off, Spinco merged with Frontier. As a result of the spin-off and merger, Verizon stockholders collectively ended up owning approximately 68 percent of Frontier's post-merger equity, with Verizon stockholders receiving one share of Frontier common stock for every 4.165977 shares of Verizon common stock they owned as of June 7, 2010.

20.     As a result of the spin-off and merger, Verizon was given the authority to select three directors to Frontier's Board of Directors. Verizon designated Mr. Edward Fraioli, Ms.

Pamela D.A. Reeve, and Mr. Mark Shapiro to Frontier's board, and they were formally elected to the board on July 6, 2010.

21.     Mr. Fraioli became a member of the Board's Retirement Plan Committee, as did Virginia P. Ruesterholz, an Executive Vice President of Verizion who was elected to the Frontier Board of Directors in August, 2013.

22.     As of January 31, 2012, Ms. Ruesterholz owned over $15 million in Verizon common stock, stock options, and stock-based units of deferred compensation and incentives.

23.     The Board's Retirement Plan committee oversees Frontier's retirement plans, which includes review of the investment strategies and asset performance of the plans and the overall quality of the asset managers.

24.     As a result of the spin-off and merger, a portion of the Verizon Savings Plan for Management Employees was spun off to form the FCCSI Management Plan. The spun-off portion related to employees with accounts under the Verizon Management Plan who became employees of Frontier through the acquisition. Those accounts remained under the FCCSI Management Plan until December 30, 2011, at which time the FCCSI Management Plan was merged in its entirety into the Plan.

25.     Between July 1, 2010, and December 30, 2011, the assets of the FCCSI Management Plan were not assets of the Plan, but both the Plan and the FCCSI Management Plan, along with other defined contribution plans, were held within the Frontier Communications Corporation Master Trust ("DC Master Trust").

26.     Frontier also had a separate trust, the Frontier Communications Pension Plan Master Trust, for its defined benefit plan ("Pension Plan"). Because defined benefit plans promise participants a set level of future benefits, the risk of investment losses is borne by Frontier in the

Pension Plan, whereas the risk of investment losses is borne by participants in defined contribution plans like the Plan.

27.     On December 31, 2011, Verizon stock represented 15.32% of the assets of the DC Master Trust compared with 0.07% of the assets of the Pension Plan. As a result, the DC Master Trust was ***219 times*** more concentrated in Verizon stock than Defendants felt was appropriate for the Pension Plan — for which they bore the investment risk.

28.     Throughout the Class Period, Verizon stock was included in the S&P 500 Index, a diversified stock index tracked by numerous large-cap domestic equity mutual funds. During the Class Period, the S&P 500 and its diversified tracking index funds invested less an 1.5% of their assets in Verizon stock.

29.     Verizon is a telecommunications stock. The largest telecommunications mutual fund in the United States is the T.Rowe Price Comm & Tech Fund (ticker PRMTX), which invests 2.53% of its assets in Verizon stock.

30.     Thus, the Plan is approximately 10 times more concentrated in Verizon than a diversified investment and 6 times more concentrated than a concentrated telecommunications investor.

31.     On October 24, 2014, Frontier acquired the wireline proprieties of AT&T Inc. in Connecticut. Under the terms of the agreement between AT&T and Frontier, certain former AT&T 401(k) Plans were merged into the Plan, and assets of $373,490,876 were transferred into the Plan as of December 31, 2014, of which $114,455,799 was invested in AT&T stock.

32.     AT&T stock is also a telecommunications stock and has many of the same risks as Verizon stock. Over the three years proceeding October 24, 2014, the stock price of AT&T and Verizon were highly correlated (correlation of 0.71) while the correlation between Verizon and

- 8 -

the stock market as a whole, represented by the Vanguard Institutional Index Fund (VINIX), was materially lower (correlation of 0.57). During that time, Verizon and AT&T stocks both exhibited higher risk (measured by standard deviation of return) and lower returns.

