UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>FRONTIER COMMUNICATIONS CORP. THE RETIREMENT INVESTMENT & ADMINISTRATION COMMITTEE AND JOHN/JANE DOES 1-10,<br><br>        Defendants. | Civil Action No. 3:18-cv-01538-RNC<br><br><br><br><br><br>November 2, 2018 |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR PRE-FILING CONFERENCE**

       Plaintiff hereby responds to Defendants' Motion for Pre-Filing Conference (ECF 29) ("Motion"). Plaintiff does not believe that Defendants' proposed motion to dismiss would be an efficient use of the Court's time and, in particular, is not grounds to delay discovery.

       First, as to the prudence claim under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), in *Tibble v. Edison International*, the Supreme Court held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and *remove imprudent ones*." 135 S. Ct. 1823, 1829 (2015) (emphasis added). As Defendants admit in the Motion, the Court's analysis should be guided by the efficient market hypothesis as it relates to plan investments as set forth in the Supreme Court's decision in *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). But, the Supreme Court also stated, an ordinary "retirement plan (1) seeks to maximize retirement savings while (2) avoiding excessive risk." *Id*.

1

at 2467-68 (2014). *See also Tatum v. RJR Pension Inv. Cmte.*, 855 F.3d 553, 566 (4th Cir. 2017) ("Simply following the market's pricing of a stock at a given time cannot satisfy a fiduciary's duty 'to conduct a regular review of its investment.'").

The Fourth Circuit dealt directly with the application of *Dudenhoeffer* and excessive risk to an undiversified, non-employer stock fund in *Tatum v. RJR Pension Inv. Committee*, 761 F.3d 346 (4th Cir. 2014). After noting that, under *Dudenhoeffer*, "it is not imprudent to assume that a major stock market . . . provides the best estimate of value" (quoting *Dudenhoeffer* at 2471), the Fourth Circuit stated that the plan fiduciaries had "no reason to think that the [undiversified non-employer single stock funds] would have provided above-market returns, given the public nature of the relevant financial information and the general efficiency of the stock market." *Id*. at 382 (citation omitted). Accordingly, the court held that selling non-employer stock was "arguably" "the *most* prudent of the options available, for it protected plan participants from risky shares held in undiversified plan funds." *Id* at 383 (emphasis in original).

A review of the *Tatum* line of cases and their interpretation and application of *Dudenhoffer* is helpful in evaluating Plaintiff's prudence claim. In *Tatum v. RJR Pension Investment Committee*, participants challenged fiduciaries' decision to divest a single-stock fund after a spin off. 761 F.3d 346, 351 (4th Cir. 2014) ("*Tatum 5*"). The Fourth Circuit considered *Dudenhoffer*, noting that it is prudent to assume that the market provides the best estimate of a stock's value, and that there was no reason to think, given the public nature of the relevant information and general efficiency of the stock market, (*i.e.*, there were no "special circumstances" under *Dudenhoeffer*), that the stock at issue would have provided above-market returns such that a prudent fiduciary would have reasonably concluded that retaining the stock was the prudent course of action. *Id.* at 382.

In dissent, Judge Wilkinson noted *Dudenhoeffer's* admonition that "single-stock funds inherently 'are *not* prudently diversified.'" *Id*. at 380, quoting *Dudenhoeffer*, 134 S. Ct. at 2465. In sum, precisely because a stock trades in an efficient market, it is imprudent to take an outsized position in the stock absent compelling reasons to expect extraordinary returns.On remand, after evaluating the evidence presented at trial, the district court ruled that it was prudent to divest the single-stock fund. That plan "included not one single-stock fund, but three single-stock funds, two of them were non-employer single-stock funds." *Tatum v. R.J. Reynolds Tobacco Co.*, No. 02CV00373, 2016 WL 660902, at *13 (W.D.N.C. Feb. 18, 2016) ("*Tatum 6*"). "In contrast, of approximately 10,000 participant directed funds, none maintained active non-employer single-stock options" and "[t]he parties identified only twelve circumstances in which 401(k) plans maintained frozen non-employer stock funds, nine of which occurred prior to January 31, 2000." *Id*. Based on the evidence presented, the court ruled that the defendant met its burden of proving that "it is more likely true than not that had a prudent fiduciary reviewed the information available to it at the time . . . would have decided to divest the [stock fund] at the time and in the manner as did RJR." *Id*. at *23.[1]

