# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORPORATION, et al.,<br><br>*Defendants*. | Civil Action No. 3:18-cv-01538-RNC<br><br><br>Hon. Robert N. Chatigny |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Nancy G. Ross
Samuel P. Myler
Samuel Block
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Susan S. Murphy
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (850) 251-5000

Brian D. Netter
  bnetter@mayerbrown.com
Andrew A. Lyons-Berg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

    A.    The Plan ..................................................................................................1

    B.    The Verizon Acquisitions ....................................................................2

    C.    Plaintiff's Complaint...........................................................................4

ARGUMENT ....................................................................................................................5

I.    Plaintiff's diversification claim fails...................................................................6

    A.    ERISA does not require diversification within individual funds.............6

    B.    Participant-directed defined contribution plans need only provide diverse investment options. ....................................................................7

II.    Plaintiff's prudence claim is foreclosed by binding precedent...........................10

    A.    *Dudenhoeffer* and *Rinehart* preclude the prudence claim....................10

    B.    The *Tibble* claim cannot survive without an underlying breach of prudence. ..........................................................................................14

    C.    The presence of AT&T stock in the Plan does not affect these failings...............15

III.    Frontier is not a fiduciary, and the failure-to-monitor claim cannot survive...................17

IV.    The co-fiduciary liability claim fails....................................................................19

V.    Plaintiff does not raise a loyalty claim................................................................20

VI.    Plaintiff lacks standing to complain about actions that took place before she joined the Plan, or about supposed injuries to other participants' accounts. ....................21

VII.    Plaintiff's claims about the 2010 acquisition are time-barred. .........................23

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Credit Suisse Sec. (USA) LLC*,
  895 F.3d 214 (2d Cir. 2018) ................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................5, 17, 18

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................21

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  756 F. Supp. 2d 330 (S.D.N.Y. 2010) ................................................18, 19

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................5, 17

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008) ................................................9, 21

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ................................................21, 22

*Chao v. Merino*,
  452 F.3d 174 (2d Cir. 2006) ................................................11

*In re Citgroup ERISA Litig.*,
  2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ................................................19

*In re Citigroup ERISA Litig.*,
  104 F. Supp. 3d 599 (S.D.N.Y. 2015) ................................................19

*In re Citigroup ERISA Litig.*,
  662 F.3d 128 (2d Cir. 2011) ................................................14, 20

*Coburn v. Evercore Tr. Co., N.A.*,
  844 F.3d 965 (D.C. Cir. 2016) ................................................12, 13, 15

*Coulter v. Morgan Stanley & Co., Inc.*,
  753 F.3d 361 (2d Cir. 2014) ................................................19

## TABLE OF AUTHORITIES—continued

**Page(s)**

*DeBruyne v. Equitable Life Assurance Soc'y of U.S.*,
   920 F.2d 457 (7th Cir. 1990) .................................................11

*In re Dell, Inc. ERISA Litig.*,
   563 F. Supp. 2d 681 (W.D. Tex. 2008)..................................7, 10

*In re Dynegy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ......................................10

*Evans v. Akers*,
   534 F.3d 65 (1st Cir. 2008).......................................................21

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)........................................................ *passim*

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019).............................................................22

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000).......................................................3

*Gladstone, Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979)...................................................................22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)...........................................................11, 12

*Harmon v. FMC Corp.*,
   2018 WL 1366621 (E.D. Pa. Mar. 16, 2018)..............................6

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)...........................................................1, 2, 8

*Jander v. Ret. Plans Comm. of IBM*,
   910 F.3d 620 (2d Cir. 2018)......................................................13

*In re JPMorgan Chase & Co. ERISA Litig.*,
   2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ................................17

*Katsaros v. Cody*,
   744 F.2d 270 (2d Cir. 1984)......................................................11

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008)....................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
   113 F. Supp. 3d 745 (S.D.N.Y. 2015).......................................23

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997)...................................................................................17

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..................................................................................21, 22

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007).......................................................................3

*Massachusetts v. EPA*,
    549 U.S. 497 (2007)........................................................................................21

*In re Morgan Stanley ERISA Litig.*,
    696 F. Supp. 2d 345 (S.D.N.Y. 2009)......................................................................19

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)....................................................................................17, 18

*Quatrone v. Gannett Co., Inc.*,
    2018 WL 7983284 (E.D. Va. Sept. 26, 2018)................................................. *passim*

*Rinehart v. Lehman Bros. Holdings Inc.*,
    817 F.3d 56 (2d Cir. 2016)............................................................................13, 14, 23

*Saumer v. Cliffs Nat. Res. Inc.*,
    853 F.3d 855 (6th Cir. 2017) ...........................................................................12, 13

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
    312 F. Supp. 3d 608 (S.D. Tex. 2018) .......................................................... *passim*

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).........................................................................................22

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................21, 22

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)...............................................................................11

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998).........................................................................................21

*Stein v. Tangoe, Inc.*,
    2014 WL 12767210 (D. Conn. Sept. 30, 2014) ........................................................3

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ...................................................6

*Tibble v. Edison Int'l*,
   135 S. Ct. 1823 (2015)...............................................14, 23

*Usenko v. SunEdison Semiconductor, LLC*,
   2018 WL 999982 (E.D. Mo. Feb. 21, 2018)......................6, 14

*Yates v. Nichols*,
   286 F. Supp. 3d 854 (N.D. Ohio 2017)........................... *passim*

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ......................................6, 7

**STATUTES, RULES, AND REGULATIONS**

29 U.S.C. § 1002(34) ...............................................................1

29 U.S.C. § 1102(21)(A)........................................................17

29 U.S.C. § 1104(a)(1)(A) .....................................................20

29 U.S.C. § 1104(a)(1)(B) ..................................................5, 11

29 U.S.C. § 1104(a)(1)(C) .............................................4, 6, 8, 9

29 U.S.C. § 1104(c)(1)(A) .......................................................8

29 U.S.C. § 1105(a) ..............................................................19

29 U.S.C. § 1109 ..................................................................22

29 U.S.C. § 1113 ..................................................................23

29 U.S.C. § 1113(1) ..............................................................24

29 U.S.C. § 1132(a)(2)............................................................22

Fed. R. Civ. P. 12(b)(6)...........................................................5

