**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>FRONTIER COMMUNICATIONS CORP., THE RETIREMENT INVESTMENT & ADMINISTRATION COMMITTEE AND JOHN/JANE DOES 1-10,<br><br>    Defendants. | Civil Action No. 3:18-cv-01538-RNC |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .....................................................................................1

III.    LEGAL STANDARD.................................................................................................5

IV.     ARGUMENT ..............................................................................................................6

        A.      The Tatum Litigation Demonstrates the Plausibility of Plaintiff's Case .................6

        B.      Plaintiff Has Adequately Pled a Diversification Claim ...........................................9

        C.      Plaintiff Has Adequately Pled a Prudence Claim ...................................................14

                1.      Dudenhoeffer Supports Plaintiff's Argument............................................16

                2.      Tibble Supports Plaintiff's Claims.............................................................20

                3.      The AT&T Stock Fund Compounded the Plan's Concentration
                        Risk ............................................................................................................21

        D.      Plaintiff Has Adequately Pled a Failure to Monitor Claim Against Frontier ........22

        E.      Plaintiff Has Standing With Respect to All Claims................................................25

        F.      Plaintiff's Claims Are Not Time-Barred................................................................28

V.      CONCLUSION.........................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Agway, Inc., Employees' 401(k) Thrift Inv. Plan v. Magnuson*,
No. CIVA503CV1060HGMDEP, 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) ...................... 23

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) .................................................................................................... 24

*Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y*,
841 F.2d 658 (5th Cir.1988) ..................................................................................................... 25

*American Psychiatric Ass'n v. Anthem Health Plans*,
821 F.3d 352 (2d Cir. 2016)...................................................................................................... 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................ 5, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................ 5, 16

*Bishop v. Commodity Exch., Inc.*,
564 F. Supp. 1557 (S.D.N.Y. 1983).......................................................................................... 23

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..................................................................................... 6, 24, 27, 28

*Cent. Nat. Bank of Mattoon v. U.S. Dep't of Treasury*,
912 F.2d 897 (7th Cir. 1990) ......................................................................................... 9, 18, 19

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013)........................................................................................................ 6

*Crocco v. Xerox Corp.*,
137 F.3d 105 (2d Cir. 1998)...................................................................................................... 25

*Cunningham v. Cornell Univ.*,
No. 16-cv-6525, 2019 WL 275827 (S.D.N.Y. Jan 22, 2019) .............................................. 27, 28

*DiFelice v. U.S. Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) ........................................................................................ 6, 12, 14

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)...................................................................................................... 24

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985)...................................................................................................... 5

*Fifth Third Bancorp v. Dudenhoeffer,*
573 U.S. 409 (2014) .................................................................. 1, 11, 15, 16, 17, 18, 19, 20, 21

*Flomo v. Firestone Nat. Rubber Co., LLC,*
643 F.3d 1013 (7th Cir. 2001) ............................................................................... 23

*Gedek v. Perez,*
66 F. Supp. 3d 368 (W.D.N.Y. 2014) ..................................................................... 14

*Glass Dimensions, Inc., v. State St. Bank & Trust Co.,*
285 F.R.D. 169 (D. Mass. 2012) ........................................................................... 28

*Hamilton v. Carell,*
243 F.3d 992 (6th Cir.2001) .................................................................................. 25

*Hart v. FCI Lender Servs., Inc.,*
797 F.3d 219 (2d Cir. 2015) .................................................................................... 5

*Hecker v. Deere & Co.,*
569 F.3d 708 (7th Cir. 2009) ................................................................................... 6

*Howell v. Motorola, Inc.,*
633 F.3d 552 (7th Cir. 2011) ................................................................................. 25

*In re Am. Int'l Grp., Inc. ERISA Litig. II,*
No. 08 CIV. 5722 LTS KNF, 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) ....................... 12, 14

*In re Banco Bradesco S.A. Sec. Litig.,*
277 F. Supp. 3d 600 (S.D.N.Y. 2017) .................................................................... 23

*In re Citigroup ERISA Litig.,*
662 F.3d 128 (2d Cir. 2011) .................................................................................. 11

*In re Dell, Inc. ERISA Litig.,*
563 F. Supp. 2d 681 (W.D. Tex. 2008) .................................................................. 10

*In re Dynegy, Inc. Erisa Litig.,*
309 F. Supp. 2d 861 (S.D. Tex. 2004) ................................................................... 10

*In re Fannie Mae 2008 ERISA Litig.,*
No. 09 CIV. 1350 PAC, 2012 WL 5198463 (S.D.N.Y. Oct. 22, 2012) ...................... 23

*In re Lehman Brothers Sec. and ERISA Litig.,*
113 F. Supp. 3d 745 (S.D.N.Y. 2015) .................................................................... 29

*In re Morgan Stanley ERISA Litig.,*
696 F. Supp. 2d 345 (S.D.N.Y. 2009) .................................................................... 12

iii

*In re Polaroid ERISA Litig.,*
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................ 12

*In re Polaroid ERISA Litig.,*
362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................................................................... 23

*In re WorldCom, Inc.,*
263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...................................................................... 12

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.,*
892 F.3d 719 (5th Cir. 2018) .................................................................................... 24

*Jander v. Ret. Plans Comm. of IBM,*
910 F.3d 620 (2d Cir. 2018) ....................................................................................... 5

*Kopp v. Klein,*
573 U.S. 956 (2014) .................................................................................................. 12

*Kopp v. Klein,*
722 F.3d 327 (5th Cir. 2013) .................................................................................... 12

*Krueger v. Ameriprise Fin. Inc.,*
304 F.R.D. 559 (D. Minn. 2014) .............................................................................. 28

*Langan v. Johnson & Johnson Consumer Companies, Inc.,*
897 F.3d 88 (2d Cir. 2018) ....................................................................................... 27

*Langbecker v. Electronic Data Systems Corp.,*
476 F.3d 299 (5th Cir. 2007); .................................................................................... 6

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
552 U.S. 248 (2008) ................................................................................................... 5

*Leber v. Citigroup 401(k) Plan Inv. Committee,*
323 F.R.D. 145 (S.D.N.Y. 2017) ............................................................................. 27

*Long Island Head Start Child Development Services, Inc. v.*
*Economic Opportunity Commission of Nassau County, Inc.,*
710 F.3d 57 (2d Cir 2013) ........................................................................................ 27

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) .................................................................................................. 26

*McMahon v. McDowell,*
794 F.2d 100 (3d Cir. 1986) ..................................................................................... 25

*Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,*
666 F.3d 68 (2d Cir. 2011) ................................................................................. 22, 26

iv

*Miller v. Mellon Long Term Disability Plan*,
721 F. Supp. 2d 415 (W.D. Pa. 2010) .......................................................................... 25

*Myers v. Admin. Comm., Seventy-Seven Energy, Inc. Ret. & Sav. Plan*,
No. CIV-17-200-D, 2019 WL 1320064 (W.D. Okla. Mar. 22, 2019) ............................ 13, 14, 20

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v.
Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)........................................................................................ 24

*Pfeil v. State St. Bank & Tr. Co.*,
671 F.3d 585 (6th Cir. 2012) ...................................................................................... 11

*Quatrone v. Gannett Co., Inc.*,
2018 WL 7983284 (E.D. Va. Sept. 26, 2018)................................................................ 10, 11, 20

*Rinehart v. Lehman Bros. Holdings Inc.*,
817 F.3d 56 (2d Cir. 2016)........................................................................................ 17, 18, 19, 20

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
718 F. App'x 3 (2d Cir. 2017) .................................................................................... 28

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
No. 3:15-CV-1839 (VAB), 2016 WL 7494320 (D. Conn. Dec. 30, 2016) ...................... 27

*Sacerdote v. New York Univ.*,
No. 16-CV-6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ........................ 6

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
312 F. Supp. 3d 608 (S.D. Tex. 2018) ........................................................................ 10, 11, 20

*Summers v. State Street Bank & Trust Co.*,
453 F.3d 404 (7th Cir. 2006) ...................................................................................... 17

*Sweda v. Univ. of Pennsylvania*,
No. 17-3244, 2019 WL 1941310 (3d Cir. May 2, 2019) ................................................ 7

*Tatum v. R.J. Reynolds Tobacco Co.*,
No. 02CV00373, 2016 WL 660902 (W.D.N.C. Feb. 18, 2016) .................................... 7, 8, 15, 19

*Tatum v. R.J. Reynolds Tobacco Co.*,
No. 102CV00373, 2007 WL 16125800 (M.D.N.C. May 31, 2007)................................ 9

*Tatum v. RJR Pension Inv. Comm.*,
855 F.3d 553 (4th Cir. 2017) ...................................................................................... 8, 20

