IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORPORATION, et al.,<br><br>   *Defendants*. | Civil Action No. 3:18-cv-01538-RNC<br><br><br>Hon. Robert N. Chatigny |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Nancy G. Ross
Samuel P. Myler
Samuel Block
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Susan S. Murphy
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (850) 251-5000

Brian D. Netter
 bnetter@mayerbrown.com
Andrew A. Lyons-Berg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

## TABLE OF CONTENTS

                                                                 **Page**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION .................................................................................................................................1
ARGUMENT .........................................................................................................................................1
    I.      Plaintiff's diversification claim fails. ...............................................................................1
    II.     Plaintiff's prudence claim fails. ........................................................................................4
    III.   Frontier is not a *de facto* fiduciary. ..................................................................................9
    IV.   Plaintiff lacks standing. .....................................................................................................9
    V.    Plaintiff's claims regarding the 2010 acquisition are time-barred. ..................................10
CONCLUSION ....................................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  756 F. Supp. 2d 330 (S.D.N.Y. 2010) ......................................................................................9

*Chao v. Merino*,
  452 F.3d 174 (2d Cir. 2006) ....................................................................................................7

*Coburn v. Evercore Tr. Co., N.A.*,
  844 F.3d 965 (D.C. Cir. 2016) .................................................................................................5

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) .................................................................................................................4

*Keen v. Lockheed Martin Corp.*,
  486 F. Supp. 2d 481 (E.D. Pa. 2007) .....................................................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
  113 F. Supp. 3d 745 (S.D.N.Y. 2015) ....................................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .................................................................................................................9

*In re Morgan Stanley ERISA Litig.*,
  696 F. Supp. 2d 345 (S.D.N.Y. 2009) ......................................................................................9

*Myers v. Admin. Comm., Seventy Seven Energy, Inc. Ret. & Sav. Plan*,
  2019 WL 1320064 (W.D. Okla. Mar. 22, 2019) ..................................................................4, 6

*Quatrone v. Gannett Co.*,
  2018 WL 7983284 (E.D. Va. Sept. 26, 2018) ................................................................2, 3, 4, 6

*Rinehart v. Lehman Bros. Holdings Inc.*,
  817 F.3d 56 (2d Cir. 2016) ...................................................................................................4, 5

*Saumer v. Cliffs Nat. Res. Inc.*,
  853 F.3d 855 (6th Cir. 2017) ....................................................................................................5

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
  312 F. Supp. 3d 608 (S.D. Tex. 2018) ...............................................................................2, 4, 6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .............................................................................................................9

# TABLE OF AUTHORITIES—continued

Page(s)

*Steinman v. Hicks*,
  352 F.3d 1101 (7th Cir. 2003) ................................................................................3

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) (*Tatum 5*).................................................2, 5, 7, 8

*Tatum v. RJR Pension Inv. Comm.*,
  855 F.3d 553 (4th Cir. 2017) (*Tatum 7*)..............................................................6, 7

*Taylor v. United Techs. Corp.*,
  2009 WL 535779 (D. Conn. Mar. 3, 2009) ............................................................7

*Yates v. Nichols*,
  286 F. Supp. 3d 854 (N.D. Ohio 2017)........................................................... *passim*

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
  325 F. App'x 31 (2d Cir. 2009) .........................................................................1, 5

**Statutes, Rules, and Regulations**

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................1, 8

29 U.S.C. § 1104(a)(1)(C) ............................................................................................1, 3, 8

29 U.S.C. § 1104(a)(2).........................................................................................................3

*Rules and Regulations for Fiduciary Responsibility; Investment of Plan Assets
  Under the "Prudence" Rule*, 44 Fed. Reg. 37,221 (June 26, 1979).........................2

**Other Authorities**

Employee Benefit Security Act of 1974: Material Explaining H.R. 12906
  Together With Supplemental Views, 120 Cong. Rec. 3977 (Feb. 25, 1974),
  *reprinted in* Legislative History of the Employee Retirement Security Act of
  1974 (emphasis added) .............................................................................................8

Fortune, *Fortune 500 2011*, https://tinyurl.com/y44ec9hd.............................................8

