## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY REIDT, on behalf of the Frontier Communications 401(k) Savings Plan and all others similarly situated,<br><br>   *Plaintiff,*<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORPORATION, et al.,<br><br>   *Defendants.* | Civil Action No. 3:18-cv-01538-RNC<br><br><br><br>Hon. Robert N. Chatigny |

### DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING ADDITIONAL AUTHORITY SUPPORTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Mary Reidt alleges that defendants Frontier Communications Corporation ("Frontier"), the Retirement Investment & Administration Committee, and John & Jane Does 1-10 (collectively, "Defendants") violated their ERISA fiduciary duties of diversification and prudence by allowing her to continue to hold Verizon stock as one of the investments in her individual retirement plan account after she transferred to Frontier and became a participant in the Frontier Communications 401(k) Savings Plan ("the Plan"). ECF No. 1, Compl. ¶ 6. Defendants moved to dismiss Plaintiff's claims on the grounds that, *inter alia*, ERISA's duty of diversification does not require each individual investment option in a defined contribution plan to be diversified and Plaintiff's claims regarding the prudence of Verizon stock are foreclosed by the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). In support of its arguments, Defendants presented four district court cases that dismissed claims nearly identical to those at issue here: *Schweitzer v. Investment Comm. of the Phillips 66 Savings Plan*, 312 F. Supp. 3d 608 (S.D. Tex. 2018); *Yates v. Nichols*, 286 F. Supp. 3d 854 (N.D. Ohio

2017); *Quatrone v. Gannett Co., Inc.,* 2018 WL 7983284 (E.D. Va. Sept. 26, 2018); *Usenko v. SunEdison Semiconductor, LLC,* 2018 WL 999982 (E.D. Mo. Feb. 21, 2018). ECF No. 43-1, Mot. Dism. Mem., at 5-6.

At the time of the parties' briefing on Defendants' motion to dismiss, appeals were pending in *Usenko*, *Schweitzer*, and *Gannett*.[1] On October 23, 2019, Defendants notified the Court of the Eighth Circuit's decision in *Usenko v. MEMC LLC*, 926 F.3d 468 (8th Cir. 2019), which affirmed the district court's decision in its entirety. *See generally* ECF No. 59, Notice of Supplemental Authority. Soon thereafter, this case was stayed in light of Defendants' suggestion of bankruptcy, (*see* ECF No. 71, Notice of Suggestion of Bankruptcy), during which time the Fifth and Fourth Circuits issued decisions in *Schweitzer v. Investment Committee of the Phillips 66 Savings Plan*, 960 F.3d 190 (5th Cir. 2020) and *Stegemann v. Gannett Company, Inc.*, 970 F.3d 465 (4th Cir. 2020), *pet. cert. filed*, *Gannett Co., Inc. v. Quatrone*, 20-609 (U.S. Oct. 30, 2020).

In accordance with the Court's recent order, (ECF No. 84, Order), Defendants submit the instant notice of supplemental authority addressing the Fifth and Fourth Circuits' decisions in *Schweitzer* and *Gannett*. Although the Fifth and Fourth Circuits reached seemingly divergent results, the Fourth Circuit's split-decision in *Gannett* was based on distinguishable factual allegations and untenable legal premises. The Fifth Circuit's decision in *Schweitzer*, by contrast, is factually on all-fours with the allegations in this case and rests on sound reasoning that reflects the prevailing view with respect to the scope of ERISA fiduciaries' duties of diversification and

---

[1] Although the plaintiffs in *Yates* initially appealed the district court's decision, the parties subsequently stipulated to the dismissal of the appeal as part of an apparent settlement. *See Yates on behalf of Marathon Petroleum Thrift Plan v. Nichols*, 2018 WL 1888998 (6th Cir. Apr. 17, 2018) (order dismissing appeal pursuant to Federal Rule of Appellate Procedure 42(b)).

prudence. Accordingly, this Court should reject *Gannett* and dismiss Plaintiff's claims in accordance the Fifth Circuit's decision in *Schweitzer*.