33.     As of December 31, 2014, the Plan included, among other investments, a $34.25 million investment in the Frontier Communications Corporation Common Stock Fund ("Frontier Stock Fund"), a $123.18 million investment in the Verizon Communications Inc. Common Stock Fund ("Verizon Stock Fund"), and a $114.46 million investment in the AT&T Inc. Common Stock Fund ("AT&T Stock Fund") (collectively "Single Stock Funds")

34.     While the Master Trust's exposure to a concentration of issuer risk is limited by the diversification of investments across fund elections, that is not true of the Single Stock Funds, each of which invests in the securities of a single issuer.

35.     Defendants limited participant holdings in the Frontier Stock Fund to 15% of their Plan account, but did not have this limit for the Verizon Stock Fund or the AT&T Stock Fund.

36.     In February, 2015, Frontier entered into a new agreement with Verizon to acquire Verizon's wireline proprieties in California, Texas, and Florida. That acquisition, which closed on April 1, 2016, resulted in more Verizon employees becoming employed by Frontier and participants in the Plan.

37.     As part of this acquisition, total assets of $314,663,535 were transferred into the Plan immediately from the Verizon Savings Plan for Management Employees and an additional $719,614,514 was transferred on December 31, 2016, from assets that had previously been held in the Verizon Savings and Security Plan for West Region Hourly Employees.

38.     As of December 31, 2016, the most recent period for which Defendants have submitted data to the United States Department of Labor, the Plan held $354,735,963 in Verizon

common stock (13.15% of Plan assets) and $122,671,845 in AT&T Common Stock (4.55% of Plan assets).

39.     As of the same date, the Pension Plan had over $2.5 billion in assets, none of which were invested in Verizon or AT&T Common Stock. The Pension Plan's largest stock investment, Samsung Electronics Co. LTD, was only $4,181,989 (0.17% of Pension Plan assets).

## DESCRIPTION OF THE PLAN

40.     The Plan is an employee benefit plan within the meaning of ERISA §§ 3(3) and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

41.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) because it provides individual accounts for each participant and benefits based upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which could be allocated to such participants' accounts.

42.     The Plan had over 17,000 participants with account balances as of December 31, 2016.

43.     At all times, the Committee has been responsible for selecting, monitoring, administering, and removing the Plan's investment options.

## SUBSTANTIVE ALLEGATIONS

44.     Defendants breached their fiduciary duties by causing the Plan to invest a significant portion of its assets in Verizon common stock for an unreasonable amount of time.

45.     Defendants knew or should have known that the Plan was excessively and dangerously concentrated in Verizon stock as a result of the December, 2011, transfer of significant quantiles of Verizon stock into the Plan.

46.     Had Defendants implemented a  proper process to remove Verizon stock from the Plan, an undiversified, single-stock fund, they would have divested the Plan of Verizon stock by December, 2012.

47.     Defendants' decision to maintain Verizon stock not only breached their duties of prudence and diversification, it was tainted by Defendants' conflicted loyalties to Verizon and Verizon shareholders. Verizon and its shareholders effectively controlled the Frontier Board of Directors Retirement Plan Committee and, as a result, controlled the Committee – which was responsible for selecting and monitoring the Plan's investments.

48.     Because a Plan divestiture of Verizon stock would have put material downward pressure on price of Verizon stock, Defendants were incentivized to continue the Plan's investment in Verizon.

49.     The Plan's lack of diversification became more acute in 2014 when the Plan acquired a significant amount of AT&T stock and created the "AT&T Common Stock Fund," a single-stock fund comprised of AT&T stock whose performance was (and is) highly correlated to Verizon stock's performance.

50.     The Plan's lack of diversification became worse in 2016 when the Plan acquired over $200 million in additional Verizon stock, bringing the Plan's total investment in Verizon to over 13% of Plan assets and rendering the Plan ***77 times*** more concentrated in Verizon stock than the level of single-stock concentration Defendants allow the Pension Plan, for which they bear the investment risk.