---

[1] The evidence in *Tatum* included expert testimony from both sides on "the decision that a prudent fiduciary would have made about the frozen Nabisco Funds." *Id*. at *12. It further included evidence on the nature of the funds and the practices of similar funds. *Id*. at *13. There was evidence about the correlation between the former employer's stock and the current employer's stock, and on the effect of that correlation on the prudence of retaining the single-stock fund. *Id*. The parties also presented testimony and evidence on the effect that industry trends—in that case, the tobacco industry—had on the prudence of diversifying the former-employer single-stock fund. The court allowed discovery, received evidence, and resolved the case. In other words, the case was not decided on a motion to dismiss. Here, Plaintiffs had already provided Defendants with an expert report addressing these very issues, and Plaintiff's expert was scheduled for deposition. Defendants cancelled the deposition the day before it was to occur, in light of the Court's ruling on the motion to dismiss that came out that day.

The Fourth Circuit affirmed the district court's judgment. *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 556 (4th Cir. 2017) ("*Tatum 7*"). In *Tatum* 7, the court considered whether the efficient market hypothesis and *Dudenhoffer* "required the court to conclude that a prudent fiduciary would have divested at the time and in the manner that RJR did." *Id.* at 563. The court noted that the efficient market adjusts the price of a stock in response to all public information, and that a prudent fiduciary is therefore entitled to rely on that price. *Id.* at 564. But, in reaching this conclusion, the Court noted that *Dudenhoffer* did not eliminate the duty of prudence for publicly traded investments but instead was limited to cases that "concerned allegations that the market *overvalued* a stock and that a fiduciary should have known that the stock was overvalued because of public information." *Id*. at 566 (emphasis added).

The Fourth Circuit further stated in *Tatum 7* that *Dudenhoffer* did not even address whether a prudent fiduciary would have considered information in addition to the value of the stock, and the Supreme "Court certainly did not hold that a prudent fiduciary would not consider risk." *Id.* In particular, the court concluded that "the way an efficient market processes information in setting the stock's price" does not capture "fully and accurately the goals of an ERISA plan or a fiduciary's duty." *Id.* Therefore, the court added, simply following the stock price does not satisfy a fiduciary's duty, *id*, which necessarily means a fiduciary must consider more than price or value when evaluating the prudence of a non-employer publicly traded security. Accordingly, the court held "a prudent fiduciary would have balanced the increased risk of loss that the Nabisco Funds brought to the Plan—risk reflected in the low stock price, *but also the risk inherent in their lack of diversity within the plan* and the Nabisco stock's high correlation with RJR's battered stock—against the Funds' likely *average* returns." *Id*. (first emphasis added).

4

Plaintiff alleges the same here. Unlike in *Dudenhoffer*, Plaintiff here does not claim that the market overvalued Verizon stock. To the contrary, since Verizon was a large, publicly traded stock in an efficient market, there was *no* reason for Defendants to expect above (or below) average returns and *no* justification for the increased risk of an undiversified single-stock fund. Put another way, since Verizon was widely traded in an efficient market it was properly priced and could not be expected to outperform market expectations sufficient to justify the Funds' "excessive" risks resulting from a lack of diversification. This case, thus, falls squarely within *Tatum*, which was decided at trial. Defendants *should have* relied on the market price of Verizon stock and, absent special circumstances, *should have* concluded that the risk associated with concentrating Plan assets in a single security, which made it prudent to close the Verizon Stock Fund. There was no reason to believe that the stock was undervalued; there was no reason to expect extraordinary returns; and there was no reason to take the extraordinary risk of an undiversified investment at such a high level of overall Plan investment. In an efficient market, the Plan's over-concentrated Verizon Stock Fund presented massive uncompensated risk. Or, in the language of *Tatum 7*, Plaintiff does not claim imprudence because "of the low stock price" but for a very separate reason –"risk inherent in the [fund's] lack of diversity . . ." *Id.* at 566. This risk is sufficient to conclude that a prudent fiduciary *would* have closed the Verizon Stock Fund and sold Verizon stock and therefore sufficient to state a claim.