**OTHER AUTHORITIES**

H.R. Rep. No. 93-1280 (1974)...................................................8

John H. Langbein et al., *Pension & Employee Benefit Law* (4th ed. 2006)...................................7

*Verizon Communications, Inc.*, Yahoo Finance..............................20

## INTRODUCTION

In 2010, Defendant Frontier Communications Corporation acquired from Verizon Communications, Inc., its landline telecommunications operations in 14 states, and the former Verizon employees working for those operating entities became employees of Frontier. Those employees brought their retirement assets with them from Verizon, including significant investments in Verizon stock that they had accumulated while working for the company. Those assets became part of the Frontier Communications 401(k) Savings Plan (the Plan), but remained allocated to the personal retirement accounts of the former Verizon employees who brought them over.

Undeterred by the rejection of every court in which Plaintiff's counsel has pled parallel allegations, Plaintiff here similarly maintains that the Employee Retirement Income Security Act of 1974 (ERISA) required the Frontier Plan's fiduciaries to unilaterally and immediately *force* those former Verizon employees to sell off their holdings of Verizon stock, whether the employees wanted to or not. But as every court to date has held, ERISA imposes no such requirement. Plaintiff's Complaint should be dismissed.

## BACKGROUND

### A.      The Plan

As alleged in the Complaint, the Frontier Communications 401(k) Savings Plan is a defined contribution plan within the meaning of 29 U.S.C. § 1002(34). Compl. ¶ 41. This means that each Plan participant has an individual retirement account within the Plan; the employee and Frontier "may contribute to the plan," and upon retirement, "the employee receives whatever level of benefits the amount contributed on his behalf will provide." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (quotation marks omitted). That is, "each beneficiary is entitled to whatever assets are dedicated to his individual account." *Id.* Such an arrangement is in contrast to a defined

1

benefit plan, which "consists of a general pool of assets" from which "the employee, upon retirement, is entitled to a fixed periodic payment." *Id.* (quotation marks omitted).

Importantly, investments in the Frontier Plan are participant-directed; while the Plan's fiduciaries select the investment *options* offered by the Plan, each Plan participant chooses *among* the options. *Compare, e.g.*, Request for Judicial Notice (RJN) Ex. A, at 2 (the Plan's Department of Labor Form 5500 for 2011, reporting plan characteristic code "2G" on line 8a), *with* RJN Ex. D, at 19 (Department of Labor Form 5500 instructions, stating that code "2G" means that the plan is a "[t]otal participant-directed account plan – Participants have the opportunity to direct the investment of all the assets allocated to their individual accounts."); *see also, e.g.*, RJN Ex. A, at 26 ("Allocations are based on each participant's investment election(s)."); *accord* Compl. ¶ 43. The Plan offers as options "a variety of pooled investment funds … principally includ[ing] U.S. equities, international equities, and fixed income securities," as well as a brokerage window through which participants can access the broader universe of mutual funds and exchange-traded funds. RJN Ex. A, at 29, 32. For example, in 2016, the Plan "offer[ed] 31 investment options plus [the] brokerage link account." RJN Ex. E, at 11.

The named fiduciary of the Plan is the Retirement Investment & Administration Committee (the Committee), one of the defendants here. Compl. ¶ 90.

### B.     The Verizon Acquisitions

In July 2010, Verizon spun off a subsidiary entity containing certain assets and liabilities of its local exchange business in 14 states; Frontier merged with that subsidiary. Compl. ¶ 19; *see* RJN Ex. A, at 25. Frontier thus ended up employing a significant number of former Verizon employees. While at Verizon, those employees had accumulated holdings of Verizon common stock in their Verizon 401(k) retirement accounts. *See e.g.*, RJN Ex. C, at 13. As part of the merger, the

retirement assets of those former Verizon employees—including their Verizon stock holdings—were transferred to Frontier, ultimately becoming part of the Frontier Plan in 2011. Compl. ¶ 24.[1]

The Plan did not allow the former Verizon employees—or any other Frontier employees—to invest any additional assets in Verizon stock, however. Instead, the Verizon Common Stock Fund (the vehicle through which the Plan held the former Verizon employees' Verizon stock investments, *see* Compl. ¶¶ 2-3) was "frozen" to new investments. RJN Ex. A, at 28. Participants could choose to leave their money in Verizon stock or to transfer those assets into any other Plan investment option, but could not invest new contributions or move existing assets into Verizon stock. *Id.*

In 2016, Frontier acquired three additional business units from Verizon (the landline telecommunications operations in California, Texas and Florida); again, the employees acquired through this transaction brought their retirement assets with them, including their investments in Verizon stock. Compl. ¶¶ 36-37; *see* RJN Ex. B, at 26. The Verizon Common Stock Fund remained frozen; employees could maintain their Verizon stock investments or choose to divest, but they could not invest any additional funds in Verizon stock. RJN Ex. B, at 30.

While the Complaint cherry-picks dates in an attempt to suggest otherwise, *see* Compl. ¶¶ 75-76, the price of Verizon stock has in fact nearly doubled since Frontier acquired Verizon's local exchange business in July 2010:[2]

---

[1]    As part of the 2010 corporate acquisition, Frontier initially created separate retirement plans for the former Verizon employees. Compl. ¶ 24; *see* RJN Ex. A, at 25. On December 31, 2011, those plans were merged into the Plan at issue here. *Id.*

[2]    Retrieved from https://finance.yahoo.com. "It is clear that courts 'may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.'" *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 134 (D. Conn. 2007) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000); *accord, e.g.*, *Stein v. Tangoe, Inc.*, 2014 WL 12767210, at *23 n.11 (D. Conn. Sept. 30, 2014) ("As stock prices are public information, courts are permitted to take judicial notice of these figures.").