*Tatum v. RJR Pension Investment Committee*,
761 F.3d 346 (4th Cir. 2014) ...................................................................................... 7

*Tibble v. Edison Int'l,*
135 S. Ct. 1823 (2015) .......................................................................... 14, 20, 29

*Urakhchin v. Allianz Asset Management of America,*
No. 5-1614, 2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ........................................ 28

*Veera v. Ambac Plan Admin. Comm.,*
769 F. Supp. 2d 223 (S.D.N.Y. 2011) ...................................................................... 23

*Vellali v. Yale Univ.,*
308 F. Supp. 3d 673 (D. Conn. 2018) ...................................................................... 14

*Walsh v. March & McLennan Cos.,*
No. 04-0888, 2006 WL 734899 (D. Md. Feb. 27, 2006) ........................................ 28

*Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.,*
621 F. App'x 70 (2d Cir. 2015) .................................................................................. 22

*Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.,*
No. 6:12-CV-6279 MAT, 2014 WL 4285028 (W.D.N.Y. Aug. 29, 2014) ........................... 22, 26

*Yates v. Nichols,*
286 F. Supp. 3d 854 (N.D. Ohio 2017) .......................................................... 10, 11, 20

*Young v. Gen. Motors Inv. Mgmt. Corp.,*
325 F. App'x 31 (2d Cir. 2009) .................................................................................. 9

## STATUTES

29 U.S.C. § 113 .......................................................................................................... 28

ERISA § 3(34), 29 U.S.C. § 1002(34) ...................................................................... 1

ERISA § 404, 29 U.S.C. § 1104 ................................................................................ 26

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .......................................... 9, 14, 21

ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) .......................... 9, 10, 11, 12, 13, 14, 19, 21

ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2) ................................ 11, 13, 14, 15, 16, 20

ERISA § 404(c), 29 U.S.C. § 1104(c) ................................................................ 11, 12

ERISA § 502(a)(1)(B), 29 U.S.C. § 1109(a)(1)(B) ................................................. 25

ERISA § 502(a)(2), 29 U.S.C. § 1109(a)(2) .................................................. 10, 22, 27

**OTHER AUTHORITIES**

A. Hess, G. Bogert, & G. Bogert, LAW OF TRUSTS AND TRUSTEES § 684 (3d ed. 2009) ............ 29

N. Gregory Mankiw, Principles of Economics 546 (1998) ........................................................ 3

**RULES**

Fed. R Civ. P. 12(b)(6) ............................................................................................................. 5

Fed. R. Civ. P. 8(a)(2) .............................................................................................................. 5

**REGULATIONS**

29 C.F.R. § 2550.404c–1 .......................................................................................................... 12

57 Fed. Reg. 46906 .................................................................................................................. 12

## I.     INTRODUCTION

Plaintiff Mary Reidt ("Plaintiff") brought this action on behalf of herself, the Frontier Communications 401(k) Savings Plan (the "Plan" or "Frontier Plan"), and a class of similarly situated participants in the Plan.  Plaintiff alleges that the Plan fiduciaries ("Defendants") violated their duties of diversification and prudence under the Employee Retirement Income Security Act of 1974 ("ERISA") through excessive concentration of Plan assets in a fund that invested in a single equity, the common stock of Verizon Communications, Inc. ("Verizon").  As the Supreme Court has recognized, a fund that "invests primarily" in the stock of a single company is "***not*** prudently diversified."  *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 416 (2014) ("*Dudenhoeffer*") (emphasis in original).

Arguing, in essence, that diversification and prudence are satisfied so long as the Plan offers other funds which are prudent and diversified, Defendants have moved to dismiss the complaint in its entirety.  But ERISA's strict fiduciary duties cannot be so narrowly cabined, nor so easily satisfied.  Defendants' additional arguments — standing, statute of limitations, lack of fiduciary status — are both legally and factually unsound.  The motion should be denied.

## II.    FACTUAL BACKGROUND

The relevant facts are set out in the Complaint, ECF No. 1 ("Compl.").   Frontier Communications ("Frontier") is a telecommunications company that provides voice, data and video services in approximately 29 states.  Frontier is a Delaware Corporation with its principal place of business in Norwalk, Connecticut.  Compl., at ¶ 14.  The Frontier Communications 401(k) Savings Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) because it provides an individual account for each participant and benefits based upon the amount contributed to the participant's account, and any

income, expenses, gains and losses, and any forfeitures of accounts of other participants which could be allocated to such participants' accounts.  *Id.,* ¶ 41.  The Retirement Investment & Administrative Committee ("the Committee") is the named fiduciary of the Plan, and exercises discretionary authority and control over management of the Plan and authority or control over management of Plan assets.  *Id.,* ¶ 17.  The members of the Committee are appointed by a committee of Frontier's Board of Directors (the "Board").  *Id.,* ¶ 16.

On July 1, 2010, Verizon — also a telecommunications company — spun-off a subsidiary ("Spinco") which held defined assets and liabilities of the local exchange business and related landline activities in predominantly rural areas in 14 states. *Id.* at ¶ 19.  Immediately following the spin-off, Spinco merged with Frontier. *Id.*  As part of the transaction, the Verizon Savings Plan for Management Employees spun off a portion of its assets related to retirement plan accounts of personnel who became Frontier employees as a result of the spin-off and merger, and created the FCCSI Management Plan. *Id.* at ¶ 24.  The FCCSI Management Plan was merged in its entirety into the Plan on December 30, 2011. *Id.*  At the time that the FCCSI Management Plan was merged into the Plan, Verizon stock represented 15.32% of the Plan's assets.  *Id.,* ¶ 27.

On October 24, 2014, Frontier acquired the wireline proprieties of AT&T Inc. in Connecticut.  *Id.,* ¶ 31.  The agreement between AT&T and Frontier also merged certain former AT&T 401(k) Plans into the Plan, which entailed the transfer of assets to the Plan, including $114,455,799 in AT&T stock.  *Id.*  AT&T, like Verizon and Frontier, is a telecommunications company, and its stock price is closely correlated with Verizon's.  *Id.,* ¶ 32.  At the end of the quarter following the AT&T acquisition, the Plan's investments included a $34.25 million investment in the Frontier Communications Corporation Common Stock Fund ("Frontier Stock Fund"), a $123.18 million investment in the Verizon Communications Inc. Common Stock Fund

("Verizon Stock Fund"), and a $114.46 million investment in the AT&T Inc. Common Stock Fund ("AT&T Stock Fund") (collectively "Single Stock Funds"). *Id.,* ¶ 33. While Plan Participants were not permitted to hold more than 15% of their Plan investments in the Frontier Stock Fund, the Plan placed no limits at all on investments in the non-employer Single Stock Funds for Verizon and AT&T. *Id.,* ¶ 35.

In 2015, Frontier entered into a new agreement with Verizon to acquire Verizon's wireline proprieties in California, Texas, and Florida. *Id.,* ¶ 36. That acquisition transferred more Verizon employees to Frontier, leading to the transfer to the Plan of additional assets from two Verizon retirement plans. *Id.,* ¶ 37. As of December 31, 2016, the Plan held $354,735,963 in Verizon common stock (13.15% of Plan assets) and $122,671,845 in AT&T Common Stock (4.55% of Plan assets).

Because the value of any single stock is tied to the fortunes of one company, holding a single stock is unduly risky. By contrast, investors who hold a diverse portfolio of stocks and bonds face less risk because they have only a small stake in each company. *Id.,* ¶ 70 (citing, *inter alia,* N. Gregory Mankiw, Principles of Economics 546 (1998)). The Plan's heavy investment in the stock of a single company, Verizon, contrasts sharply with Frontier's pension plan, a defined benefit plan where participants are entitled to a set level of future benefits, and the company bears the risk of investment losses. For example, at the end of 2011, when Verizon stock comprised more than 15 percent of the assets of the Plan, Verizon stock made up only ***seven one hundredths of one percent*** of the assets of the pension plan. *Id.,* ¶ 27. Verizon stock makes up less than 1.5% of the diversified equity market measured by the S&P 500 Index; indeed, the percentage of Plan assets in Verizon stock is far greater than the percentage of Verizon stock in a mutual fund that actually ***concentrates*** in the telecommunications sector. *Id.,* ¶¶ 28–29. Accordingly, the Plan has

been approximately 10 times more concentrated in Verizon stock than a diversified investment would be, and approximately 6 times more concentrated than a telecom investor would be, and 200 times more concentrated in Verizon stock than defendants chose to be when they bore the risk of underperformance. *Id.,* ¶ 30.