Menke Grp., *The Origin and History of the ESOP and Its Future Role as a
  Business Succession Tool*, https://tinyurl.com/y3yy8sxw .......................................3

## INTRODUCTION

Frontier explained in its motion to dismiss that Plaintiff's legal theories fail as a matter of law. In response, Plaintiff's opposition brief largely ignores the cases that most seriously undermine her tenuous claims: Not only does she relegate the Second Circuit's *Young* opinion to a footnote—an opinion that is "squarely on point and persuasive" to the precise issues presented in this case (*Yates v. Nichols*, 286 F. Supp. 3d 854, 863 (N.D. Ohio 2017))—Plaintiff also fails to engage with the **four** district court decisions dismissing the exact claims she presses here. Pl. Mem. 20 (asserting that "*Yates*, *Schweitzer*, *Quatrone* and *Myers*" are simply wrongly decided). Those strategic choices are telling. Plaintiff's complaint fails to state a claim upon which relief can be granted and must therefore be dismissed.

## ARGUMENT

### I.     Plaintiff's diversification claim fails.

As Frontier's motion explained (at 6-7), the Second Circuit has been quite clear that ERISA's duty of diversification "contemplates a failure to diversify claim when a plan is undiversified *as a whole*," not when "individual funds *within* the plan [are] undiversified." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (summary order) (emphases added); *see also id.* at 32-33 (rejecting argument that "investment in the single-equity funds was inconsistent with 'modern portfolio theory'"); *Yates*, 286 F. Supp. 3d at 862-64 (citing *Young* for the same proposition). Any allegation that the Verizon Common Stock Fund is undiversified—as opposed to allegations that the plan is undiversified as a whole—thus fails to state a claim.

Curiously, Plaintiff addresses *Young* only in a footnote, asserting that she "do[es] not disagree" with *Young*'s interpretation of 29 U.S.C. § 1104(a)(1)(C). Pl. Mem. 9 n.3. She maintains, however, that the "diversification component" of 29 U.S.C. § 1104(a)(1)(B)'s prudence duty requires diversification within individual funds. Pl. Mem. 9 n.3. Again, though, that is not the law.

As even the Fourth Circuit explained in *Tatum 5*, a case on which Plaintiff places significant emphasis, "the diversification *and prudence* duties do not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (*Tatum 5*) (emphasis added); *see also id.* at 367 ("[A]n investment reasonably designed—as part of a portfolio—to further the purposes of the plan … should not be deemed to be imprudent merely because the investment, standing alone, would have, for example, a relatively high degree of risk.") (quoting *Rules and Regulations for Fiduciary Responsibility; Investment of Plan Assets Under the "Prudence" Rule*, 44 Fed. Reg. 37,221, 37,224 (June 26, 1979)).

As for Plaintiff's assertion that the plan as a whole was undiversified by virtue of the Verizon stock brought over by former Verizon employees in 2011 and 2016, Frontier demonstrated that every court to consider a similar claim has dismissed it. Defs. Mem. 7-10 (citing *Yates*, 286 F. Supp. 3d at 864; *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 312 F. Supp. 3d 608 (S.D. Tex. 2018), *appeal docketed*, No. 18-20379 (5th Cir. June 12, 2018); *Quatrone v. Gannett Co.*, 2018 WL 7983284 (E.D. Va. Sept. 26, 2018), *appeal docketed*, No. 19-1212 (4th Cir. Feb. 27, 2019)). As these courts held, the diversification duty is satisfied by a participant-directed defined contribution plan that "offer[s] a diversified *menu* of investment options." *Yates*, 286 F. Supp. 3d at 864 (emphasis added); *accord id.* ("What seems most critical … in terms of the trustees' diversification duty, is the range of investment options available to the participants."); *Schweitzer*, 312 F. Supp. 3d at 620 ("Because Defendants did not mandate that participants' assets remain in [legacy-employer stock] and because Plaintiffs do not allege that the Plan's other investment options are not diversified, Plaintiffs fail to allege that the Plan was not diversified on its face."); *Quatrone*, 2018 WL 7983284, at *5-6 (dismissing claim alleging "not that the plan failed to offer investment

2

options sufficient to allow participants to diversify their investments[,] but rather that the Defendants were required to force the participants to diversify their investments").