A. ***Schweitzer v. Investment Comm. of the Phillips 66 Savings Plan*, 960 F.3d 190 (5th Cir. 2020)**

The Fifth Circuit's decision in *Schweitzer* confirms that Plaintiff cannot state a viable claim that Defendants violated either ERISA's duty of diversification or its duty of prudence. Like Plaintiff here, the *Schweitzer* plaintiffs purported to represent a group of employees that transferred from one employer (ConocoPhillips Corporation) to another (Phillips 66 Corporation) following a corporate divestiture.[2] *Schweitzer*, 960 F.3d at 192-93. Although the plaintiffs' plan accounts were transferred from the ConocoPhillips plan to the Phillips 66 plan, the plaintiffs were allowed to retain the company stock they acquired while working for ConocoPhillips. *Id.* at 193. After their ConocoPhillips stock lost value, the *Schweitzer* plaintiffs claimed, like Plaintiff claims here, that the defendants breached their fiduciary duties of diversification and prudence by not unilaterally divesting the plaintiffs of their ConocoPhillips stock once they joined the Phillips 66 plan. *Id.* The district court granted the defendants' motion to dismiss for failure to state a claim and the Fifth Circuit affirmed the district court's decision in its entirety. *Id.* at 192. This Court should adopt the Fifth Circuit's approach and dismiss Plaintiff's claims in this case.

With respect to the *Schweitzer* plaintiffs' diversification claim, the Fifth Circuit held that in the defined contribution context, ERISA fiduciaries are only required to ensure that the plan offers a sufficient variety of investment options so as to "enable participants to create diversified

---

[2] In *Schweitzer* and *Gannett*, the plaintiffs' former employers spun-off certain divisions to create new entities that employed the plaintiffs going forward. *Schweitzer*, 960 F.3d at 192; *Gannett*, 970 F.3d at 469. In the instant case, Plaintiff's former employer, Verizon Communications, Inc., sold certain divisions, including the division that employed Plaintiff, to defendant Frontier. Compl. ¶ 35. Although *Schweitzer* and *Gannett* involved spin-offs, whereas the transaction at issue here involved the sale of divisions to a preexisting company, Plaintiff has not argued that any differences in the type of divestiture are relevant to the analysis of her claims.

portfolios" on their own. *Id.* at 196 (citing *Young v. General Motors Investment Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)). Because the plaintiffs in *Schweitzer* did not allege that the defendants failed to offer a sufficiently diverse array of investments, the Fifth Circuit held that their claims were properly dismissed. *Id.* The Fifth Circuit's reasoning applies with equal force to Plaintiff's diversification claim in this case. As Defendants explained in their motion to dismiss, (*see* Mot. Dism. Mem, at 6-7), and the Fifth Circuit has now expressly recognized, (*Schweitzer*, 960 F.3d at 197-98), ERISA's duty of diversification only requires diversification at the *plan*-level, not the individual fund level. Furthermore, the Plan's investment lineup here, which included over 30 different investment options and a brokerage window, is diversified, (*see* Mot. Dism. Mem., at 2, 9-10), and Plaintiff has not alleged otherwise.

In addition to affirming the dismissal of the plaintiffs' diversification claim, the Fifth Circuit addressed and rejected both of the legal theories the plaintiffs advanced in support of their prudence claim. The Fifth Circuit first rejected the plaintiffs' over-valuation theory, holding that the plaintiffs' claim that Defendants should have sold the Plan's purportedly over-valued and excessively risky ConocoPhillips stock was presumptively implausible in light of the Supreme Court's decision in *Dudenhoeffer*. *Schweitzer*, 960 F.3d at 197 ("[W]here a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." (quoting *Dudenhoeffer*, 573 U.S. at 426)); *see also Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 66 (2d Cir. 2016) (holding that *Dudenhoeffer* applies to both "risk-based" and "value-based" claims). As in *Schweitzer*, Plaintiff here fails to allege any "special circumstances" sufficient to support an exception to *Dudenhoeffer*'s general rule that the price of a publicly-traded security accurately

reflects its value and risk at any given time. Accordingly, Plaintiff's duty of prudence claim should be dismissed to the extent it is based on allegations that ConocoPhillips' stock was over-valued or excessively risky.