**THE PLAN'S MASSIVE INVESTMENT IN VERIZON STOCK WAS IMPRUDENT**

51.     The sheer size of the Plan's holdings in Verizon common stock was unreasonable by any measure.

52.     According to Morningstar, out of all mutual funds available in the market, the fund owning the most Verizon stock is the Vanguard Total Stock Market Index Fund which invests 0.74% of its assets in Verizon Stock. Moreover, because the Vanguard Total Stock Market Index Fund was also the single largest holding of the Plan, the Plan already had a market exposure to Verizon even without the concentrated Verizon Stock Fund.

53.     Out of the ten largest institutional owners of Verizon stock, none approach the level of concentration Defendants permit in the Plan.



54.     Overall, Vanguard Group, Inc. invests only 0.62% of its assets in Verizon. State Street Corporation invests 0.65% of its assets in Verizon, BlackRock Inc. invests 0.58% of its assets in Verizon, Capital Research Group Investors invest 1.94% of their assets in Verizon.

BlackRock Institutional Trust Company NA invests 0.68% of its assets in Verizon, Wellington Management Company LLP Investments 1.22% of its assets in Verizon, Capital World Investors invest 0.72% of their assets in Verizon, Fidelity invests 0.38% of its assets in Verizon, Northern Trust Invests 0.61% of its assets in Verizon, and T.Rowe Price Associates, Inc. invests 0.36% of its assets in Verizon.

55.     Thus, the Plan has ***almost seven times*** the concentration of Verizon stock as the most concentrated of Verizon's top ten investors.

56.     The Plan's investment in Verizon was also grossly disproportionate compared to Frontier's defined benefit plan, which the Committee also administers and which does not invest a single dollar in Verizon stock.

57.     Defendants knew about the substantial risk of this lack of diversification. While Defendants limited participant investment in Frontier stock — for which ERISA's diversification requirements are waived because Frontier is an employer security — they failed to limit participant investment in Verizon (or AT&T) stock.

58.     The overly concentrated position in Verizon common stock should have been a red flag to the Defendants that they needed to diversify the Plan's assets in order to avoid the risk of large losses and ensure the Plan's assets were invested prudently. Defendants, however, failed to independently assess and monitor the Plan's holdings of Verizon common stock to ensure they were prudent and that the Plan was reasonably diversified. Not only have Defendants taken no action to remove or curtail the Verizon stock from the Plan, they have accepted and maintained additional Verizon stock as a result of the 2016 acquisition.

59.     Defendants caused the Plan to hold and continue holding massive amounts of Verizon common stock because Defendants did not follow an appropriate process in evaluating

the prudence of Verizon common stock and if the Plan's assets were diversified. Their failures cost the Plan participants millions of dollars.

60.     Verizon common stock was not a "qualifying employer security" for the Plan. ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2), provides that ERISA's duties of prudence and diversification are not violated "by acquisition or holding of . . . qualifying employer securities."

61.     As of the date of separation, however, Verizon stock was not a "qualifying employer security" with respect to the Plan.

62.     ERISA § 3(5), 29 U.S.C. § 1002(5) defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."

63.     ERISA § 407(d)(1), 29 U.S.C. 1107(d)(1), defines "employer security" as a "security issued by an employer of employees covered by the plan, or by an affiliate of such employer." Under ERISA, a "qualifying employer security" is an "employer security" that is either a stock, a marketable obligation (*e.g.*, a bond) or an interest in a publicly traded partnership. See ERISA § 407(d)(5), 29 U.S.C. § 1107(d)(5).

64.     Frontier and Verizon are and have always been independent companies.  The companies have separate defined contribution retirement plans covering their own employees.

65.     Verizon has not paid Plan participants' wages, contributed to the Plan or otherwise acted in Frontier's interests concerning the Plan. Accordingly, Verizon is not an "employer" for the Plan.