It is also important to focus on what the Supreme Court meant by "special circumstances." Motion at 4. The Supreme Court focused on characteristics endemic to evaluating the prudence of relying on market prices for publicly traded securities that are not relevant to determining whether an investment is properly diversified. *Dudenhoffer* at 134 S. Ct. 2459 (2014). There, a Fifth Third Bancorp employee sued Fifth Third and other fiduciaries for

5

breach of fiduciary duty in connection with the company's employee stock ownership plan. *Id*. at 2464. The complaint alleged that the Fifth Third plan's fiduciaries "knew or should have known that Fifth Third's stock was overvalued and excessively risky." *Id*. Despite myriad publicly disclosed indicia of risk, the fiduciaries did nothing to decrease holdings in Fifth Third stock before the price fell by 74% in just over two years. *Id*.

After cautioning that evaluating the duty of prudence must be "context specific," the Supreme Court stated that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone *that the market was over- or undervaluing the stock* are implausible as a general rule, *at least in the absence of special circumstances*." *Id*. at 2471 (emphasis added). The court went on to note how investors rely on the market as a sober and unbiased view of the value of a stock. *Id*. This reliance is reasonable "in light of all [the] public information" made available under the securities laws to the market. *Id.* Thus, ERISA fiduciaries "as a general matter, likewise prudently rely on the market price." *Id*. "In other words, a fiduciary usually 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him.'" *Id*. Accordingly, *Dudenhoffer* holds that a fiduciary can rely on the market price absent special circumstances that affect that market price. But the Supreme Court *did not* eliminate all concepts of a duty of prudence involving publicly-traded stock or hold the "special circumstances" concern anything other than the market price. It only created a presumption that fiduciaries can prudently rely on market price in making their decisions. See, *Tatum 7* at 566.

This Court recently recognized the distinction in *Vellali v. Yale University*, 308 F.Supp.3d 673 (D. Conn. 2018).  In *Vellali*, the plaintiff alleged the plan fiduciaries breached their duty of prudence when they retained certain investment offerings.  Citing *Dudenhoeffer*, the

6

defendants moved to dismiss, claiming they could not be expected to "outsmart a presumptively efficient market." In rejecting the defendants' argument, this Court held that the plaintiff's fiduciary breach claim was not premised on the defendants' failure to predict the funds' performances, but rather their decision to retain the underperforming funds. *Vellali*, 308 F.Supp.3d at 687.

Here, Plaintiffs do not argue that Verizon stock was an imprudent investment because it was mis-priced. Instead, Plaintiff's imprudence argument is based on the failure to close the Verizon Stock Fund and sell Verizon stock under the standards set by *Tatum*. The concentration risk of over-investing in an undiversified stock fund is *not* reflected in the stock's per-share price. By definition, the per-share price is how the market values a single share. So, to the extent the complaint relied on public information that may affect the stock price, it was information that allowed every other major investor on the planet to know to steer clear of concentrating its portfolio in Verizon stock. Because the Verizon Stock Fund at issue here, unlike the employer stock at issue in *Dudenhoeffer,* has no statutory exemption from ERISA's diversification requirements, *Dudenhoeffer* demonstrates that the Verizon Stock Fund was not prudently diversified. Since the market accurately valued Verizon stock—indeed, *precisely because* there are no special circumstances to show the market did not accurately value the stock—there was no reason to have so many eggs in one basket.