### C.      Plaintiff's Complaint

Plaintiff Mary Reidt is a participant in the Plan. Compl. ¶ 13. More specifically, she is one of the former Verizon employees who became a Frontier employee as part of the 2016 transaction. *Id.*; *see* Dkt. 35, at 9 (asserting that "Plaintiff … became a Plan participant in 2016).[3] Her Complaint contains a single fiduciary-breach count under ERISA (along with a wholly derivative co-fiduciary breach count), but that single count contains several different theories of liability:

*First*, Plaintiff alleges that Defendants breached ERISA's duty of diversification, 29 U.S.C. § 1104(a)(1)(C), by maintaining as a Plan investment the Verizon Common Stock Fund, which contained only Verizon stock. Compl. ¶¶ 6(a), 105-106.

*Second*, Plaintiff further alleges that Defendants breached the duty of diversification with respect to the Plan as a whole by failing to force participants to divest from Verizon stock, thus

---

[3]      Because Plaintiff alleges that she "held shares of Verizon common stock in her Plan account during the Class Period" (Compl. ¶ 13), she could only have been a former Verizon employee, since no other Plan participants could invest in the frozen Verizon Common Stock Fund.

supposedly allowing Verizon stock to make up too great a proportion of Plan assets. Compl. ¶¶ 6(b), 105-106.

*Third*, Plaintiff alleges that the same conduct by Defendants was a breach of ERISA's fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B). That is, she alleges that it was imprudent not to force Plan participants to divest from Verizon stock. Compl. ¶¶ 51-73, 107.

*Fourth*, Plaintiff alleges that Frontier had and breached a fiduciary duty to monitor the Committee. Compl. ¶ 108.

As explained below, none of these allegations plausibly states a claim for a violation of ERISA. The Complaint must therefore be dismissed.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). The "plausibility" standard is satisfied only if a complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

As multiple courts have explained, allegations of the sort presented here do not satisfy these standards. Indeed, courts have unanimously rejected precisely the theory that Plaintiff presses in this case: that when a business unit is spun off or sold, ERISA mandates that the acquiring company force its new employees to sell off any retirement investments in their former employer's stock. Whether framed as a diversification claim or a prudence theory, ERISA simply does not impose any such requirement. *See Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 312 F. Supp. 3d 608 (S.D. Tex. 2018), *appeal docketed*, No. 18-20379 (5th Cir. June 7, 2018); *Yates v. Nichols*,

286 F. Supp. 3d 854 (N.D. Ohio 2017); *Quatrone v. Gannett Co., Inc.*, 2018 WL 7983284 (E.D. Va. Sept. 26, 2018), *appeal docketed*, No. 19-1212 (4th Cir. Feb. 27, 2019); *Usenko v. SunEdison Semiconductor, LLC*, 2018 WL 999982 (E.D. Mo. Feb. 21, 2018), *appeal docketed*, No. 18-1626 (8th Cir. Mar. 23, 2018). Plaintiff's Complaint fails to state a claim.

## I.      Plaintiff's diversification claim fails.

Plaintiff first contends that Defendants breached ERISA's duty of diversification, 29 U.S.C § 1104(a)(1)(C). *See* Compl. ¶¶ 1, 105-106. But whether that claim is understood to challenge the diversification of the Verizon Common Stock Fund in particular, or that of the Plan as a whole, Plaintiff's allegations fail to state a claim upon which relief can be granted.

### A.      ERISA does not require diversification within individual funds.

First, to the extent Plaintiff alleges an ERISA violation based on a supposed failure to diversify within the Verizon Common Stock Fund itself (*see* Compl. ¶ 6(a)), that claim fails as a matter of law. ERISA provides for a fiduciary duty to "diversify[] the investments *of the plan* so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C) (emphasis added). As the Second Circuit has explicitly recognized, "[t]he language of this section contemplates a failure to diversify claim when a plan is undiversified *as a whole*," not when "individual funds *within* the plan [are] undiversified." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (summary order) (emphases added). Thus, the court explained, a claim that "narrow[ly] focus[es] on a few individual funds, rather than the plan as a whole, is insufficient to state a claim for lack of diversification." *Id*; *see also, e.g.*, *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) ("[T]he diversification and prudence duties do not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds."); *Harmon v. FMC Corp.*, 2018 WL 1366621, at *5 (E.D. Pa. Mar. 16, 2018) ("[T]he statute does not require that each investment option be diversified.").

6

*Young*'s reasoning thus squarely forecloses a claim based on the allegation that the Verizon Common Stock Fund—rather than the plan as a whole—was improperly undiversified. Because the duty of diversification is addressed at the plan level, not the individual fund level, maintaining a single-stock fund as an investment option does not violate ERISA. *Young*, 325 F. App'x at 33; *Yates*, 286 F. Supp. 3d at 863 (holding that *Young* "is squarely on point and persuasive" in rejecting a claim identical to the one here). To the extent Plaintiff seeks to hold Defendants liable for failing to diversify the Verizon Common Stock Fund, that allegation fails to state a claim.

### B.    Participant-directed defined contribution plans need only provide diverse investment options.

Plaintiff's diversification allegations about the Plan as a whole fare no better. She contends that "[t]he failure of the Plan's fiduciaries to timely liquidate the Plan's significant holdings in Verizon common stock, and the decision to concentrate Plan investments in Verizon common stock, breached their fiduciary duty under ERISA to diversify" (Compl. ¶ 1 (quotation marks omitted))—but that argument overlooks the differences between participant-directed defined contribution plans and traditional defined benefit pension plans, and how the diversification duty applies to each of them. As numerous courts have held, where participants choose how to invest their own retirement funds, the diversification duty is satisfied if the Plan "offer[s] a diversified menu of investment *options*." *Yates*, 286 F. Supp. 3d at 864 (emphasis added); *accord, e.g.*, *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681, 690 (W.D. Tex. 2008) ("Because the Plan offers over a dozen investment options, it is diversified on its face[,] [and] Plaintiffs have failed to state a claim for relief[.]").