Despite the heavy concentration of Plan assets in Verizon stock from December 30, 2011 until the present, Defendants made no efforts to liquidate the Plan's holdings in the Verizon Stock Fund, remove the Verizon Stock Fund as an investment option, or otherwise limit the Plan's exposure to Verizon Stock. *Id.,* ¶ 73. Instead, the Plan acquired even ***more*** shares of Verizon Stock when it was already imprudently undiversified. *Id.,* ¶ 106. The process of notifying Plan participants, closing the fund and mapping remaining Fund investments to prudent investment options could have been completed in a year — by no later than December 31, 2012. *Id.,* ¶ 81.

The Plan's concentrated Verizon position caused the Plan and its participants to suffer millions of dollars in losses. *Id.* ¶ 74. Between December 31, 2012 and August 13, 2018, Verizon stock underperformed a S&P 500 Index tracking alternative by 77.4 percentage points. *Id.,* ¶ 75. The Verizon Stock Fund also underperformed other investment options in the Plan, including both the Plan's "default option", a series of target date funds, and Vanguard stock market index funds offered by the Plan. *Id.,* ¶¶ 78–80. The Verizon Stock Fund provided lower returns and higher risk. *Id.,* ¶ 80. If the assets that were in the Fund had been invested in the Plan's default investment options on December 31, 2012, the Plan's assets today would be $113 million greater; the returns would have been higher still if the assets had been invested in the Vanguard index funds. *Id.,* ¶¶ 79–81.[1]

_____

[1] Defendants argue that the Complaint "cherry-picks dates in an attempt" to manufacturer losses. Def. Mem. at 3. In fact, it is Defendants who do so by selecting July of 2010 as the starting point for their analysis, when the Plan did not even ***acquire*** the Verizon stock until the end of December

## III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This is not a "probability requirement." *Id.* at 678. Rather, a complaint states a plausible claim for relief if the factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court evaluating a motion to dismiss must "accept [plaintiff's] well-pleaded factual allegations as true and draw all reasonable inferences in [plaintiff's] favor. *Hart v. FCI Lender Servs., Inc.,* 797 F.3d 219, 221 (2d Cir. 2015); *see also Jander v. Ret. Plans Comm. of IBM,* 910 F.3d 620, 629 (2d Cir. 2018) ("in evaluating the defendants' motion to dismiss, the district court was required to accept the complaint's well-pleaded allegations as true."). A complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

---

in 2011, and Plan fiduciaries would have required some period of time to perform due diligence and give proper notice to Plan participants prior to divesting from the Verizon Stock. Compl. ¶¶ 46 and 81. Moreover, Defendants misapprehend the measure of damages in a breach of fiduciary duty case. Damages are not measured by how much the imprudent investment declined in value, but rather, by the difference between the performance of the imprudent investment and prudent alternatives that were available; moreover, "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir. 1985). Moreover, "[t]he burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty." *Id.* The Supreme Court has likewise recognized that fiduciaries can by liable for "lost profits" that would have been achieved through prudent investments as well as declines in value of assets that the fiduciaries should have sold. *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 253 n. 4 (2008). The magnitude of the Plan's losses caused by Defendants' fiduciary breaches is not, in any event, a matter that can properly be determined at the pleading stage.

plausible." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted); *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 360 (2d Cir. 2013) (court evaluating motion to dismiss must consider "allegations of the complaint as a whole in context"); *Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting *Braden*). This approach is especially vital in ERISA actions, in which private individuals assume the "important role" Congress placed on them to "enforc[e] ERISA's fiduciary duties" and "prevent through private civil litigation misuse and mismanagement of plan assets." *Braden,* 588 F.3d at 597–98 (citations, punctuation omitted). A "holistic evaluation of an ERISA complaint's factual allegations" is counseled by plaintiff-participants' "limited access to crucial information" regarding facts that "tend systemically to be in the sole possession of defendants." *Id.* at 598.

## IV.   ARGUMENT

### A.   The *Tatum* Litigation Demonstrates the Plausibility of Plaintiff's Case

The essence of Defendant's argument is that Defendants satisfied their fiduciary duties under ERISA by offering prudent, diversified investment fund options in the Plan and thus, ***as a matter of law,*** they cannot be liable for also including undiversified non-employer single-stock funds, even when the Plan's assets are heavily concentrated in them.  But it is not enough to simply provide participants with a mix of options — some prudent and some imprudent, some diverse and some not — and then leave participants to their own devices. *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (a fiduciary's plan to "insulate itself from liability" by "including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them . . . would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives"); *see also, Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 308 n.18 (5th Cir. 2007); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 414, 423-424 (4th Cir. 2007).  As the

Third Circuit held earlier this month, neither the statute nor precedent "insulate[s] from liability every fiduciary who, although imprudent, initially selected a "mix and range" of investment options." *Sweda v. Univ. of Pennsylvania,* No. 17-3244, 2019 WL 1941310, at *9 (3d Cir. May 2, 2019).

The flaw in Defendants' argument is mostly clearly demonstrated by the lengthy litigation involving the spinoff of RJR from Nabisco, where fiduciaries of the RJR Plan made the opposite decision from the Committee Defendants here, divesting the plan of Nabisco stock within six months of the spin-off.  Some plan participants brought suit challenging that decision.  After a bench trial, the district court found a breach of the duty to properly manage the investment, but also determined that "'a reasonable and prudent fiduciary *could* have made [the same decision] after performing [a proper investigation].'" *Tatum v. RJR Pension Investment Committee* 761 F.3d 346, 351 (4th Cir. 2014) ("*Tatum 5*") (quoting district court).  The Fourth Circuit reversed, holding that the proper standard was whether a reasonable and prudent fiduciary *would have* divested the stock.  *Id.* at 365 ("We would diminish ERISA's enforcement provision to an empty shell if we permitted a breaching fiduciary to escape liability by showing nothing more than the mere possibility that a prudent fiduciary 'could have' made the same decision.").

On remand, after evaluating the evidence presented at trial, the district court ruled that a prudent fiduciary would have divested the single-stock fund. That plan "included not one single-stock fund, but three single-stock funds, two of them were non-employer single-stock funds." *Tatum v. R.J. Reynolds Tobacco Co.*, No. 02CV00373, 2016 WL 660902, at *13 (W.D.N.C. Feb. 18, 2016) ("*Tatum 6*"). "In contrast, of approximately 10,000 participant directed funds, none maintained active non-employer single-stock options" and "[t]he parties identified only twelve circumstances in which 401(k) plans maintained frozen non-employer stock funds, nine of which

7

occurred prior to January 31, 2000." *Id*. And because the fund resulted from a spin-off, there was idiosyncratic risk due to the correlation between the non-employer single-stock fund and the employer stock in the plan. *Id*.[2]

The Fourth Circuit affirmed and held that "a prudent fiduciary would have balanced the increased risk of loss that the Nabisco Funds brought to the Plan — risk reflected in the low stock price, ***but also the risk inherent in their lack of diversity within the plan*** and the Nabisco stock's high correlation with RJR's battered stock — against the Funds' likely ***average*** returns." *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 556 (4th Cir. 2017) ("*Tatum 7*") (first emphasis added).

Similarly, Plaintiff here alleges that the Plan's investment in the Verizon Stock Fund was dangerously over-concentrated, and that this concentration risk was exacerbated by the Plan's additional investment in two other single-stock funds, AT&T and Frontier, that were in the same industry as Verizon.  Here, as in *Tatum,* there was ***no*** reason for Defendants to expect above-average returns and ***no*** justification for the increased risk of an undiversified single-stock fund. Put another way, since Verizon stock was widely traded in an efficient market, it was properly priced on a per-share basis and could not be expected to outperform market expectations sufficient to justify the Funds' "excessive" risks resulting from a lack of diversification. To use the language of modern portfolio theory, the over-concentration in Verizon stock was a massive uncompensated risk. Since the market accurately valued Verizon stock — indeed, ***precisely because*** there are no

---

[2]The evidence in *Tatum* included expert testimony from both sides on "the decision that a prudent fiduciary would have made about the frozen Nabisco Funds." *Id*. at *12. It further included evidence on the nature of the funds and the practices of similar funds. *Id*. at *13. There was evidence about the correlation between the former employer's stock and the current employer's stock, and on the effect of that correlation on the prudence of retaining the single-stock fund. *Id*. The parties also presented testimony and evidence on the effect that industry trends—in that case, the tobacco industry—had on the prudence of diversifying the former-employer single-stock fund. The court allowed discovery, received evidence, and resolved the case. The case was not decided on a motion to dismiss.

special circumstances to show the market did not accurately value the stock — there was no reason to have so many eggs in one basket.  *See Cent. Nat. Bank of Mattoon v. U.S. Dep't of Treasury,* 912 F.2d 897, 902 (7th Cir. 1990) (concentration risk is "uncompensated" and "can be diversified away simply by holding a larger, more balanced portfolio.").