Plaintiff offers little in response. She first points in passing to the language of the statutory requirement that a fiduciary "diversify[] the investments of the plan." Pl. Mem. 11 (quoting 29 U.S.C. § 1104(a)(1)(C)). But such language is hardly inconsistent with the interpretation announced in *Yates*—that where *participants* choose how to allocate their own funds, this duty is satisfied by providing a menu of "investments" that are "diversified" from one another. *See Yates*, 286 F. Supp. 3d at 864. Nor does Plaintiff make any real attempt to explain how this commonsense reading is "inconsistent with the statuory text." Pl. Mem. 11.

Plaintiff next argues that 29 U.S.C. § 1104(a)(2), which exempts investments in employer stock from the diversification requirement, would be surplusage if participant-directed defined contribution plans satisfied their diversification duties by providing a diverse menu of options. Pl. Mem. 11. But that provision was manifestly *not* aimed at 401(k) plans like the Plan at issue here. When ERISA was enacted in 1974, employee stock ownership plans (ESOPs) were envisioned not as investment options in 401(k) plans (which did not even exist at the time), but as separate vehicles through which entire companies could be owned by their employees. *See, e.g.*, Menke Grp., *The Origin and History of the ESOP and Its Future Role as a Business Succession Tool*, https://tinyurl.com/y3yy8sxw. The *Yates* rule thus does not make subsection (a)(2) a nullity in the slightest; rather, that subsection allows the existence of separate plans that invest *primarily* in employer securities, and exist alongside and separate from a firm's traditional retirement plan. *See generally, e.g.*, *Steinman v. Hicks*, 352 F.3d 1101 (7th Cir. 2003) (describing such an arrangement).

Finally, Plaintiff claims to have found *one* case that has reached a different conclusion than *Yates*, *Schweitzer*, and *Quatrone* as to the scope of the diversification duty for participant-directed

defined contribution plans. *See* Pl. Mem. 13-14 (citing *Myers v. Admin. Comm., Seventy Seven Energy, Inc. Ret. & Sav. Plan*, 2019 WL 1320064 (W.D. Okla. Mar. 22, 2019)). But the court in *Myers* based its decision not on a different view of the legal standards, but on its conclusion that the plan involved was not, in fact, truly participant-directed as to the investments in legacy-employer stock. *See Myers*, 2019 WL 1320064, at *8 ("Thus, it appears the Plan continued to invest in Chesapeake stock even though participants were not allowed to choose this investment."). The court explicitly distinguished the other cases on this factual ground: "[t]he legal authorities on which Defendants rely to argue that the lack of diversification was the participants' choice." *Id.*. at *8 & n.13. Nothing similar is alleged here.

As in *Yates*, *Schweitzer*, and *Quatrone*, the duty of diversification in this case is satisfied by providing a diversified menu of investment options. *See Yates*, 286 F. Supp. 3d at 864; *Schweitzer*, 312 F. Supp. 3d at 620; *Quatrone*, 2018 WL 7983284, at *5-6. And as Frontier explained in its motion, the Complaint contains no allegation whatsoever that the Plan's investment menu was insufficiently diversified; in fact, the Plan offered 31 investment options, with more available through a brokerage window. Defs. Mem. 10. Plaintiff's diversification claim must be dismissed.

**II.    Plaintiff's prudence claim fails.**

Frontier further demonstrated in its motion that—in keeping with the holdings of every district court to have considered the issue—Plaintiff's prudence-based claims are foreclosed by Supreme Court and Second Circuit precedent. Defs. Mem. 10-14 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), and *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016)). As we explained, *Dudenhoeffer* held that "allegations that a fiduciary should have recognized from publicly available information alone" that an investment in publicly traded stock was imprudent "are implausible as a general rule" (*Dudenhoeffer*, 573 U.S. at 426), and *Rinehart*

4

made clear that this rule "foreclose[s] breach of prudence claims based on public information *irrespective* of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock" (*Rinehart*, 817 F.3d at 66 (emphasis added)). *See also, e.g.*, *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 861 (6th Cir. 2017) ("*Dudenhoeffer* effectively immunizes fiduciaries from imprudence claims relating to publicly traded securities in the absence of special circumstances.") (quotation marks omitted); *Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965, 971 (D.C. Cir. 2016) ("[R]isk-based claims must nonetheless meet *Dudenhoeffer*'s pleading requirement [of special circumstances] to survive a motion to dismiss.").