The Fifth Circuit then turned to the "second-wing" of the plaintiffs' prudence claim: specifically, their theory that allowing the plaintiffs to retain their ConocoPhillips stock was imprudent because doing so increased the risk that the plaintiffs would fail to adequately diversify their investments on their own. *Schweitzer*, 960 F.3d at 198. Rejecting this theory, the Fifth Circuit held that as long as the overall investment menu was diverse, it was up to the plaintiffs to "actually diversify their portfolios." *Id*. at 196. *See also id.* at 198 ("ERISA does not require fiduciaries of a defined contribution plan to act as personal investment advisers to plan participants. Such a plan gives participants the control by design[.]") (internal citations and quotations omitted). The Fifth Circuit further noted that the plaintiffs' theory was particularly implausible in light of the fact that the defendants restricted any future purchases of company stock going forward and warned the plaintiffs of the risks of inadequate diversification. *Id.* at 198. In each of the above respects, *Schweitzer* is on all fours with this case: the investment menu here is no less diversified than the menu in *Schweitzer,* (Mot. Dism. Mem., at 2 (discussing the Plan's 31 different investment options)), the Plan similarly prohibited any future investments in company stock going forward, (*id.* at 3), and participants were likewise warned of the risks of inadequate diversification, (ECF No. 48, Mot. Dism. Reply, at 8); *see also* 29 U.S.C. § 1025(a)(2)(B)(ii) (requiring plans to explain the importance of diversification in every benefits statement sent to participants).

### B.     *Stegemann v. Gannett Company, Inc.*, 970 F.3d 465 (4th Cir. 2020)

On their face, the facts in *Gannett* are similar to those in *Schweitzer*. In *Gannett*, the plaintiffs were again a group of plan participants that had been permitted to retain the company stock they received from their former employer after becoming participants in their new employer's defined contribution plan. *Gannett*, 970 F.3d at 469. The *Gannett* plaintiffs, like the plaintiffs in *Schweitzer*, also claimed that the defendant fiduciaries violated their duties of prudence and diversification by not unilaterally divesting them of their company stock immediately after being transferred. *Id.* at 468. However, unlike the Fifth Circuit, the Fourth Circuit *reversed* the district court in a split decision. *Id.* In doing so, the majority in *Gannett* relied on factual allegations unique to that particular case, as well as idiosyncratic (and untenable) interpretations of ERISA's fiduciary requirements. Accordingly, to the extent the majority's reasoning in *Gannett* is in tension with that of the Fifth Circuit in *Schweitzer*, this Court should reject the former in favor of the later.

First, with respect to the plaintiffs' diversification claim, the Fourth Circuit adopted an interpretation of ERISA's duty of diversification that stands in stark contrast to that of the Fifth Circuit. Expanding on the Fourth Circuit's decision in *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410 (4th Cir. 2007), the majority held that in addition to diversifying investments at the plan-level, fiduciaries for defined contribution plans must ensure that "*each* available fund on an investment menu is diversified." *Id.* at 417 (emphasis added). Not only is this interpretation of ERISA's duty of diversification at odds with every other court that has addressed its scope,[3] it