66.     At no time has Verizon been an "affiliate" of Frontier. Under ERISA § 407(d)(7), 29 U.S.C. § 1107(d)(7), a corporation is an "affiliate" of an employer if it is a member of a "controlled group of corporations," a term defined as when a parent corporation owns stock

possessing at least 50% of the subsidiary's voting power or when five or fewer individuals, estates or trusts own stock possessing at least 50% of each corporation's voting power. *Id.* (citing 26 U.S.C. § 1563). Verizon and Frontier are both independent, publicly traded companies, and were so throughout the Class Period.

67.     As Verizon was not an "employer" or an "affiliate" for the Plan, Verizon stock is not a "qualifying employer security."

68.     Defendants had a continuing duty to assess the appropriateness of the Plan's holdings of Verizon common stock and the Verizon Stock Fund under *Tibble v. Edison International*, 135 S. Ct. 1823 (2015). As alleged above, Defendants breached their fiduciary duties by allowing the Plan to continue to hold and invest in the Verizon common stock and the Verizon Stock Fund.

69.     ERISA requires prudent fiduciaries to diversify the plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C) [29 U.S.C. § 1104(a)(1)(C)]. ERISA's legislative history indicates that a fiduciary should not invest an "unreasonably large percentage" of plan assets in a "single security," in "one type of security," or in "various types of securities that are dependent upon success of one enterprise or upon conditions in one locality." *See* ERISA Conference Report on H.R. 2, H.R. Rep. No. 1280, 93d Cong., 2d Sess. 300, 304 (Aug. 12, 1974).

70.     Because the value of any single stock is tied to the fortunes of one company, holding a single stock is unduly risky. By contrast, investors who hold a diverse portfolio of stocks and bonds face less risk because they have only a small stake in each company. *See* N. Gregory Mankiw, Principles of Economics 546 (1998); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 415 (4th Cir. 2007); *Steinman v. Hicks*, 352 F.3d 1101, 1104 (7th Cir. 2003).

71.     Defendants recognized the importance of diversification.  The SPD recognizes "the importance of maintaining a well-balanced and diversified investment portfolio." *See* SPD at p. 11.

72.     Defendants permitted the Plan to invest far too much in Verizon stock, as alleged above.  As further alleged above, when combined with the AT&T stock held by the Plan, the holding of Verizon stock was even more egregiously undiversified because the two securities are in the same industry and their stock returns are highly correlated.

73.     Given the lack of diversification, Defendants failed to take action that a prudent fiduciary would have taken to stop these losses, and the risk of future large loss, that Plan participants were or could be suffering. Defendants did not liquidate the Plan's holdings of Verizon common stock or remove the Verizon Stock Fund as a Plan investment or otherwise act to save the Plan from losing millions of dollars in hard-earned retirement savings.

## DEFENDANTS' IMPRUDENCE CAUSED LOSSES TO THE PLAN

74.     Unfortunately, the Defendants' breach of their fiduciary duties caused the Plan and its participants to suffer millions of dollars in losses.

75.     The Plan's excessive holdings in Verizon was costly to participants. For example, the following chart demonstrates the significant underperformance of Verizon stock relative to prudently diversified alternatives such as an S&P 500 tracking ETF (ticker SPY).  Between December 31, 2012 and August 13, 2018, Verizon stock underperformed a S&P 500 Index tracking alternative by 77.4 percentage points, as shown in the picture below.



76.     Between April 1, 2016 and August 13, 2018, the price of Verizon stock fell 3.44%

while the value of a prudently diversified S&P 500 Index tracking alternative increased by 37.26%,

as shown in the picture below.



77.     Verizon common stock has significantly underperformed the market.

78.     The Verizon Stock Fund also underperformed other investment options in the Plan,

including both the Plan's "default option" – a series of target date funds – and Vanguard stock

market index funds offered by the Plan.

79.     Over the five-year period ending August 13, 2018, Verizon Communications Inc.

has had annual returns averaging 732 basis points (7.32%) per year lower than the Vanguard

- 17 -

Institutional Index Fund while its annualized standard deviation, a measure of risk, has been nearly twice that of the diversified Vanguard alternative, 16.69% instead of 9.71%. Over that period Verizon and AT&T stock remained highly correlated (correlation of .70).