Second, as to the diversification claim under ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), Plaintiff alleges that the Plan was not properly diversified.[2] Complaint ¶¶ 45-57,

---

[2]   The duty to diversify operates both at the plan level and at the level of individual funds within a plan. It is not enough to simply diversify the plan as a whole. That much is clear from the ERISA. While section 1104(a)(1)(C) states a duty to diversify the plan as a whole (together with a presumption that a failure to diversify the plan violates the Act), the duty to diversify under section 1104(a)(1)(B) covers different ground. *Bussian v. R.J.R. Nabisco, Inc.*, 223 F.3d

7

69-72. Plaintiff alleges that on December 31, 2011, Verizon stock represented 15.32% of the assets of the DC Master Trust compared with 0.07% of the assets of the Pension Plan. As a result, the DC Master Trust was ***219 times*** more concentrated in Verizon stock than Defendants felt was appropriate for the Pension Plan — for which they bore the investment risk. *Id*. at ¶ 27. Additionally, the largest intentionally concentrated telecommunications mutual fund in the United States, the T.Rowe Price Comm & Tech Fund (ticker PRMTX), invests only 2.53% of its assets in Verizon stock. *Id*. at ¶ 29.

Moreover, Verizon and AT&T are both highly correlated telecommunications stocks — exposing the Plan to an enormous concentration within a single sector and industry. At the end of 2014, the Plan's Verizon and AT&T common stock holdings collectively comprised more than 15% of the Plan's total assets (7.8% was Verizon; 7.3% was AT&T). *Id*. at ¶¶ 6 (c), 50. And, at the end of 2016, Verizon common stock represented over 13% of the Plan's total holdings. *Id*. at ¶ 6 (b). Accordingly, Plaintiff has alleged factual issues to be resolved by expert testimony as to whether the Plan was undiversified. *PBGC ex rel. St. Vin. Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ("the duty to diversify is not measured by hard and fast rules or formulas" and must be based on "the facts and circumstances of each case.").

---

286, 294 (5th Cir. 2000) (noting the duty to diversify under section 1104(a)(1)(B)). S*ee also Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (a fiduciary's plan to "insulate itself from liability" by "including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them . . . would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives"); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007)("a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may *or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio." )

Third, as to the duty of loyalty claim under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), while the facts alleged in the complaint suggest a potential violation of the duty of loyalty, the facts concerning the fiduciaries' motivations and deliberations are, without discovery, entirely within the possession of the defendants and plaintiff does not raise a breach of the duty of loyalty in the complaint at this time.

Fourth, Defendants' only argument concerning the co-fiduciary liability claim is that Plaintiff does not assert underlying claims. For the reasons set forth above, that argument is not correct.

Finally, as Defendants' conclusory comments, Motion at 4, that Defendants "expect[]" to make arguments limiting Plaintiff's claims on statute of limitations and standing grounds, Defendants do not provide enough information to permit a meaningful response, but given that the applicable statute of limitations is three or six years under ERISA § 413, 29 U.S.C. § 1113, Plaintiff, who became a Plan participant in 2016, certainly is not subject to a statute of limitations bar for her claim filed in 2018.

Plaintiff's standing as a participant to assert Plan claims is indisputably provided for by statute (ERISA §§ 409 and 502, 29 U.S.C. §§ 1109, 1132), and her right to assert Plan claims that extend beyond when she participated in the Plan is protected by a long line of ERISA jurisprudence, including *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 592 (8th Cir. 2009). As to Defendants' conclusory statement that they were not acting in a fiduciary capacity (Motion at 4), ERISA requires a fiduciary to manage Plan assets, a duty which requires removing imprudent investments (*Tibble*, 135 S.Ct. at 1829 (2015))*,* so this argument makes little sense.

In conclusion, a motion to dismiss will not move this case forward but instead will simply result in additional expense and delay.

DATED: November 2, 2018              Respectfully submitted,

/s/ *Robert A. Izard*
Robert A. Izard (ct01601)
Mark P. Kindall (ct13797)
Douglas P. Needham (ct29433)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
rizard@ikrlaw.com
mkindall@ikrlaw.com
dneedham@ikrlaw.com


Gregory Y. Porter (to be admitted *pro hac vice*)
Mark G. Boyko (to be admitted *pro hac vice*)
BAILEY & GLASSER LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com


*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I certify that on November 2, 2018, I caused a true and correct copy of the foregoing document to be served electronically on all counsel of record registered for electronic service for this case.

      Executed this 2nd day of November, 2018 at West Harford, Connecticut.

                                        */s/ Robert A. Izard*
                                        Robert A. Izard (ct01601)