When ERISA was enacted in 1974, defined benefit pension plans were "the norm of American pension practice." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008) (quoting John H. Langbein et al., *Pension & Employee Benefit Law* 58 (4th ed. 2006)). It is thus the

defined benefit plan—with its "general pool of assets" and "fixed periodic payment[s]" (*Hughes Aircraft*, 525 U.S. at 439 (quotation marks omitted))—that Congress had in mind when it provided for a fiduciary duty to "diversify[] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C). In the defined benefit context, that duty makes perfect sense: Because the fiduciary has complete control over the ultimate allocation of the Plan's assets, the fiduciary is held responsible for ensuring that the Plan does not take on too much risk by concentrating its investments in a single asset.

Where participants direct their own retirement investments, however, it would be incoherent to mechanically apply the diversification duty in an identical manner—as this case perfectly illustrates. To the extent Plaintiff's claim is based on the concentration of Verizon stock in *her own* self-directed retirement account, ERISA absolutely bars liability for the Plan's fiduciaries: "[I]f a participant or beneficiary exercises control over the assets in [her] account … no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(A). As the ERISA conference report specifically explained, this provision means that "if the participant instructs the plan trustee to invest the full balance of his account in, *e.g.*, a single stock, the trustee is not to be liable for any loss because of a failure to diversify or because the investment does not meet the prudent man standards." H.R. Rep. No. 93-1280, at 305 (1974) (Conf. Rep.).

And to the extent Plaintiff's claim is based on the concentration of Verizon stock in the individual accounts of *other* Plan participants, she lacks Article III standing to assert that claim. *See infra* pp. 21-22. Because individual Plan participants are the ultimate decisionmakers as to the investment of their own funds—and "[o]ne defined contribution plan participant has no pecuniary

8

interest in the accounts of another" (*Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008))—it makes little sense to charge Plan fiduciaries with diversifying the Plan's ultimate holdings.

In light of this incoherence, courts facing claims identical to Plaintiff's have rightly concluded that the 29 U.S.C. § 1104(a)(1)(C) diversification duty, when applied to participant-directed defined contribution plans, requires only that the Plan offer "a diversified menu of investment options" from which participants are free to choose. *Yates*, 286 F. Supp. 3d at 864.

*Yates* dealt with exactly the kind of claim Plaintiff brings here: The plaintiffs argued that after a corporate spinoff, the new entity's defined contribution retirement plan had a duty to forcefully divest from the legacy employer's stock. 286 F. Supp. 3d at 856-57. The court held that because "the plan participants themselves—rather than the plan's trustees or its investment committee—decide how to allocate their contributions among the plan's investment options," all the fiduciaries "can do, it would seem, is offer a diversified menu of investment options." *Id.* at 864; *see also id.* ("What seems most critical … in terms of the trustees' diversification duty, is the range of investment options available to the participants.").

The courts in *Schweitzer* and *Quatrone* were faced with identical spinoff claims, and reached the identical conclusion: "Because Defendants did not mandate that participants' assets remain in [legacy-employer stock] and because Plaintiffs do not allege that the Plan's other investment *options* are not diversified, Plaintiffs fail to allege that the Plan was not diversified on its face." *Schweitzer*, 312 F. Supp. 3d at 620 (emphasis added) (dismissing diversification claim); *see also Quatrone*, 2018 WL 7983284, at *5-6 (dismissing diversification claim where "participants had the choice to allocate their contributions among different plan investments," and "Plaintiff's

9

claim is not that the plan failed to offer investment *options* sufficient to allow participants to diversify their investments but rather that the Defendants were required to force the participants to diversify their investments") (emphasis added). Other courts have expressed the same rule. *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 896 (S.D. Tex. 2004) (dismissing diversification claim where "the self-directed portion of the Dynegy Plan has always included an array of investment options" and the plan was therefore "diversified on its face"); *Dell*, 563 F. Supp. 2d at 690 ("Because the Plan offers over a dozen investment options, it is diversified on its face. Plaintiffs have failed to state a claim for relief" under a duty to diversify.).

Here, Plaintiff does not allege that the lineup of investment options offered by the Frontier Plan was insufficient or undiversified. *See generally* Compl. To the contrary, the Plan offered 31 investment options and made thousands more funds available through a brokerage window. RJN Ex. A, at 29, 32; RJN Ex. E, at 11. Plaintiff has therefore failed to state a claim for breach of the duty of diversification. *See Yates*, 286 F. Supp. 3d at 864; *Schweitzer*, 312 F. Supp. 3d at 620; *Quatrone*, 2018 WL 7983284, at *5-6. As one court concluded in dismissing an identical diversification claim, "The real issue is not diversification but the prudence of the fiduciaries' decision not to force divestiture." *Schweitzer*, 312 F. Supp. 3d at 620. As such, we turn now to Plaintiff's prudence allegations.

## II.     Plaintiff's prudence claim is foreclosed by binding precedent.

Plaintiff next alleges that by not forcing Plan participants to sell off their Verizon stock, Defendants breached their duty of prudence under ERISA. *See* Compl. ¶¶ 51-73, 107. But as the other courts to have considered spinoff divestment allegations like Plaintiff's have uniformly held, Supreme Court and Second Circuit precedent forecloses such a claim.

### A.     *Dudenhoeffer* and *Rinehart* preclude the prudence claim.

ERISA requires that plan fiduciaries act "with the care, skill, prudence and diligence …

that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C.
§ 1104(a)(1)(B). Prudence is thus "measured according to the objective prudent person standard
developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (quo-
ting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)). Fiduciary decisions cannot be evaluated
with the benefit of hindsight: "ERISA's 'fiduciary duty of care … requires prudence, not presci-
ence." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stan-
ley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (quoting *DeBruyne v. Equitable Life Assur-
ance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990)).