Although the *Tatum* court ultimately found that a prudent fiduciary not only ***could have*** divested from the non-employer stock fund, but ***would have*** done so, the *Tatum* plaintiff's claim that fiduciaries breached their duties by divesting survived a motion to dismiss.  *See Tatum v. R.J. Reynolds Tobacco Co.,* No. 102CV00373, 2007 WL 1612580, at *10 (M.D.N.C. May 31, 2007) (*Tatum 3*).  However, under the rule proposed by the Defendants here, if plan fiduciaries refuse to divest, thereby allowing the Plan to assume massive uncompensated concentration risk, their decision is unreviewable, and the court is required to dismiss any challenge as a matter of law.  If challenges to divestment from non-employer stock funds can survive a motion to dismiss, but challenges to failure to divest cannot, fiduciaries will be highly motivated to take the latter course.  In light of the *Tatum* court's ultimate determination that a prudent fiduciary ***would*** divest, this would truly be a perverse result.

### B.     Plaintiff Has Adequately Pled a Diversification Claim

Section 404(a)(1)(C) of ERISA requires that plan fiduciaries "diversify[ ] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so . . . ."  29 U.S.C. § 1104(a)(1)(C).[3]  As Defendants' own documents plainly

---

[3] Defendants argue that Section 404(a)(1)(C) requires diversification of plans, not of funds within plans. Def. Mem. at 6–7 (citing *Young v. Gen. Motors Inv. Mgmt. Corp.,* 325 F. App'x 31, 33 (2d Cir. 2009)).  Plaintiffs do not disagree with this interpretation of Section 404(a)(1)(C).  As discussed below, however, the prudence requirement of Section 404(a)(1)(B) includes a diversification component and, unlike Section 404(a)(1)(C), the prudence requirement applies both to plans as a whole and to individual funds within plans.  Defendants also argue, in a contradictory fashion, that Plaintiffs' claims are somehow based on concentrations of Verizon stock in either "***her own*** self-directed retirement account" or "the individual accounts of ***other*** Plan participants

state, the Plan's "exposure to a concentration of issuer risk is limited by the diversification of investments across all participant-directed fund elections *except for the Frontier Communications Corporation Common Stock Fund and Verizon Communications Inc. Common Stock Fund, which are invested in the security of a single issuer*."  ECF 43-3 (Plan's 2010 form 5500), Notes to Financial Statements, p. 11 (emphasis added).  Moreover, as discussed above, the Plan as a whole was undiversified.  At various times, Verizon represented over 15 percent of the Plan's assets.  Compared to Frontier's defined benefit plan, a diversified equity fund or even a mutual fund focused on the telecommunications industry, the Plan's concentration of assets in Verizon Stock was extremely undiversified.  And, when the Plan's investment in AT&T stock is considered — as it should be, since the two company's stocks are highly correlated — the lack of diversification is even more pronounced.

Defendants nonetheless argue that this lack of diversification is irrelevant as a matter of law, on the theory that ERISA requires nothing more of fiduciaries for defined contribution plans than offering a "diversified menu of investment options."  Def. Mem. at 9 (quoting *Yates v. Nichols,* 286 F. Supp. 3d 854, 864 (N.D. Ohio 2017)).  Defendants point to additional lower-court rulings from other circuits to support this minimalist view of Section 404(a)(1)(C). *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan,* 312 F. Supp. 3d 608 (S.D. Tex. 2018) and *Quatrone v. Gannett Co., Inc.*, 2018 WL 7983284 (E.D. Va. Sept. 26, 2018).  Def. Mem. at 9–10.[4]

_____

. . . ."  Def. Mem. at 8 (emphasis in original).  Section 404(a)(1)(C) does not address *individual* plan investments, any more than it addresses individual fund investments.  Instead, it requires diversification of the plan as a whole, and Plaintiff, as a participant in the Plan, has standing to enforce these fiduciary standards pursuant to Section 502(a)(2) of ERISA, 29 U.S.C. § 1109(a)(2).

[4] Defendants also cite *In re Dynegy, Inc. Erisa Litig.,* 309 F. Supp. 2d 861, 896 (S.D. Tex. 2004) and *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 (W.D. Tex. 2008), but both cases involved a claim that fiduciaries had failed to follow diversification obligations in plan documents, not that they had failed to meet the diversification requirements of ERISA Section 404(a)(1)(C).  Indeed, because both *Dynegy* and *Dell* involved an employer stock fund, it was exempt from ERISA's

Defendants (and cases like *Yates*), fail to appreciate several key points.  First, ERISA doesn't say anything about requiring plan fiduciaries to provide diverse "options;" rather, it requires Plan fiduciaries to "diversify[ ] the investments of the plan . . . ."  Defendants' crabbed view of their fiduciary obligations under Section 404(a)(1)(C) is thus inconsistent with the statutory text.

Second, contrary to Defendants' suggestion that Congress did not contemplate diversification rules applying to defined contribution plans (Def. Mem. at 7–8), ERISA specifically addresses the interplay between the duty to diversify and defined contribution plans.  Section 404(a)(2) of ERISA expressly provides that the diversification requirement of Section 404(a)(1)(C) does not apply to a defined contribution plan to the extent that such a plan invests in employer securities.  29 U.S.C. § 1104(a)(2).[5]  This carve-out for employer stock would be unnecessary if, as Defendants argue, defined contribution plans were not required to do anything other than have diversified "options."

Moreover, ERISA Section 404(c) provides fiduciaries with a limited "safe harbor" from liability for losses that result from the exercise of control by participants of defined contribution plans; indeed, Defendants cite this provision in their brief.  Def. Mem. at 8.  But a Section 404(c) defense "is not appropriate for consideration on a motion to dismiss when, as here, the plaintiffs did not raise it in the complaint."  *Pfeil v. State St. Bank & Tr. Co.,* 671 F.3d 585, 598 (6th Cir. 2012), *abrogated on other grounds by Dudenhoeffer*; *see also In re WorldCom, Inc.,* 263 F. Supp.

---

diversification requirement.  *See* 29 U.S.C. § 1104(a)(2).  To the extent that the courts' analysis can be applied to a 404(a)(1)(C) claim by analogy, it fails for the same reasons discussed with respect to *Yates, Schweitzer* and *Quattrone.*

[5] Section 404(a)(2) applies to any "eligible individual account plan," which is "a defined contribution plan" that can take several different forms.  *In re Citigroup ERISA Litig.,* 662 F.3d 128, 133 (2d Cir. 2011), *abrogated on other grounds by Dudenhoeffer.*

2d 745, 764 (S.D.N.Y. 2003) ("This provision does not require dismissal of the claim, however, since the existence of independent control is an affirmative defense and, in any event, a question of fact."). Indeed, as the Fifth Circuit has noted, "[t]he Department of Labor regulations governing the circumstances under which a plan qualifies as a section 404(c) plan include over twenty-five requirements that must be met before a fiduciary may invoke the section 404(c) defense. *Kopp v. Klein,* 722 F.3d 327, 335 (5th Cir. 2013) (citing (citing 29 C.F.R. § 2550.404c–1), *cert. granted, judgment vacated on other grounds*, 573 U.S. 956 (2014).[6] Defendants' argument that it would be "incoherent" to apply the diversification requirement of Section 404(a)(1)(C) to defined contribution plans when participants direct investments (Def. Mem. at 8), would give fiduciaries the "safe harbor" of Section 404(c) without having to prove anything — or even ***plead*** anything. Contrary to Defendants' argument, that is the result that would be "incoherent."

Finally, the Plan's concentration in Verizon stock was not the result of employee choice. The Plan acquired the shares in bulk from other retirement plans: the FCCSI Management Plan, the Verizon Savings Plan for Management Employees, and the Verizon Savings and Security Plan for West Region Hourly Employees. Compl., ¶¶ 24, 25 and 37. The status of that stock was entirely different when it was part of Verizon's own plans. There, it was employer stock which

---

[6] Even were Defendants to plead a 404(c) defense, it would fail. "'[T]he act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant's direction.'" *In re Am. Int'l Grp., Inc. ERISA Litig. II,* No. 08 CIV. 5722 LTS KNF, 2011 WL 1226459, at *4 (S.D.N.Y. Mar. 31, 2011) (quoting U.S. Department of Labor, Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans), 57 Fed. Reg. 46906, 46924–225 n.27 (General Preamble)); *accord, DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 418 n.3 (4th Cir.2007); *In re Morgan Stanley ERISA Litig.,* 696 F. Supp. 2d 345, 359–60 (S.D.N.Y. 2009); *In re Polaroid ERISA Litig.,* 240 F.R.D. 65, 76 (S.D.N.Y. 2006).

was exempt from diversification by virtue of ERISA Section 404(a)(2).[7]  When the Plan acquired

the stock in bulk, that exemption ceased to apply, and the fiduciaries had an obligation to take

steps to ensure that the Plan was properly diversified.  Their failure to do so resulted in losses to

the Plan.