Plaintiff's primary argument in response is that "because the market price of Verizon stock fully incorporated the likelihood that the stock would do well or poorly, there was no reason to believe that it would outperform a diversified investment, and a diversified investment would have carried less risk." Pl. Mem. 17 (emphasis omitted). First of all, this argument about so-called "concentration risk" was rejected in *Young*; the Second Circuit affirmed the dismissal of the plaintiffs' complaint even though the plaintiffs had alleged that "investment in the single-equity funds was inconsistent with 'modern portfolio theory, which holds that diversification across and within asset[] classes is the optimum way to balance risk and return.'" 325 F. App'x at 32 (quoting complaint).

More fundamentally, Plaintiff's argument misapprehends the role of an individual fund in an ERISA plan: The question is not whether a fund could be an appropriate investment for 100% of a participant's retirement assets; the question is whether it could be a prudent *component* of a portfolio. *See Tatum 5*, 761 F.3d at 356 (the "prudence dut[y] do[es] not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds"). The end result of Plaintiff's argument that *every* investment option must be as diversified

5

as possible would be that plans could offer nothing but index funds. But that is not what ERISA requires.

Moreover, Plaintiff identifies no authority that has embraced her reading of *Dudenhoeffer*.[1] And on the other side of the ledger, at least **four** district courts have now held that *Dudenhoeffer does* preclude diversification-based prudence claims exactly like the one Plaintiff brings here. *See Yates*, 286 F. Supp. 3d at 858-60 (allegations that "the defendants breached the duty of prudence by investing in [former-employer stock], and by failing to make a timely divestiture," do not "state[] a plausible claim for breach of the duty of prudence" under *Dudenhoeffer*); *Schweitzer*, 312 F. Supp. 3d at 620-22 (dismissing claim that "Defendants breached their duty of prudence by permitting participants to retain their interests in the [former-employer stock] in their accounts after the spinoff"); *Quatrone*, 2018 WL 7983284, at *3-4 ("[T]he holding in *Dudenhoeffer* applies," barring a claim that "continued investment [in former-employer stock] was a breach of duty of prudence because … investment into a single stock [is] an unnecessary risk."); *Myers*, 2019 WL 1320064, at *1, 9 (rejecting plaintiffs' argument that *Dudenhoeffer* "does not apply because [the] imprudent investment claim is not based on an alleged over-valuation of the Chesapeake stock but, instead, an unacceptable degree of risk," and holding that allegations that "[t]he Plan should have divested itself of Chesapeake stock immediately following the spin-off" "fail[] to state a plausible claim that Defendants breach[ed] their duty of prudence"). Plaintiff has nothing to say about these decisions, other than that she understands *Dudenhoeffer* better than these four courts. *See* Pl. Mem. 20.

---

[1] Plaintiff's assertion (Pl. Mem. 19) that the Fourth Circuit did so in *Tatum 7* is puzzling. In the very passage Plaintiff block quotes in her brief, the court explained that *Dudenhoeffer* "held that a fiduciary is *not required* to divest a high-priced stock based on public information that shows a risk of price decrease." *Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 565 (4th Cir. 2017) (*Tatum 7*). That holding is hardly inconsistent with Frontier's position.