---

[3] *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) ("The language of [§ 1104(a)(1)(C)] contemplates a failure to diversify claim when a plan is undiversified *as a whole*.") (emphasis added); *Tatum v. RJR Pension Investment Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) ("[L]egislative history and federal regulations clarify that the diversification and prudence duties do not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds."); *Schweitzer*,

cannot be reconciled with either ERISA itself or its governing regulations. As Judge Niemeyer explained in his dissent, the majority's interpretation ignores the express language of ERISA, which provides that the duty to diversify "is imposed with respect to '*the plan*,' not with respect to *each investment* offered by the plan." *Gannett*, 970 F.3d at 487 (Niemeyer, J., dissenting) (quoting 29 U.S.C. § 1104(a)(1)(C)). Judge Niemeyer also observed that the majority's proposed interpretation would run afoul of ERISA's governing regulations by creating a *per se* rule against offering *any* non-employer, single-stock investment option in a defined contribution plan. *Gannett*, 970 F.3d at 488 (Niemeyer, J., dissenting). Given its tenuous legal foundation, this Court should reject the Fourth Circuit's expansive interpretation of ERISA's duty to diversify.

This Court should also distinguish and reject the Fourth Circuit's holding in *Gannett* that the plaintiffs adequately alleged a "plan-level" violation of the defendants' duty of diversification. *Id.* at 478. First, the Fourth Circuit's holding with respect to the plan-level diversification claim was based on the high concentration (over 21%) of plan assets invested in the plaintiffs' former employer's stock. *Id.* at 472. Here, by contrast, the Plan's investment in Verizon stock comprised less than 8% of its assets at the beginning of the class period. Compl. ¶ 6(c). Second, the plaintiffs' claim in *Gannett* relied heavily on their allegation that the plan offered *both* the former employer's *and* the new employer's company stock. *Gannett*, 970 F.3d at 478. Although Plaintiff alleges in the instant case that the Plan held stock for two companies in the same sector (AT&T and Verizon), (Compl. ¶ 6(c)), none of the Plan's participants could have been invested in both.[4] *See* Mot. Dism. Mem., at 15-16. Finally, the majority's opinion failed to

---

960 F.3d at 195 (5th Cir. 2020) (explaining that ERISA's diversification duty "looks to a pension plan as a whole, not to each investment option"); *Yates*, 286 F. Supp. 3d at 854 ("All [fiduciaries] can do, it would seem, is offer a diversified menu of investment options. What seems most critical then . . . is the range of investment options available to the participants.").

[4] In *Gannett*, the Fourth Circuit also noted that the new employer entered into an "Employee Matters Agreement" in connection with the spin-off that explicitly stated "all outstanding in-

adequately account for the fact that the Plan's concentration of company stock was the result of the *participants* individual investment decisions, not those of the defendants. *Gannett*, 970 F.3d at 489 ("[T]hat the Plan may have been concentrated in one company or one sector does not reflect a breach of any duty owed by the fiduciaries. Instead, it merely reflects individual Plan participants' decisions as to how to allocate their own investments.").

*    *    *    *

For the foregoing reasons, Defendants request that this Court adopt the reasoning of the Fifth Circuit in *Schweitzer* and the Eighth Circuit in *Usenko*, reject the Fourth Circuit's decision in *Gannett*, and dismiss Plaintiff's claims in the instant case with prejudice.

Dated: June 4, 2021                       Respectfully submitted,

Patrick M. Fahey                          */s/ Nancy G. Ross*
SHIPMAN & GOODWIN LLP                      Nancy G. Ross
One Constitution Plaza                     Samuel P. Myler
Hartford, CT 06103-1919                    MAYER BROWN LLP
Telephone: (850) 251-5000                  71 South Wacker Drive
                                           Chicago, Illinois 60606-4637
                                           Telephone: (312) 782-0600

                                           Reginald R. Goeke
                                           MAYER BROWN LLP
                                           1999 K Street, NW
                                           Washington D.C. 20006
                                           Telephone: (202) 263-3241

*Attorneys for Defendants*

---

vestments in the [former employer's] stock fund shall be liquidated and reinvested in other investment funds offered in the plan on such dates and in accordance with such procedures as are determined by the administrator of the Plan." *Gannett*, 970 F.3d at 470-71. Here, unlike in *Gannett*, there are no similar allegations that Defendants had acknowledged their ability to unilaterally divest employees of their company stock and expressed their intention to do so.

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 4, 2021, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ *Nancy G. Ross*
Nancy G. Ross