80.     Even compared to the Fidelity 2030 target date fund, which includes bonds and other conservative investments, Verizon had lower returns with higher risk. Over the same 5-year period, the Fidelity 2030 target date fund (ticker FFFEX) produced returns 257 basis points (2.57%) per year higher than Verizon and di so with less than half of the risk (standard deviation of 8.21% for Fidelity compared to 16.69% for Verizon)

81.     If Defendants had acted prudently, they would have been notified Plan Participants that the Verizon Stock Fund would be liquidated by no later than June 30, 2012, and liquidated the Fund no later than December 31, 2012.  If the assets that were in the Fund had been invested in the Plan's default investment options on December 31, 2012, the Plan's assets today would be $113 million greater, and if the Fund's assets were invested in the Vanguard Index Funds offered by the Plan during the Class Period. Accordingly, the Plan and its participants suffered substantial harm as a result of Defendants' breach of their fiduciary duties.

## DEFENDANTS' FIDUCIARY DUTIES

82.     Under ERISA, those responsible for the management and operation of a plan are fiduciaries and these fiduciaries owe participants the highest duties known to law. These duties include, among others, the duty of loyalty, the duty of prudence, the duty of diversification, and the duty to monitor. *See* ERISA § 404, 29 U.S.C. § 1104.

83.     <u>Duty of Loyalty</u>. Under ERISA § 404(a)(1)(A)(i) 29 U.S.C. § 1104(a)(1)(A), "a fiduciary shall discharge his duties with respect to a plan **solely in the interest of the participants** and beneficiaries and . . .  for **the exclusive purpose of . . .  providing benefits to participants** and their beneficiaries."  (emphasis added).  Thus, a fiduciary must act with one and only one

purpose and must act to further one and only one interest. This is often called the "exclusive benefit rule."

84. <u>Duty of Prudence</u>. Under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with **the care, skill, prudence, and diligence** under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  (emphasis added).

85. <u>Duty of Diversification</u>. Under ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."

86. <u>Duty to Monitor</u>. In addition to the duty to prudently select investments, a fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones" and "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015).

## DEFENDANTS WERE FIDUCIARIES

87. ERISA requires that every plan name one or more fiduciaries who have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

88. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who perform fiduciary functions for a retirement plan. A person or entity is considered a fiduciary to the extent:

(i)   he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

(ii)  he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii)  he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A)(i) [codified at 29 U.S.C. § 1002(21)(A)(i)].

89.    Each of the Defendants was a fiduciary during the Class Period within the meaning of ERISA § 3(21)(A)(i) [29 U.S.C. § 1002(21)(A)(i)] as either a named or a *de facto* fiduciary with respect to the Plan, and each owed fiduciary duties to the Plan and its participants under ERISA.

90.    The Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or control over management of the Plan. In particular, it had the fiduciary duty to select and monitor Plan investment options, including the Verizon stock fund.  The Committee was also the named fiduciary for the Plan.

91.    Frontier, and the Frontier Board of Directors through its Retirement Plan committee is a fiduciary because it had the duty to monitor the Committee to ensure that it was properly meeting its fiduciary duties. It is also a fiduciary because it is responsible for the acts of the Committee and its members who were acting within the scope of their employment.

## CLASS-ACTION ALLEGATIONS

92.    Plaintiff brings this action derivatively on the Plan's behalf pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, and as a class action pursuant to Rules 23(a), (b)(1), and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of the Plan, Plaintiff, and the following class of similarly situated persons (the "Class"):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Frontier Communications 401(k) Savings Plan at any time from December 31, 2012, inclusive (the "Class Period"), and whose Plan accounts included investments in Verizon common stock (including the Verizon Stock Fund).