As the Supreme Court has explained, "the motion to dismiss for failure to state a claim" is
an "important mechanism for weeding out meritless [prudence] claims." *Fifth Third Bancorp v.
Dudenhoeffer*, 573 U.S. 409, 425 (2014). And plaintiffs face a particularly heavy burden where,
as here, they allege that a fiduciary "should have known in light of publicly available information
… that continuing to hold and purchase" a publicly traded stock "was imprudent." *Id.* at 426.
Plaintiffs cannot satisfy that burden.

In *Dudenhoeffer*, the Supreme Court held that "where a stock is publicly traded," a fiduci-
ary may prudently "rely on the security's market price as an unbiased assessment of the security's
value in light of all public information." 573 U.S. at 426 (quoting *Halliburton Co. v. Erica P. John
Fund, Inc.*, 573 U.S. 258, 273 (2014)). That is, "in the absence of special circumstances," a fidu-
ciary "is not imprudent to assume that a major stock market … provides the best estimate of the
value of the stocks traded on it that is available to him." *Id.* at 426-27 (quotation marks omitted).
As the Court explained, this means that "allegations that a fiduciary should have recognized from
publicly available information alone" that an investment in publicly traded stock was imprudent

"are implausible as a general rule." *Id.* at 426. *Dudenhoeffer* thus "effectively immunizes fiduci-aries from imprudence claims relating to publicly traded securities in the absence of special cir-cumstances." *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 861 (6th Cir. 2017).

Plaintiff's prudence claim is therefore foreclosed by *Dudenhoeffer*. Plaintiff alleges that the Plan's fiduciaries "knew or should have known that the Plan was excessively and dangerously concentrated in Verizon stock" based on publicly available information about Verizon, about the telecommunications industry, and about economic principles. Compl. ¶¶ 6(d), 45, 29-30, 70. But Defendants were entitled to "prudently rely on the market price" of Verizon stock as "the best estimate of the value of the stock[] … available to [them]." *Dudenhoeffer*, 573 U.S. at 427 (quo-tation marks omitted); *see* Compl. ¶ 3 (alleging that Verizon stock is publicly "traded on the New York Stock Exchange under the ticker 'VZ'"). Nor does Plaintiff's Complaint even attempt to allege any "special circumstance affecting the reliability of the market price as 'an unbiased as-sessment of the security's value in light of all public information.'" *Id.* (quoting *Erica P. John Fund*, 573 U.S. at 273); *see Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965, 969 (D.C. Cir. 2016) ("*Dudenhoeffer* requires additional allegations of 'special circumstances' when a plaintiff brings a breach of the duty of prudence claim against a fiduciary based on [public] information.").[4] With-out any allegation of special circumstances, *Dudenhoeffer* bars Plaintiff's prudence claim. *See, e.g.*, *Saumer*, 853 F.3d at 861.

Plaintiff will no doubt attempt to distinguish *Dudenhoeffer* on the grounds that her claim is one of excessive risk, not over- or under-valuation. *See* Dkt. 35, at 5. But that argument is also foreclosed by binding precedent—this time that of the Second Circuit, which has rejected precisely

---

[4]    "Special circumstances" are those that "suggest that the market was not efficient and therefore the market price of a security in that market was not necessarily indicative of its underlying, fundamental value." *Coburn*, 844 F.3d at 970 (emphasis omitted).

that distinction. The Second Circuit has held, in no uncertain terms, that *Dudenhoeffer* "fore-close[s] breach of prudence claims based on public information *irrespective* of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock." *Rine-hart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 66 (2d Cir. 2016) (quotation marks and some emphasis omitted) (rejecting plaintiffs' "attempt to plead around [*Dudenhoeffer*] by saying that their claims concern 'excessive risk'"). Indeed, for purposes of the *Dudenhoeffer* rule, "the pur-ported distinction between claims involving 'excessive risk' and claims involving 'market value' is illusory." *Id.*; *accord Coburn*, 844 F.3d at 971 ("[R]isk-based claims must nonetheless meet *Dudenhoeffer*'s pleading requirement [of special circumstances] to survive a motion to dismiss."); *Saumer*, 853 F.3d at 862 (noting that "[t]he [Supreme] Court's market-price-reliance rule dis-patched both the value- and risk-based claims" in *Dudenhoeffer* itself). Plaintiff cannot escape the *Dudenhoeffer* rule by characterizing her claim as one of excessive risk.[5]

The district courts to have considered allegations like Plaintiff's—*i.e.*, that a plan was im-prudent for holding excessive concentrations of former-employer stock after a spinoff or acquisi-tion—have thus uniformly held that *Dudenhoeffer* forecloses such claims. *See Yates*, 286 F. Supp. 3d at 858-60 (allegations that "the defendants breached the duty of prudence by investing in [for-mer-employer stock], and by failing to make a timely divestiture" do not "state[] a plausible claim for breach of the duty of prudence" under *Dudenhoeffer*); *Schweitzer*, 312 F. Supp. 3d at 620-22 (dismissing claim that "Defendants breached their duty of prudence by permitting participants to retain their interests in the [former-employer stock] in their accounts after the spinoff"); *Quatrone*,

---

[5]     The Second Circuit's recent decision in *Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620 (2d Cir. 2018), is also unavailing for Plaintiff. That case dealt with the pleading requirements for a claim that fiduciaries should have acted differently based on *non*public information (*id.* at 623-24); it says nothing about pleading a public-information claim under *Dudenhoeffer*.

13

2018 WL 7983284, at *3-4 ("[T]he holding in *Dudenhoeffer* applies," barring claim that "continued investment [in former-employer stock] was a breach of duty of prudence because … investment into a single stock [is] an unnecessary risk."); *cf. Usenko*, 2018 WL 999982, at *3 ("The Court agrees with Defendants that *Dudenhoeffer* forecloses Plaintiff's claims.").