The argument that that Section 404(a)(1)(C) only requires fiduciaries to provide a diverse

menu of options was recently rejected in *Myers v. Admin. Comm., Seventy-Seven Energy, Inc. Ret.

& Sav. Plan,* No. CIV-17-200-D, 2019 WL 1320064, at *8 (W.D. Okla. Mar. 22, 2019). *Myers,*

like the present case, involved a challenge to a defined contribution plan's failure to eliminate a

fund comprised of non-employer stock (the stock of Chesapeake Energy), which had been

transferred into the Seventy-Seven Energy plan as the result of a spinoff of assets from the

Chesapeake plan.  The *Myers* defendants, like Defendants here, argued that they could not "be

held liable for a failure to diversify because participants had many investment options and they

decided whether to retain Chesapeake stock in their accounts."  *Id.* at *2.  While the *Myers* court

ruled that Plaintiffs could not make a failure to diversify claim against Defendants on the basis of

the initial acquisition of Chesapeake stock by the Chesapeake plan, it denied the motion to dismiss

the failure to diversify claim, noting that "Plaintiff's real complaint is that the Committee

Defendants 'should have divested [the Plan] of Chesapeake stock immediately following the spin-

off and avoided any [later] purchase of Chesapeake stock.'"  *Id.* at *8 (quoting the complaint).

This is precisely what Plaintiffs allege here.  Here, as in *Myers,* it does not matter whether Plan

---

[7] A document submitted by Defendants in support of their motion indicate that at even some portion — and probably a significant portion — of the investment in Verizon stock prior to the sale of assets to Frontier was the result of employer contributions, not participant choice.  ECF 43-5, the Verizon Savings Plan for Management Employees 2010 Form 5500, includes a Report of Independent Auditors, which mentions that "[e]mployer-matching contributions are made half in Verizon common stock and half in cash" and suggests that participants' ability to transfer out of Verizon stock was "subject to the provisions of the [Verizon] plan document."  *Id.* at p. 8.

participants chose to invest in Verizon Stock when they were Verizon employees and the stock was in their Verizon 401(k) plan.  What matters is whether the fiduciaries of the ***Frontier Plan*** should have terminated the Verizon Stock Fund and divested the Plan's concentrated holdings in Verizon stock rather than acquiring still more shares.  Moreover, here, as in *Myers,* the existence of other plan options is not sufficient to satisfy the diversification requirements of Section 404(a)(1)(C).  Accordingly, the motion to dismiss Plaintiff's failure to diversify claim should be denied.

### C.    Plaintiff Has Adequately Pled a Prudence Claim

Section 404(a)(1)(B) of ERISA requires that fiduciaries discharge their duties to a plan with "care, skill, prudence, and diligence . . . ."  This provision requires that plan fiduciaries "exercise prudence in selecting investments at the outset", "monitor trust investments and remove imprudent ones."  *Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1828 (2015).  The duty of prudence applies to ***each*** investment option.  *Vellali v. Yale Univ.,* 308 F. Supp. 3d 673, 683 (D. Conn. 2018) ("'[A] fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants.'") (quoting *DiFelice,* 497 F.3d at 423); *Gedek v. Perez,* 66 F. Supp. 3d 368, 380 (W.D.N.Y. 2014) ("'a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may *or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio.'") (quoting *DiFelice,* 497 F.3d at 423); *In re Am. Int'l Grp., Inc. ERISA Litig. II,* No. 08 CIV. 5722 LTS KNF, 2011 WL 1226459, at *4 (S.D.N.Y. Mar. 31, 2011) (same).

ERISA recognizes that diversification is an element of prudence.  Section 404(a)(2), which, as discussed above, creates an exception to the specific diversification requirement of Section 404(a)(1)(C) for defined contribution plans that invest in qualified employer stock, ***also*** exempts such purchases from the prudence requirement of Section 404(a)(1)(B), "only to the extent that it

requires diversification."   29 U.S.C. § 1104(a)(2).   In the absence of this language, defined contribution plans would not be able to invest in employer stock funds, since a fund that "invests primarily" in the stock of a single company is "*not* prudently diversified." *Dudenhoeffer,* 573 U.S. at 416 (emphasis in original).

Plaintiff properly alleges that the Verizon Stock Fund was an imprudent investment option at the outset and became still more imprudent over the course of the class period.   In support of this allegation, Plaintiff alleges that investment in a single stock is excessively risky compared to investment in diversified offerings and that this risk was compounded by the Plan's additional investment in Frontier stock and in highly-correlated AT&T stock, since all of the firms provided similar services in the telecommunications industry.   Compl., ¶¶ 31–33, 36–37, 70.   Plaintiff also included factual allegations demonstrating that the Plan's concentration in Verizon stock was higher than concentrations which would be considered acceptable in a telecommunications mutual fund, considerably higher than concentrations in truly diversified mutual funds, and far higher than Frontier tolerated in the trust fund for the defined benefit plan, where Frontier actually bore the risk of loss.   *Id.,* ¶¶ 27–30.   This is very similar to the evidence that convinced the court in *Tatum 6* that a prudent fiduciary not only ***could have*** decided to liquidate single stock funds, but ***would have*** done so.   The *Tatum 6* court specifically noted that the plan included ***three*** single-stock funds, two which held non-employer stock (*Tatum 6,* 2016 WL 660902, at *13), which is also true here. Further, the court cited expert testimony that a single-stock fund "is approximately four times as risky as a diversified portfolio of mutual funds." *Id.* (specifically noting that this increased risk has been researched and recognized in literature for more than thirty-five years).

### 1. *Dudenhoeffer* Supports Plaintiff's Argument

Defendants make no effort to argue that single stock funds are prudent investment options for retirement plans.  Instead, they argue that the entire prudence claim is "foreclosed by binding precedent." Def. Mem. at 10.  The argument is based on a misreading of the Supreme Court's decision in *Dudenhoeffer*.

*Dudenhoeffer* involved a challenge to an employer stock fund within the defined contribution plan sponsored by Fifth Third Bancorp.  573 U.S. at 412.  The plaintiffs in that case alleged that plan fiduciaries should have realized that Fifth Third's stock price was "overvalued and excessively risky," in part because "publicly available information such as newspaper articles provided early warning signs that subprime lending, which formed a large part of Fifth Third's business, would soon leave creditors high and dry . . . ."  *Id.* at 413.  The district court dismissed, finding that plaintiffs' allegations failed to overcome a "presumption of prudence" for investment in employer stock.  *Id.* at 414.  The Supreme Court determined that ERISA fiduciaries were not entitled to such a presumption, and that Section 404(a)(2), which delineates the extent to which ERISA's fiduciary duties are relaxed in the ESOP context, did not change the duty of prudence ***except*** "*to the extent that it requires diversification.*"  573 U.S. at 419 (emphasis in original) (quoting 29 U.S.C. § 1104(a)(2)).

Having rejected a "presumption of prudence" for fiduciaries that invested in employer stock funds, the Supreme Court remanded to the district court to apply the pleading standards discussed in *Twombly* and *Iqbal,* and provided several observations to aid in that analysis. Defendant's argument rests on excerpts taken from this portion of the Court's opinion:

> The complaint alleges, among other things, that petitioners "continued to allow the Plan's investment in Fifth Third Stock even during the time that the stock price was declining in value as a result of [the] collapse of the housing market" and that "[a] prudent fiduciary facing

16

similar circumstances would not have stood idly by as the Plan's assets were decimated." *Id.,* at 53.

> In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances. Many investors take the view that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information, and accordingly they rely on the security's market price as an unbiased assessment of the security's value in light of all public information. ERISA fiduciaries, who likewise could reasonably see little hope of outperforming the market ... based solely on their analysis of publicly available information, may, as a general matter, likewise prudently rely on the market price.

573 U.S. at 426-427 (internal quotations and citations omitted).  The Court concluded that "a fiduciary usually 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him.'" *Id.* at 427 (quoting *Summers v. State Street Bank & Trust Co.,* 453 F.3d 404, 408 (7th Cir. 2006).

Far from precluding Plaintiff's claim here, *Dudenhoeffer* supports it.  Plaintiff is not claiming that "the market is over- or undervaluing" Verizon Stock, which is the type of allegation that the Supreme Court found to be "implausible" in the case of a publicly-traded stock.  To the contrary:  Precisely ***because*** the market price of Verizon stock fully incorporated the likelihood that the stock would do well or poorly, there was ***no*** reason to believe that it would outperform a ***diversified*** investment, and a diversified investment would have carried less risk.  Accordingly, there is ***no*** reason that a prudent fiduciary would have permitted the Plan to continue offering the Verizon Stock Fund as an investment option.