Nor does the *Tatum* line of cases bear the weight Plaintiff would place on it. *See* Pl. Mem. 6-9 (arguing that *Tatum* "[d]emonstrates the [p]lausibility" of her claims). First, the claims in *Tatum* were the inverse of those presented here. After RJR-Nabisco spun off its food business (Nabisco) from its tobacco business (RJR), the RJR pension plan forcefully divested participants' holdings of Nabisco stock, and a participant sued claiming that the decision *to* divest was imprudent. *See generally Tatum 5*, 761 F.3d at 351-55. The district court ultimately found—and the Fourth Circuit affirmed—that, under the "specific and unusual facts" of that case, a hypothetical prudent fiduciary would have done the same thing, precluding liability for the fiduciary defendants. *See Tatum 7*, 855 F.3d at 558, 567-68. However, in light of the principle that there may be a range of prudent options in any given situation, this holding logically does not establish that the RJR fiduciaries—let alone all plan fiduciaries—would act *im*prudently in holding onto such stock. *See, e.g.*, *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) ("[S]o long as the 'prudent person' standard is met, ERISA does not impose a duty to take any particular course of action if another approach seems preferable.") (quotation marks omitted); *Taylor v. United Techs. Corp.*, 2009 WL 535779, at *9 (D. Conn. Mar. 3, 2009) ("Although an expert may have proposed a *better* alternative … [the fiduciary] was not obligated to proceed with that alternative since its decision to proceed with the extant [] plan was prudent.") (emphasis added) (citing *Chao*, 452 F.3d at 182).[2]

Indeed, in *Tatum 5* the Fourth Circuit explicitly "*reject[ed]*" the "contention that it would necessarily be imprudent for a fiduciary to maintain an existing single-stock investment in a plan that, like the Plan at issue here, offers participants a diversified portfolio of investment options."

---

[2] The Fourth Circuit's observation, emphasized by Plaintiff (Pl. Mem. 19), that RJR was prudent to divest the Nabisco funds "especially because ERISA requires that a fiduciary diversify plan assets to minimize risk of loss" (*Tatum 7*, 855 F.3d at 566-67) is thus not a conclusion that concentration *generally* justifies divestment, but that concentration *in a stock with a high risk of bankruptcy* justifies divestment of that particular stock, "to minimize the risk of loss." *See id.* at 562 (noting Nabisco's "non-negligible risk of bankruptcy").

7

*Tatum 5*, 761 F.3d at 367 (emphasis altered). In light of that holding, *Tatum 7*'s conclusion that a prudent fiduciary would have divested the Nabisco stock *must* have been based on its perception that the particular stock had idiosyncratic risks, not the (rejected) general principle that single-stock funds always present unacceptable concentration risk. Here, Plaintiff has presented nothing idiosyncratic about Verizon stock suggesting that it was an improper investment; instead, her argument is based on a principle that former-employer stock must *always* be forcefully divested, whether participants like it or not. But ERISA contains no such principle. In short, Frontier did not act imprudently when it (1) informed participants about the risks of concentrating their savings too heavily in one stock;[3] and (2) allowed those participants to make the informed decision whether to keep or trade in their existing investments in the stock of their Fortune 20 former employer.[4]

Finally, even disregarding all of the reasons discussed above, Plaintiff's claims independently fail because the drafters of ERISA simply did not contemplate a failure-to-diversify claim (under 29 U.S.C. § 1104(a)(1)(B) or (C)) where correlated stocks make up at most 17.7% of a plan's assets. *Cf.* Pl. Mem. 3 (discussing percentage holdings of Verizon and AT&T stock). As is made plain by a House Report on the legislation that became ERISA, even when a fiduciary is making the investment decisions, that fiduciary would not "ordinarily be prohibited from investing *as much as 25%* of trust assets in … securities of a particular industry."[5] If 25% is acceptable—and the House Report indicated that traditionally even 50% concentration in a single security was fine—then the Plan's smaller percentage holdings of Verizon stock must be acceptable as well.

---

3   *See, e.g.*, Pl. Mem. 10 (quoting, in bold italics, one such disclosure in the Plan's 2010 Form 5500).

4   *See* Fortune, *Fortune 500 2011*, https://tinyurl.com/y44ec9hd (listing Verizon as number 16 on the Fortune 500 list of companies).

5   Employee Benefit Security Act of 1974: Material Explaining H.R. 12906 Together With Supplemental Views, 120 Cong. Rec. 3977, 3983 (Feb. 25, 1974), *reprinted in* Legislative History of the Employee Retirement Security Act of 1974, at 3310 (emphasis added).