93.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, the Plan had over 17,000 participants at the end of 2016 and Verizon stock constituted over 13% of Plan assets at that time.  Accordingly, Plaintiff believes there are thousands of Plan participants whose Plan accounts included investments in the Verizon common stock during the Class Period.

94.     Multiple questions of law and fact common to the Class exist, including:

(a)     whether Defendants each owed a fiduciary duty to the Plan, Plaintiff, and members of the Class;

(b)     whether Defendants failed to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries;

(c)     whether Defendants failed to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries with care, skill, prudence, and diligence;

(d)     whether Defendants failed to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries by diversifying the investments of the plan so as to minimize the risk of large losses (unless under the circumstances it is clearly prudent not to do so);

(e)     whether Defendants failed to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries by monitoring investments and removing imprudent ones;

(f)     whether the Plan's massive holdings in Verizon stock were imprudently undiversified;

(g)     whether and to what extent the Plan's holdings in AT&T stock exacerbated the imprudent lack of diversification of the Verizon Stock Fund and the Plan;

(h)     whether Verizon stock qualified as an Employer Security for purposes of exempting the Plan's holdings in Verizon stock from the duty to diversity under ERISA § 404;

(i)     whether Defendants' decision to continue the Plan's investment in Verizon was tainted by disloyalty in light of control and interest over the Plan by Verizon representatives and shareholders;

(j)     whether Defendants otherwise violated ERISA; and

(k)     whether the Plan, Plaintiff, and members of the Class have sustained damages and, if so, what is the proper measure of damages.

95.     Plaintiff's claims are typical of the claims of the members of the Class because the Plan, Plaintiff, and the other members of the Class each sustained damages arising out of Defendants' uniform wrongful conduct in violation of ERISA as complained of herein.

96.     Plaintiff will fairly and adequately protect the interests of the Plan and members of the Class because they have no interests antagonistic to or in conflict with those of the Plan or the Class. In addition, Plaintiff has retained counsel skilled and experienced in class-action litigation, complex litigation, and ERISA litigation.

97.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

98.     Class action status is also warranted under Rule 23(b)(1)(A) and (b)(2) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; and (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Breaches of Fiduciary Duties
### Violations of ERISA §§ 404 and 409 [29 U.S.C. §§ 1104 and 1109]

99.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

100.     During the Class Period, the Defendants were named fiduciaries pursuant to ERISA § 402(a)(1) [29 U.S.C. § 1102(a)(1)], or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A) [29 U.S.C. § 1002(21)(A)], or both.

101.     Defendants breached their fiduciary duties by wrongfully allowing the Plan to hold massive amounts of Verizon common stock.

102.     The scope of the Defendants' fiduciary duties and responsibilities included managing the assets of the Plan for the sole and exclusive benefit of participants and beneficiaries and with the care, skill, diligence, and prudence required by ERISA. Defendants were responsible for, among other things, selecting and offering only prudent investment options, eliminating imprudent options, evaluating the merits of the Plan's investments on an ongoing basis, administering the operations of the Plan and taking all necessary steps to ensure that the Plan's assets were diversified and invested prudently.

103.     According to Department of Labor regulations and cases interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if he has: (a) given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's

investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, and (b) acted accordingly.

104.    Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate Verizon common stock as investments in the Plan. They breached that duty and failed to conduct an appropriate investigation of continued investment in Verizon common stock.

105.    As alleged above, Defendants breached their fiduciary duties by failing to diversify Plan investments. Defendants were bound by the duty to diversify the Plan's investments "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." *See* ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C).

106.    Despite the power and ability to do so, Defendants took no actions to diversify the Plan's assets and reduce the Plan's investment in Verizon common stock and, in fact, acquired hundreds of millions of dollars in additional Verizon stock during the Class Period at a time when the Plan was already imprudently undiversified and exposed to systemic risk due to its concentration in Verizon stock as well as other telecommunications stocks. Defendants' failure to timely diversify the Plan's assets caused the Plan to suffer tens of millions of dollars in losses during the Class Period.