Plaintiffs—represented by the same counsel that tried to make this claim work in *Yates*, *Schweitzer*, and *Quatrone*—will offer the same tired arguments that were rejected in each of these cases. *See generally* Dkt. 35 (previewing Plaintiff's arguments). This Court should reject them as well.

### B.    The *Tibble* claim cannot survive without an underlying breach of prudence.

To the extent Plaintiff brings a separate claim based on *Tibble v. Edison International*, 135 S. Ct. 1823 (2015), that claim fails as well. *Tibble* held that "a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones" (*id.* at 1828-29); Plaintiff alleges that Defendants breached that duty by "fail[ing] to conduct an appropriate investigation of continued investment in Verizon common stock." Compl. ¶ 104; *see also id.* ¶¶ 68, 86.

But under the Second Circuit's precedents, "to plead plausibly a breach of the duty of prudence for failure to investigate, 'plaintiffs must allege facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Rinehart*, 817 F.3d at 67 (quoting *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011)). That is, there can be no actionable breach of the *Tibble* duty unless the underlying investments were in fact imprudent: "Plaintiffs cannot maintain a claim for breach of the duty to monitor … absent an underlying breach of the duties imposed under ERISA." *Id.* at 68; *accord, e.g.*, *Yates*, 286 F. Supp. 3d at 862 ("[A]bsent an investment that is either imprudent or improperly diversified, there can be no recovery for a failure to investigate.").

Thus, because *Dudenhoeffer* forecloses Plaintiff's underlying prudence claims, *Tibble* adds

nothing to the equation. *See Schweitzer*, 312 F. Supp. 3d at 623 ("Because Plaintiffs' [investigation and monitoring] allegations restate their claim for breach of the duty of prudence based on public information, *Dudenhoeffer* forecloses their claim."); *Yates*, 286 F. Supp. 3d at 861-62 (dismissing monitoring claim where "plaintiff alleges only that, had the defendants conducted an adequate investigation, they would have learned of the publicly available information purportedly establishing that [former-employer] stock was an excessively risky investment," because "*Dudenhoeffer* makes clear … that defendants could have prudently ignored that information"); *Quatrone*, 2018 WL 7983284, at *6 (similar). The investigation and monitoring allegations fail to state a claim as well.

### C.   The presence of AT&T stock in the Plan does not affect these failings.

The Complaint also alleges that the supposed imprudence of failing to force divestment from Verizon stock was compounded by the presence of AT&T stock in the Plan. *See, e.g.* Compl. ¶¶ 6(c), 49, 72. Because Verizon and AT&T are both telecommunications stocks, the argument goes, their returns are correlated, increasing the Plan's exposure to risk in that sector. *Id.* ¶ 32.

This argument fails for several independent reasons. First, the presence of AT&T stock does nothing to affect the logic of the legal conclusion that *Dudenhoeffer* forecloses Plaintiff's prudence claim.[6] With or without AT&T stock in the Plan, Plaintiff's prudence claim is based on publicly available information, and the Complaint does not allege any special circumstances "suggest[ing] that the market was not efficient and therefore the market price of [Verizon stock] was not necessarily indicative of its underlying, fundamental value." *Coburn*, 844 F.3d at 970 (emphasis omitted). *Dudenhoeffer* therefore bars the claim, irrespective of any investments in AT&T. *See, e.g.*, *Yates*, 286 F. Supp. 3d at 858-60.

---

[6]   Nor does it affect the conclusion that Plaintiff's diversification claim fails because the Plan undisputedly offered a diverse investment lineup. *See supra* pp. 7-10.

Moreover, it is clear from the allegations of the Complaint and judicially noticeable documents that *no* Plan participant could possibly have been "subjected … to additional risks" due to the presence of AT&T stock (Compl. ¶ 6(c)), because no Plan participant could have been invested in *both* the Verizon Common Stock Fund and the AT&T Common Stock Fund (which housed the Plan's AT&T stock, *see* Compl. ¶ 49). As the Complaint alleges, the Plan came to hold AT&T stock in the same way it came to hold Verizon stock: Frontier acquired a business unit from AT&T, and the employees working for that unit brought AT&T stock with them when their AT&T retirement accounts were transferred to Frontier. Compl. ¶¶ 31-33. Critically, both the Verizon Common Stock Fund and the AT&T Common Stock Fund were frozen to new investments; the assets already invested in those funds could be maintained there by the former Verizon and AT&T employees if they so chose, but no new assets could be transferred in. RJN Ex. B, at 30. That is, the *only* Plan participants who could hold Verizon stock were the former Verizon employees acquired in 2010 and 2016; and the *only* participants who could hold AT&T stock were the former AT&T employees acquired in 2014. Absent a series of implausible coincidences which Plaintiff does not allege, those populations are mutually exclusive: Because no individual Plan participant could have been acquired from *both* Verizon and AT&T, no Plan participant could hold both Verizon and AT&T stock.

At a minimum, therefore, Plan participants who own Verizon stock (like Plaintiff) lack Article III standing to complain about the Plan's holdings of AT&T stock, since those participants could not possibly have been harmed by *other* participants' investments in AT&T. *See infra* pp. 21-22. And more generally, it was not imprudent for the Plan's fiduciaries to include both Verizon stock and AT&T stock in the Plan, since no individual participant could have been exposed to the risks of both companies' securities—no matter how correlated their stock prices. *Cf.* Compl. ¶ 32.

The Complaint's allegations about AT&T stock do not state a claim for breach of the duty of prudence, or any other duty under ERISA.

## III.    Frontier is not a fiduciary, and the failure-to-monitor claim cannot survive.

While recognizing that the Committee is the named fiduciary of the Plan, Plaintiff alleges that Frontier itself—the corporate entity—is a fiduciary as well. *See* Compl. ¶¶ 15, 91. That is incorrect. Frontier is not a fiduciary of the Plan, and as such must be dismissed from the case.

"In every case charging breach of ERISA fiduciary duty, … the threshold question is … whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). ERISA "provides that a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any authority or control respecting management or disposition of [plan] assets,' or, 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (quoting 29 U.S.C. § 1102(21)(A)).