Defendants claim that *Dudenhoeffer* forecloses prudence claims that are based on the "riskiness of a stock" as well as claims based on overvaluation, citing *Rinehart v. Lehman Bros. Holdings Inc.,* 817 F.3d 56, 66 (2d Cir. 2016).  Def. Mem. at 13.  However, *Rinehart,* like *Dudenheoffer,* involved claims that an employer stock fund was overvalued and excessively risky

17

due to publicly-known problems with the employer's business.  *Rinehart,* 817 F.3d at 62.  The Second Circuit held that the allegations were implausible "whether the allegations are framed in terms of market value or excessive risk" and specifically noted that the rule "is consistent with the efficient market hypothesis that risk is accounted for in the market price of a security."  *Id.* at 66.  Again, however, Plaintiff does not claim that the market price of Verizon was overvalued, or that the market price failed to take into account all publicly-known information about Verizon.  Unlike the risk at issue in *Rinehart* and *Dudenhoeffer,* the type of risk at issue in ***this*** case is concentration risk – the risk of overinvestment in a single security or a single industry.  Concentration risk is not, and cannot, be incorporated in the market price of a publicly-traded stock, because the market price only values a single share.

The Seventh Circuit described the distinction between risks that are incorporated into the price of a share of stock and the type of risks at issue in this case in *Cent. Nat. Bank of Mattoon v. U.S. Dep't of Treasury,* 912 F.2d 897 (7th Cir. 1990) (Posner, *J.*).  The Court explained that prudent investors could invest in "weak" companies that were volatile or more likely to become insolvent, because "[t]he prices of the stocks of weak companies are bid down in the market until those stocks yield the same risk-adjusted expected return as the stocks of the strongest companies . . . ."  *Mattoon*, 912 F.2d at 901.  The *Mattoon* court described market risk and insolvency risk as "compensated risk," because the market price of the stock adjusts to compensate investors for assuming it.  *Id.* at 903.  This, of course, is the "efficient market" hypothesis discussed in *Rinehart,* which forms the basis for the Supreme Court's analysis in *Dudenhoeffer.*  In contrast, however, *Mattoon* noted that there is "a third type of risk, which is uncompensated, and that is risk that can be diversified away simply by holding a larger, more balanced portfolio."  *Id.*  The court held that, "[b]y placing a large fraction of the trust fund's assets in the shares of a small company, itself

18

undiversified . . . [defendant] significantly reduced the fund's diversification without conferring any offsetting benefit, in the form of a higher expected return, on the fund's beneficiaries.  *Id.* Exactly the same is true here:  by failing to eliminate the Verizon Stock Fund, Defendants exposed the Plan to concentration risk without conferring any offsetting benefit.  There was no reason to believe that Verizon would outperform that market, and thus the risk taken by overconcentration in that stock was uncompensated.

The Fourth Circuit's final *Tatum* decision expressly refutes Defendants' erroneous reading of *Dudenhoeffer* and, by extension, *Rinehart*:

> *Tatum* misreads *Fifth Third* to hold that a hypothetical prudent fiduciary is **not justified** in divesting a stock based on public information about risk. But the Court in *Fifth Third* held no such thing. It merely held that a fiduciary is **not required** to divest a high-priced stock based on public information that shows a risk of price decrease. *Fifth Third*, 134 S. Ct. at 2471–72. This is because, in an efficient market, a fiduciary can rely on the market price to reflect the public information about risk of loss, even if, in the beneficiaries' view, the market valuation is not properly accounting for the true risk of loss. *Id.* Applied to the facts of this case, *Fifth Third* teaches that a prudent fiduciary would have relied on the low market price of the Nabisco stock as the current value of the stock. This conclusion provides no help to Tatum, and in fact offers support for RJR's contention that a prudent fiduciary would have chosen to divest the Nabisco Fund.

> * * * * *

> Tatum insists that the court erred in balancing the stock's risk of loss against the possibility of extraordinary returns because such returns are not possible in an efficient market. This is precisely the point. The district court explained that a prudent fiduciary would have balanced the increased risk of loss that the Nabisco Funds brought to the Plan—risk reflected in the low stock price, but also the risk inherent in their lack of diversity within the Plan and the Nabisco stock's high correlation with RJR's battered stock—against the Funds' likely *average* returns. *See Tatum V*, 2016 WL 660902, at *16**Error! Bookmark not defined.**. The court found that *a prudent fiduciary would have concluded the Nabisco Funds' expected returns did not justify the increased risk of loss to the Plan, especially because ERISA requires that a fiduciary diversify plan assets to minimize risk of loss.* *Id.* at *25 (citing 29 U.S.C. § 1104(a)(1)(C)). This conclusion was well-supported by the record and accords with the efficient market hypothesis.

*Tatum 7,* 855 F.3d at 564–65 (final emphasis added).

Defendants attempt to dismiss this analysis as "tired" (Def. Mem. at 14) rather than address it on the merits, no doubt hoping to get the last word in their reply brief.   However, *Yates, Schweitzer, Quatrone* and *Myers* failed to address the important distinction between risks that are incorporated into a stock price and those that cannot be.   *Dudenhoeffer* and *Rinehart* did not address uncompensated concentration risk at all.   Indeed, they could not have done so because both cases involved funds that invested in employer securities, where ERISA specifically allows fiduciaries to ignore diversification and its associated risks.   *See Dudenhoeffer,* 573 U.S. at 419 (quoting 29 U.S.C. § 1104(a)(2)); *Rinehart,* 817 F.3d at 64 (citing *Dudenhoeffer*).   Thus, contrary to Defendants' arguments, neither *Dudenhoeffer* nor *Rinehart* preclude Plaintiffs' claims here, and indeed, the efficient market hypothesis championed by both decisions supports Plaintiff's case.

### 2. *Tibble* Supports Plaintiff's Claims

In *Tibble v. Edison Int'l,* 135 S. Ct. 1823 (2015), the Supreme Court held that "[a] plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."   That is the essence of Plaintiff's claim.   The fiduciaries of the Plan may not have been responsible, in the first instance, for shares of Verizon stock being added to the Plan.   But once the shares were in the Plan, the fiduciaries had a duty to evaluate whether they were prudent and remove them if they were not.

Defendants argue that Plaintiff's failure to monitor claim under *Tibble* fails unless Plaintiff alleges "facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."   Def. Mem. at 14 (quoting *Rinehart,* 817 F.3d at 67).   Plaintiff does not disagree; however, for the reasons set forth above, Plaintiff **has** made such a showing.   Accordingly, the failure to monitor claim is properly pled.

20

### 3. The AT&T Stock Fund Compounded the Plan's Concentration Risk

Rather than winding down the Plan's concentrated investment in the Verizon Stock Fund, Defendants compounded risk of large losses by adding an AT&T Stock Fund to the Plan in October of 2014.  Compl. ¶ 31.  AT&T, like Verizon (and Frontier) is a telecommunications service provider and, unsurprisingly, its stock performance was highly correlated with Verizon's.  *Id.,* ¶ 32.  Defendants' arguments for why the imprudence of this material increase in the Plan's uncompensated concentration risk should be ignored do not withstand scrutiny.

Defendants first repeat their argument that *Dudenhoeffer* wholly forecloses any claims based on publicly available information (Def. Mem. at 15), which misreads *Dudenhoeffer* for the reasons discussed in the preceding section.[8]  Defendants next argue that the claim must fail because "no Plan participant could have been invested in both the Verizon Common Stock Fund and the AT&T Common Stock Fund . . . ."  Def. Mem. at 16.  However, as Defendants themselves argue (Def. Mem. at 6–7), Section 404(a)(1)(C) of ERISA requires that the investments of *the plan* be diversified "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."  Defendants' decision to permit a heavy concentration of plan assets in *three* single-stock funds that were all in the same industry created a clear risk of large losses *for the plan as a whole*.  Multiplying the Plan's already substantial concentration risk was also imprudent under Section 404(a)(1)(B).  From a plan-wide investment perspective, it is simply not relevant whether individual plan participants were able to invest in all three funds, or were limited to at most two of them.

---

[8] *Dudenhoeffer* recognized that in "special circumstances" claims that a stock's price is over- or undervalued might pass the plausibility threshold.  *Dudenhoeffer,* 572 U.S. at 426.  Even if *Dudenhoeffer's* framework for addressing stock valuation claims applied to concentration risk, which it does not, permitting multiple single-stock funds in the same industry constitutes a "special circumstance."