8

### III. Frontier is not a *de facto* fiduciary.

Frontier explained in its motion that "[i]n the ERISA context, a company does not become a fiduciary merely because its employee is a fiduciary." *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 355 (S.D.N.Y. 2009); *see* Defs. Mem. 18-19 (citing cases). Plaintiff's only response is to cite out-of-circuit cases, ignoring the prevailing rule among district courts in *this* Circuit that *respondeat superior* is not a valid theory of ERISA liability. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 756 F. Supp. 2d 330, 347 (S.D.N.Y. 2010) (collecting cases). Moreover, the allegations Plaintiff holds up as sufficient to plausibly allege Frontier's fiduciary status (*see* Pl. Mem. 22-23) are exactly the kind of allegations that courts reject as insufficient. *See Bank of Am.*, 756 F. Supp. 2d at 347 (dismissing allegations that employer was a fiduciary by virtue of its ability to "hire or appoint, terminate, and replace," the "Committee Defendants").

### IV. Plaintiff lacks standing.

Nor has Plaintiff adequately responded to Frontier's demonstration that she lacks Article III standing to bring this action. *See* Defs. Mem. 21-22. Throughout, Plaintiff appears to conflate statutory standing—or whether the statute provides a cause of action (*see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014))—with Article III standing, which requires an actual injury to the plaintiff. But as the Supreme Court has made crystal clear, the former is not an adequate substitute for the latter. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016) ("[I]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). Although she is attempting to bring a representative action, Article III still requires that Plaintiff demonstrate an individualized injury to herself from the conduct she complains of. *Id.* She certainly can show no harm from the decision not to divest the stock of the Verizon employees who came over in in 2010, when Plaintiff herself did not even join the Plan until 2016. Nor has she articulated any

9

theory under which the overall concentration of Verizon stock in the *Plan* would have any bearing on her *personal* investment outcomes.[6] This failure is fatal to her standing—quite apart from the fact that no Plan participant has a plausible claim on the merits (*see supra* pp. 1-8).

## V.     Plaintiff's claims regarding the 2010 acquisition are time-barred.

Plaintiff argues throughout her brief that the Plan had a per se obligation to divest from Verizon stock immediately upon receiving it in 2011. *See, e.g.*, Pl. Mem. 13 ("When the Plan acquired the stock in bulk, … the fiduciaries had an obligation to take steps to ensure that the Plan was properly diversified."). As Frontier explained, that argument is foreclosed, because Frontier's decision not to immediately divest took place more than six years before the complaint was filed. *See* Defs. Mem. 23-24. Plaintiff contends that the Plan's fiduciaries' decision not to divest *one* group of participants in 2011 is part of the same "breach or violation" as their decision not to divest a *mutually exclusive* group of participants six years later (Pl. Mem. 28), but each of these decisions is an independent act that must be evaluated separately. *Cf., e.g.*, *Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 493 (E.D. Pa. 2007) (applying ERISA's statute of repose differently to different participants complaining of the same conduct). And as explained in Frontier's motion, *Tibble*'s holding—that a suit is timely if a breach of the continuing duty to monitor investments took place within six years—is of no use, because Plaintiff has not alleged that "circumstances actually have changed sufficiently" to trigger the *Tibble* monitoring duty. *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015). The claim is untimely.

## CONCLUSION

The Court should dismiss Plaintiff's complaint in its entirety.

---

[6]   It is beside the point that, as Plaintiff asserts, "participant accounts in a defined contribution plan are nothing more than bookkeeping entities." Pl. Mem. 26 (quotation marks omitted). Those "bookkeeping entities" are what determine how much money a plan participant is owed upon retirement, and are therefore precisely the relevant consideration in assessing the individualized injury required by Article III.

Dated: May 24, 2019

Nancy G. Ross
Samuel P. Myler
Samuel Block
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Susan S. Murphy
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (850) 251-5000

Respectfully submitted,

*/s/ Brian D. Netter*
Brian D. Netter
 bnetter@mayerbrown.com
Andrew A. Lyons-Berg
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 24, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ Brian D. Netter
Brian D. Netter