107.    Additionally, Defendants failed to act prudently when they caused the Plan to continue to hold significant amounts of Verizon common stock and to offer the Verizon Stock Fund as Plan investment options because, among other reasons:

        (a)    they knew or failed to understand that Verizon stock was not a qualifying employer security;

        (b)    they knew of and/or failed to investigate Verizon; and

(c)      the risk associated with the investment in Verizon common stock during the Class Period was by far above and beyond the normal, acceptable risk for retirement plan investments.

108.    Frontier breached its fiduciary duty to monitor the Committee in that it failed to ensure that the Committee followed its fiduciary duties concerning the Plan's investment in Verizon stock.

109.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

### COUNT II
### Co-Fiduciary Liability
### Violations of ERISA § 405 [29 U.S.C. § 1105]

110.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

111.    ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

112.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by the other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. As alleged above, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable effort, to remedy those breaches.

113.    The Committee and its individual members were the administrators of the Plan.

114.   ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendants knowingly participated in each other's breaches because, as alleged above, they participated in the management of the Plan's improper investment in Verizon common stock and, upon information and belief, knowingly participated in the improper management of those investments by the other Defendants.

115.   ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

116.   As a direct and proximate result of these breaches of fiduciary duties, the Plan, and indirectly Plaintiff and other participants and beneficiaries, lost millions of dollars of retirement savings.

117.   Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), each of the Defendants is liable to restore the losses to the Plan caused by his or her breaches of the fiduciary duties and to provide other equitable relief as appropriate.

## CAUSATION

118.   The Plan suffered millions of dollars in losses because Plan assets were imprudently invested Verizon common stock in breach of the Defendants' fiduciary duties.

119.   Had the Defendants properly discharged their fiduciary duties and/or their co-fiduciary duties, the Plan and its participants would have avoided a substantial portion of the losses suffered through the Plan's continued investment in Verizon common stock. Defendants should

have liquidated (or significantly reduced) the Plan's holdings in Verizon common stock within a short period following each acquisition of Verizon stock.

## JURY DEMAND

120.    Plaintiff demands a jury trial on all claims that may be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.      A Declaration that the Defendants have breached their ERISA fiduciary duties to the participants;

B.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from their breaches of their fiduciary duties, including loss of vested benefits to the Plan resulting from imprudent investment of the Plan's assets; to restore to the Plan all profits Defendants made through use of the Plan's assets; and to restore to the Plan all profits which the Plan and participants would have made if Defendants had fulfilled their fiduciary obligations;

C.      An Order enjoining each of the Defendants from any further violations of their ERISA fiduciary obligations;

D.      An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investments;

E.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

F.      A finding and adjudication that Defendants are personally liable to re-store to the Plan all losses resulting from each breach of fiduciary duty;

G.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H.      An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

I.      An Order for equitable restitution and other appropriate equitable and injunctive relief against all Defendants.

DATED: September 11, 2018                    Respectfully submitted,

                                             /s/ *Robert A. Izard*
                                             _____
                                             Robert A. Izard (ct01601)
                                             Mark P. Kindall (ct13797)
                                             Douglas P. Needham (ct29433)
                                             IZARD, KINDALL & RAABE, LLP
                                             29 South Main Street, Suite 305
                                             West Hartford, CT 06107
                                             (860) 493-6292
                                             (860) 493-6290 fax
                                             rizard@ikrlaw.com
                                             mkindall@ikrlaw.com
                                             dneedham@ikrlaw.com


                                             Gregory Y. Porter (to be admitted *pro hac vice*)
                                             Mark G. Boyko (to be admitted *pro hac vice*)
                                             BAILEY & GLASSER LLP
                                             1054 31st Street, NW, Suite 230
                                             Washington, DC 20007
                                             (202) 463-2101
                                             (202) 463-2103 fax
                                             gporter@baileyglasser.com
                                             mboyko@baileyglasser.com


                                             *Attorneys for Plaintiff*