Plaintiff's allegation that "Frontier is a fiduciary because it exercised discretionary authority over management of the Plan" (Compl. ¶ 15) is entirely conclusory, and thus fails to plausibly allege Frontier's supposed fiduciary status. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Without any allegations whatsoever regarding the manner in which Frontier supposedly exercised this discretionary authority, the fiduciary allegations are exactly the kind of "naked assertion[s] devoid of further factual enhancement" rejected in *Twombly* and *Iqbal*. *Id.* (quotation marks omitted). Indeed, courts routinely reject "[s]uch bare legal conclusions" that an employer "was a *de facto* Plan fiduciary." *In re JPMorgan Chase & Co.*

17

*ERISA Litig.*, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) (dismissing allegations as "insufficient to state a claim against a purported ERISA fiduciary"); *see also, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 756 F. Supp. 2d 330, 346-48 (S.D.N.Y. 2010) (rejecting conclusory allegations of employer's fiduciary status). This Court should do the same.

Plaintiff's further allegation that Frontier is a fiduciary "because it had discretionary authority to appoint and monitor Plan fiduciaries" (Compl. ¶ 15) similarly fails. Fiduciary status under ERISA is not monolithic; the question is whether the defendant "was acting as a fiduciary … *when taking the action subject to complaint*." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222-23 (2d Cir. 2018) (emphasis added) (quoting *Pegram*, 530 U.S. at 226). But here, there are no allegations—beyond the wholly conclusory (and therefore insufficient) ones in paragraph 108—that Frontier did anything wrong in appointing or monitoring the fiduciary committees.[7] Indeed, Plaintiff nowhere alleges how or why the appointment or monitoring of the Committee resulted in the actions she complains about. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Because the Complaint lacks non-conclusory allegations that Frontier took *any* "action subject to complaint" (*id.*), its alleged power to appoint Plan fiduciaries does not make Frontier a fiduciary, and the allegations against it do not state a claim.

Finally, Plaintiff suggests that Frontier is a fiduciary because "it is responsible for the acts of the Committee and its members who were acting within the scope of their employment." Compl. ¶ 91. But "[i]n the ERISA context, a company does not become a fiduciary merely because its

---

[7]     Apart from being wholly conclusory, the allegation of a breach of the duty to monitor fiduciaries (Compl. ¶ 108) fails as an independent claim because, as explained above, there is no underlying fiduciary breach that monitoring would have uncovered or prevented. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) ("A claim for breach of the duty to monitor requires an antecedent breach to be viable.").

employee is a fiduciary." *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 355 (S.D.N.Y. 2009); *accord, e.g.*, *Bank of Am.*, 756 F. Supp. 2d at 346 ("BofA's status as an employer, including its ability to terminate the employment of members of the Benefits Committee is, alone, insufficient to render BofA an ERISA fiduciary."); *id.* at 347 (noting that "several district courts in this circuit have declined to apply *respondeat superior* in the ERISA context," and collecting cases); *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *15 (S.D.N.Y. Aug. 31, 2009) ("[T]he allegation that Citigroup had the authority to hire and fire some of the named fiduciaries … is insufficient to show that Citigroup exerted control over its employees' fiduciary responsibilities[.]"). Frontier is not a fiduciary on this theory, either, and must be dismissed from the case.

## IV.    The co-fiduciary liability claim fails.

Apart from her substantive claims, all of which are contained in Count I, Plaintiff devotes a separate count of the Complaint to co-fiduciary liability under 29 U.S.C. § 1105(a), which details circumstances in which "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan." *See* Compl. ¶¶ 110-117. As the statutory language suggests, co-fiduciary liability claims are necessarily derivative of an action's substantive ERISA claims; without an underlying breach of fiduciary duty, no co-fiduciary liability can be imposed. *See, e.g.*, *Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("[F]ailure to monitor and breach of co-fiduciary liability … constitute derivative claims that cannot survive absent a viable claim for breach of a duty of prudence. Because the underlying duty of prudence claim fails, so do these derivative claims."); *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 617 (S.D.N.Y. 2015) ("Claims … for co-fiduciary liability require antecedent breaches in order to be viable."). Because Plaintiff's substantive fiduciary duty allegations fail to state a claim, the co-fiduciary duty claim fails as well.

## V.     Plaintiff does not raise a loyalty claim.

While certain allegations in Plaintiff's Complaint gesture at the fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A), Plaintiff has represented to the Court in pre-motion briefing that she "does not raise a breach of the duty of loyalty in the complaint at this time." Dkt. 35, at 9. In reliance on Plaintiff's representation that the Complaint does not contain a duty-of-loyalty claim, Defendants do not fully address the duty of loyalty here, other than to briefly note that the allegations in the Complaint would be insufficient to state a claim.

Even if it were correct that Verizon shareholders somehow "controlled the Committee"—an allegation with no factual support, *see* Compl. ¶ 47—the Second Circuit has explicitly rejected the Complaint's only theory of "conflicted loyalties": that Defendants had incentives not to divest from Verizon stock, as divestiture would supposedly put downward pressure on the stock price.[8] *See* Compl. ¶ 48. As the Second Circuit has held, such a claim is not plausible absent "any *specific facts* suggesting that defendants' investments in [company] stock prompted them to act against the interests of Plan participants." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 145 (2d Cir. 2011) (emphasis added), *abrogated on other grounds by Dudenhoeffer*, 573 U.S. 409. If personally owning a stock that a plaintiff believes to be imprudent were enough to constitute a breach of the duty of loyalty, "almost no corporate manager could ever serve as a fiduciary of his company's Plan," and "[t]here is simply no evidence that Congress intended such a severe interpretation of the duty of loyalty." *Id.* at 145-46. No specific allegations are present here, so any loyalty claim would fail.