21

Finally, Defendants make the peculiar argument that Plaintiff lacks Article III standing to complain about the Plans' holdings in AT&T stock since she "could not possibly have been harmed by *other* participants' investments in AT&T stock." Def. Mem. at 16. The argument misapprehends the nature of a suit for breaches of fiduciary duty under ERISA. "ERISA § 502(a)(2) authorize[s] *plan* participants to bring suit in a representative capacity on behalf of the *plan*, against a fiduciary of the *plan* to remedy that fiduciary's mismanagement of the *plan's* assets, and restore to such plan those losses suffered by the *plan* as a whole." *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Benefit,* No. 6:12-CV-6279 MAT, 2014 WL 4285028, at *5 (W.D.N.Y. Aug. 29, 2014), *aff'd sub nom. Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.,* 621 F. App'x 70 (2d Cir. 2015)) (emphasis in original) (internal quotations and citation omitted). Moreover, as the Second Circuit has recognized, the assets of a defined contribution plan "are legally owned by the trustee and managed for the benefit of all plan participants . . . . [a] single participant's 'account' is merely a bookkeeping entry that is used at the time of his retirement to determine what benefits he is entitled to receive." *Milgram v. Orthopedic Assocs. Defined Contribution Pension Plan,* 666 F.3d 68, 74 (2d Cir. 2011). Thus, Plaintiff has standing to bring suit on behalf of the Plan as a whole for Defendants' breaches of fiduciary duty relating to overconcentration in telecom single-stock funds, even though she was not invested in each of those funds.

### D.    Plaintiff Has Adequately Pled a Failure to Monitor Claim Against Frontier

Plaintiff has alleged that the Frontier is liable as a *de facto* fiduciary for failing to monitor the Committee and prevent its imprudent investment in the Verizon Stock Fund. Compl. ¶ 108. Plaintiff alleges that Frontier is a fiduciary because the Board of Directors appoints the Committee and thus has a duty to monitor the Committee's performance (*Id.,* ¶¶ 16 and 91). Plaintiff also

alleges that Frontier is liable for actions of the Committee and its members within the scope of their employment.  (*Id.,* ¶ 91).  Frontier argues, wrongly, that it is immune under either theory.

Defendant first argues that Plaintiff's allegations do not satisfy the requirements of Rule 8, characterizing them as merely "conclusory."  The fact that the Board of Directors (through its Retirement Plan Committee) appoints the members of the Plan Committee is not "conclusory" in the least; it alleges a fact, not a legal conclusion.  Coupled with Plaintiff's detailed allegations indicating that investment in the Verizon Stock Fund was imprudent, the basis for Plaintiff's claim is clear.  "An appointing fiduciary's duty to monitor his appointees is well-established." *In re Polaroid ERISA Litig.,* 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005) (citing cases); *see also In re Fannie Mae 2008 ERISA Litig.,* No. 09 CIV. 1350 PAC, 2012 WL 5198463, at *7 (S.D.N.Y. Oct. 22, 2012) ("Allegations of inadequate performance by appointee fiduciaries support a claim of breach of the duty to monitor."); *Veera v. Ambac Plan Admin. Comm.*, 769 F. Supp. 2d 223, 230–31 (S.D.N.Y. 2011) (upholding failure to monitor claim); *Agway, Inc., Employees' 401(k) Thrift Inv. Plan v. Magnuson*, No. CIVA503CV1060HGMDEP, 2006 WL 2934391, at *20 (N.D.N.Y. Oct. 12, 2006) ("under ERISA the power to appoint carries with it the concomitant obligation to monitor the performance of those appointees") (citing cases).  The Company is liable for the action — or, in this case, the ***in***action — of the Board of Directors.  *Bishop v. Commodity Exch., Inc.,* 564 F. Supp. 1557, 1562 (S.D.N.Y. 1983) (absent exceptional circumstances, companies are liable for the actions of their Boards of Directors); *see also In re Banco Bradesco S.A. Sec. Litig.,* 277 F. Supp. 3d 600, 661 (S.D.N.Y. 2017) (statements by Board of Directors are statements of the Company).[9]

---

[9] Indeed, the principle that a corporation is legally responsible for the actions of its Board of Directors extends to criminal as well as civil liability.  *Flomo v. Firestone Nat. Rubber Co., LLC,* 643 F.3d 1013, 1019 (7th Cir. 2011).

Additional factual allegations to support the failure to monitor claim are not required.  *Id.* (rejecting argument that similar failure to monitor allegations were "conclusory").  As the Eighth Circuit explained:

> Congress intended that private individuals would play an important role in enforcing ERISA's fiduciary duties—duties which have been described as "the highest known to the law." *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir. 1982). In giving effect to this intent, we must be cognizant of the practical context of ERISA litigation. No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. Thus, while a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of their limited access to crucial information. If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.

*Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 598 (8th Cir. 2009); *see also Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.,* 892 F.3d 719, 728 (5th Cir. 2018) (quoting *Braden*);  *Allen v. GreatBanc Tr. Co.,* 835 F.3d 670, 678 (7th Cir. 2016); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 718 (2d Cir. 2013) (citing *Braden* for the proposition that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.").[10]

With respect to the Company's liability for the actions of the Committee within the scope of their employment — pure *respondeat superior* liability — the Second Circuit does not appear to have addressed the issue directly.  However, "("the majority of circuits, including the Third Circuit, appear to allow" *respondeat superior* liability against non-fiduciary employers under

---

[10] Further discovery, for example, could shed light on the statement in the Plan's Form 5500, that the Plan is "managed by Frontier Communications Corporation," which certainly suggests that Frontier is a *de facto* fiduciary.  *See* ECF 43-3, Notes to Financial Statements, at 4.

ERISA.  *Miller v. Mellon Long Term Disability Plan*, 721 F. Supp. 2d 415, 435 (W.D. Pa. 2010) (citing *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986); *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y,* 841 F.2d 658, 665 (5th Cir.1988); *Hamilton v. Carell,* 243 F.3d 992, 1002–03 (6th Cir.2001)).[11]  While Defendants are correct that several decisions from the Southern District of New York have declined to follow this majority rule (Def. Mem. at 18–19), as the Seventh Circuit noted (while declining to reach the issue), "ERISA must be read against the backdrop of the common law of agency," which expressly recognizes *respondeat superior* as a basis for liability.  *Howell v. Motorola, Inc.,* 633 F.3d 552, 563 (7th Cir. 2011).  Accordingly, Frontier's bid to leave the members of the Committee to face liability on their own should be denied.[12]

### E.    Plaintiff Has Standing With Respect to All Claims

Defendants move to dismiss the Complaint in its entirety for want of constitutional standing. Article III requires: (1) the plaintiff must have suffered an injury-in-fact — that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent"; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*,

---

[11] The *Miller* court noted that the Second Circuit held that an employer was not a proper party defendant in *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir. 1998).  *Miller,* 721 F. Supp. 2d at 435.  The question presented in *Crocco,* however, was whether the employer was liable as a co-Administrator in a suit for recovery of benefits under ERISA Section 502(a)(1)(B).  *Crocco* did not address *respondeat superior* liability for breaches of fiduciary duty by agents appointed by the Board of Directors.

[12] Plaintiff agrees that her co-fiduciary liability claim is derivative, and thus cannot survive if the Court finds no fiduciary breach (*see* Def. Mem. at 19), but by the same token, since Plaintiff ***has*** properly alleged breaches of fiduciary duty, her co-fiduciary claim should stand.  Defendants also argue that the Complaint does not raise a breach of loyalty claim.  Def. Mem. at 20.  As Defendants acknowledge (*id.*), Plaintiff has agreed that the Complaint does not currently include such a claim. Such a claim may be appropriate following discovery should Plaintiffs learn or facts showing that the fiduciaries' self-interest prompted them to act against the interest of Plan participants.

504 U.S. 555, 560–61 (1992); *accord American Psychiatric Ass'n v. Anthem Health Plans*, 821 F.3d 352, 358 (2d Cir. 2016).

Plaintiff has pled injury-in-fact on her fiduciary duty count by alleging her individual account suffered losses with the Plan as a whole. Compl. ¶ 13. The losses were caused because Defendants — in breach of ERISA § 404 fiduciary standards including duties of loyalty and prudence — chose, maintained, and failed to remove Verizon stock as an investment option in which she and the other Class members invested. Compl. ¶¶ 13, 106–07. Plaintiff seeks recovery of her losses caused by the Fund's poor performance. *Id.* ¶¶ 109, 117–19, Prayer for Relief ¶¶ A–I. Plaintiff therefore meets the *Lujan* standard discussed *supra*.