---

[8]     This is itself an implausible assertion, given the miniscule proportion of Verizon's total market capitalization represented by the Plan's holdings of Verizon stock. *See, e.g.*, *Verizon Communications, Inc.*, Yahoo Finance, https://finance.yahoo.com/quote/VZ/ (market capitalization of over $241 billion as of April 10, 2019).

**VI.    Plaintiff lacks standing to complain about actions that took place before she joined the Plan, or about supposed injuries to other participants' accounts.**

Plaintiff has represented that she became a Plan participant in 2016. Dkt. 35, at 9. That is, she is part of the cohort of Verizon employees acquired by Frontier that year. *See supra* p. 4 & note 3. But as part of that second cohort, Plaintiff cannot possibly have been harmed by Defendants' alleged decision—years earlier—not to forcefully divest the *first* set of former Verizon employees of their stock holdings. Nor does she have standing more generally to complain about the supposed over-concentration of Verizon stock in other participants' investment accounts.

Injury in fact—"the '[f]irst and foremost' of standing's three elements"—requires that Plaintiff have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998), and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff cannot possibly have suffered a "concrete and particularized" injury from an alleged over-concentration of Verizon stock in other participants' accounts; it is axiomatic that "[o]ne defined contribution plan participant has no pecuniary interest in the accounts of another." *Bendaoud*, 578 F. Supp. 2d at 266. Because "recovery made on behalf of a defined contribution plan must be allocated to the individual accounts injured by the breach," *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008), Plaintiff lacks a "personal stake in the outcome of the controversy" over whether Defendants acted in accordance with their fiduciary duties by failing to divest *other* participants in 2011, years before she joined the Plan. *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). She therefore lacks Article III standing to challenge those actions. *Id.*[9]

---

[9]    Plaintiff will rely on *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), to suggest that her standing extends beyond the years of her participation in the Plan, but that case is not on point. *Braden* held that "a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered." *Id.* at 592. But here,

Indeed, Plaintiff lacks standing more generally to complain about the supposed over-concentration of Verizon stock in the self-directed account of *any* other Plan participant, as she cannot have "suffered an invasion of a legally protected interest" from other people's decisions about what to do with their own money. *Spokeo*, 136 S. Ct. at 1548. It is irrelevant to this conclusion that ERISA generally authorizes a participant to sue on behalf of the plan. *See* 29 U.S.C. §§ 1109, 1132(a)(2). As the Supreme Court has repeatedly made clear, "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547-48; *see also id.* at 1548 ("In no event … may Congress abrogate the Art. III minima.") (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979)); *Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019) (*Spokeo* "rejected the premise … that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.") (quotation marks omitted). The question in every case is whether the plaintiff has personally satisfied "the irreducible constitutional minimum of standing" (*Lujan*, 504 U.S. at 560), and plaintiffs alleging an over-concentration of investments in other plan participants' individual retirement accounts cannot do so.[10] Plaintiff lacks standing.

---

the "conduct that harmed" Plaintiff (*i.e.* the failure to force divestment on the 2016 cohort of Verizon employees), is not the same conduct that underlies Plaintiff's claims about the 2010 transaction (i.e. the failure to force divestment on a completely separate cohort of employees, years earlier). Because the conduct underlying Plaintiff's claims consists of two distinct alleged acts, *Braden* does not persuade, and Plaintiff lacks standing to challenge Defendants' conduct with respect to the 2010 cohort of former Verizon employees.

[10]     "That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 136 S. Ct. at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

## VII.   Plaintiff's claims about the 2010 acquisition are time-barred.

Finally, Plaintiff's claims regarding Defendants' actions in 2010 and 2011 are barred by ERISA's statute of repose. Quite apart from its three-year statute of limitations, which is triggered when a plaintiff has "actual knowledge of the breach or violation," ERISA also bars any suit brought more than six years after "the date of the last action which constituted a part of the breach or violation," regardless of the plaintiff's knowledge. 29 U.S.C. § 1113. Here, Plaintiff alleges that the Plan's Verizon stock holdings were imprudent and undiversified from the time they were introduced into the Plan, which occurred in December of 2011. Compl. ¶ 24; *see* RJN Ex. A, at 25. The six-year statute of repose thus expired for Plaintiff's claims in December of 2017, and the Complaint was not filed until more than nine months later.

Plaintiff may argue that her claims are timely under *Tibble*, which imposed "a continuing duty of some kind to monitor investments and remove imprudent ones," and held that "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." 135 S. Ct. at 1828-29. But this case does not fall within the scope of *Tibble*'s rule. As Judge Kaplan of the Southern District of New York explained, "changed circumstances can trigger a fiduciary's [*Tibble*] obligation to review the prudence of an investment, but to make out such a claim plaintiffs must allege that *circumstances have actually changed sufficiently* and that the failure to make such a review injured the plan." *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015) (emphasis added). The Second Circuit affirmed that holding "for the reasons stated by the District Court." *Rinehart*, 817 F.3d at 67 n.3.

Here, there is no allegation that circumstances have changed with respect to the prudence of Defendants' 2011 decision to retain participants' Verizon stock—the claim is not that investment in Verizon stock *became* imprudent at some point along the line, but that it was imprudent (and undiversified) *from the beginning*. That is, "the last action which constituted part of the

breach." 29 U.S.C. § 1113(1), was the decision to take on the Verizon stock in the first place and not immediately force divestment—an action that undisputedly took place more than six years prior to the filing of the Complaint. Plaintiff's Complaint is therefore largely time-barred, in addition to its failure to state a claim.

## CONCLUSION

The Court should dismiss Plaintiff's Complaint in its entirety.


Dated: April 19, 2019

Nancy G. Ross
Samuel P. Myler
Samuel Block
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Susan S. Murphy
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (850) 251-5000

Respectfully submitted,

*/s/ Brian D. Netter*
Brian D. Netter
 bnetter@mayerbrown.com
Andrew A. Lyons-Berg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

24

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 19, 2019, a copy of the foregoing was filed electronically

using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.


By: ___*/s/ Brian D. Netter*_____
Brian D. Netter