Defendants' argument that Plaintiff "cannot possibly have suffered a 'concrete and particularized injury' from an overconcentration of Verizon Stock in other participants' accounts" (Def. Mem. at 21) is wrong as a matter of both fact and law. First, Plaintiff is not alleging "an overconcentration of Verizon Stock in other participants' accounts." Plaintiff alleges, rather, that the Plan ***as a whole*** was not properly diversified and that Defendants breached both the duty to diversify and the duty of prudence by failing to eliminate the Verizon Stock Fund. As the Second Circuit has expressly recognized, participant "accounts" in a defined contribution plan are nothing more than "bookkeeping entries." *Milgram,* 666 F.3d at 74.

As noted above, ERISA permits "***plan*** participants to bring suit in a representative capacity on behalf of the ***plan***, against a fiduciary of the ***plan*** to remedy that fiduciary's mismanagement of the ***plan's*** assets, and restore to such plan those losses suffered by the ***plan*** as a whole." *Whelehan,* 2014 WL 4285028, at *5. Defendants argue that this statutory authority is "irrelevant" to the question of constitutional standing (Def. Mem. at 22), but fail to cite any cases holding that a Plaintiff lacks constitutional standing to bring a fiduciary breach claim under ERISA when she has

26

properly alleged that the breach injury her as well as the Plan at large.  The Second Circuit has held that plaintiffs who "assert their claims in a derivative capacity" on behalf of a plan establish "injury-in-fact sufficient for constitutional standing" by alleging injuries to that plan.  *Long Island Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc*., 710 F.3d 57, 67 n.5 (2d Cir 2013); *see also Leber v. Citigroup 401(k) Plan Inv. Committee*, 323 F.R.D. 145 (S.D.N.Y. 2017); *Cunningham v. Cornell Univ*., No. 16-cv-6525, 2019 WL 275827, *3 (S.D.N.Y. Jan 22, 2019); *Cf. Braden*, 588 F.3d at 591-92 (observing error in conflating standing issues with potential personal causes of action).

To the extent that Defendants complain about differences in the particulars of Plaintiff's claim from the claims of other members of the putative class, such as when she became a Plan participant (Def. Mem. at 21), that is a class certification issue, not a matter of standing.  The Second Circuit has clearly indicated that a Plaintiff who has met the traditional requirements of Article III standing with respect to her own claim — injury in fact, traceability and redressability — also has standing to represent the interests of a class that has suffered "non-identical injuries of the same general character." *Langan v. Johnson & Johnson Consumer Companies, Inc.,* 897 F.3d 88, 94 (2d Cir. 2018).  While plan participants who were invested in the Verizon Stock Fund earlier than the Plaintiff might have greater losses, the injuries are clearly of "the same general character." Where, as here, a plaintiff has individual standing, Section 502(a)(2) provides "a cause of action to seek relief for the entire Plan" and "[t]he relief that may be appropriate . . . is not necessarily limited to the period in which he personally suffered injury." *Braden,* 588 F.3d at 593.  Indeed, ERISA plaintiffs even have standing to bring class claims on behalf of defined contribution plan participants who invested in other ***funds.*** *Rosen v. Prudential Ret. Ins. & Annuity Co.,* No. 3:15-CV-1839 (VAB), 2016 WL 7494320, at *13 (D. Conn. Dec. 30, 2016), *aff'd,* 718 F. App'x 3 (2d

Cir. 2017) ( "a plaintiff may seek relief under ERISA 'that sweeps beyond his own injury'")
(quoting *Braden*, 588 F.3d at 592-93).[13]  While Defendants may raise these types of arguments at
class certification, they are not relevant to a motion to dismiss.

### F.  Plaintiff's Claims Are Not Time-Barred

Plaintiff filed her Complaint on September 11, 2018, alleging that through a handful of
transactions ending in April, 2016, Defendants imprudently added Verizon stock to the Plan and
failed to remove or diversify that investment. The parties agree that Plaintiff's claims are governed
by a six-year statute of limitations and that the limitations period is triggered by "the date of the
*last* action which constituted a part of the breach or violation." Doc. 43-1, *quoting* 29 U.S.C. § 113
(emphasis added). Nevertheless, Defendants assert that Plaintiff's claims are time-barred because
the *first* purchases of Verizon stock by the Plan occurred in 2010 and 2011. While Plaintiff
contends that the last action constituting a part of the breach or violation was Defendants' decision
to continue to hold Verizon stock (Complaint at ¶¶ 4, 6), even limiting, as Defendants ask,
Plaintiff's claim to only the decision to purchase Verizon stock, the statute of limitations was not
triggered until the last act — in April, 2016 — rendering Plaintiff's claims entirely within the
statutory period.

Even if the 2016 purchase-decision never happened, Plaintiff's claims related to the failure
to divest following acquisitions of Verizon stock in 2010 and 2011 are still timely.  As the Supreme
Court has recognized, the duty to monitor ERISA investments is a continuing one, existing

---

[13] *See also Cunningham*, 2019 WL 275827, *3 (providing partial list of cases), *Urakhchin v. Allianz Asset Management of America*, No. 5-1614, 2016 WL 4507117, at *4. (C.D. Cal. Aug. 5, 2016) (plaintiff has standing with respect to all funds in the plan, regardless of whether he invested in any particular fund); *Krueger v. Ameriprise Fin. Inc*., 304 F.R.D. 559, 67 (D. Minn. 2014) (same); *Glass Dimensions, Inc., v. State St. Bank & Trust Co*., 285 F.R.D. 169, 175 (D. Mass. 2012) (same); *Walsh v. March & McLennan Cos.*, No. 04-0888, 2006 WL 734899, at *1 (D. Md. Feb. 27, 2006)(same).

"separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset. . . . '[t]he trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely.'" *Tibble,* 135 S. Ct. at 1828 (quoting A. Hess, G. Bogert, & G. Bogert, LAW OF TRUSTS AND TRUSTEES § 684, pp. 145–146 (3d ed. 2009)). The *Tibble* Court accordingly held that the Ninth Circuit had erred by "not recongiz[ing] that under trust law a fiduciary is required to conduct a regular review of its investments" including "the sort of review that a prudent fiduciary would have conducted absent a significant change in circumstances." *Tibble,* 135 S. Ct. at 1827-28.

Despite this clear holding from the Supreme Court, Defendants nonetheless argue that Plaintiff must allege that "'***circumstances have changed***.'" Def. Mem. at 23 (quoting *In re Lehman Brothers Sec. and ERISA Litig.*, 113 F. Supp. 3d 745 at 757–58 (S.D.N.Y. 2015) (emphasis in Defendants' Brief). But the *Lehman Brothers* court was analyzing a claim ***by plaintiffs*** that changed circumstances should have triggered further investigation under the duty to monitor. *See id.* at 757 ("Plaintiffs are correct that changed circumstances can trigger a fiduciary's obligation to review the prudence of an investment . . . ."). The court did not evaluate the application of *Tibble's* more general requirement to conduct regular reviews of investments.[14] Moreover, the court found that plaintiffs there failed to allege "facts to suggest that the review they claim should have been done would have averted the injury that ultimately occurred when Lehman later collapsed." *Id.*

---

[14] Even if "changed circumstances" were required — and, under *Tibble,* they are not — Plaintiff's allegations would suffice. Plaintiff alleges, among other things: (a) that the Plan became heavily invested in AT&T, a stock highly correlated with Verizon, as a result of an October, 2014, merger (Compl. at ¶¶ 31, 49); (b) that in April, 2016, an additional $200 million in Verizon stock was added to the Plan (*Id.,* ¶¶ 36, 50); and that Frontier's board committee responsible for oversight of the Plan became controlled by Verizon-affiliated directors in August, 2013. *Id.,* ¶ 21. Plaintiff alleges that these changed circumstances would have caused a prudent fiduciary to review the propriety of the Verizon stock fund in the Plan even in the absence of the "continuing duty to monitor" all plan investments recognized in *Tibble.* Compl. ¶¶ 58, 73.

Here, in contrast, Plaintiff has alleged that any review of the prudence of the Plan's investment in Verizon stock would have resulted in the Plan divesting its holdings.  Simply put, no prudent fiduciary would have continued to expose the Plan to the risk of large losses that could result from overconcentration in Verizon stock.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff has properly stated a claim against Defendants for breach of fiduciary duties under ERISA.  Accordingly, Defendants' Motion to Dismiss should be denied.

DATED: May 10, 2019                     Respectfully submitted,

/s/ *Robert A. Izard*

Robert A. Izard (ct01601)
Mark P. Kindall (ct13797)
Douglas P. Needham (ct29433)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
rizard@ikrlaw.com
mkindall@ikrlaw.com
dneedham@ikrlaw.com


Gregory Y. Porter (to be admitted *pro hac vice*)
Mark G. Boyko (to be admitted *pro hac vice*)
BAILEY & GLASSER LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

*Attorneys for Plaintiff*