```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

MARY REIDT, on behalf of the     :
Frontier Communications 401(k)   :
Savings Plan and all others      :
similarly situated,              :
                                 :
       Plaintiffs,               :
                                 :    CASE NO. 3:18-CV-1538(RNC)
              v.                 :
                                 :
FRONTIER COMMUNICATIONS CORP.,   :
THE RETIREMENT INVESTMENT &      :
ADMINISTRATION COMMITTEE, AND    :
JOHN/JANE DOES 1-10,             :
                                 :
       Defendants.               :
```

RULING AND ORDER

Plaintiff Mary Reidt brings this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., on behalf of the Frontier Communications 401(k) Savings Plan (the "Plan") and similarly situated Plan participants.  The defendants are Frontier Communications Corp. ("Frontier"), Frontier's Retirement Investment & Administration Committee (the "Committee"), and individual members of the Committee.  Plaintiff claims that the defendants breached fiduciary duties of prudence and diversification by failing to require her and other plan participants to divest themselves of legacy employer stock they brought with them when they became Frontier employees.  Defendants have moved under Rule 12(b)(6) to dismiss the

complaint for failure to state a claim on which relief may be granted.  Defendants contend that plaintiff lacks Article III standing to seek redress on behalf of other Plan participants; certain claims are barred by ERISA's 6-year statute of limitations; the diversification claim fails as a matter of law because a diversified menu of options was provided to Plan participants; and Frontier is not subject to liability.  For reasons that follow, the motion is granted in part and denied in part.

## I. Background[1]

A.   The Plan

ERISA recognizes two types of retirement plans: defined contribution plans and defined benefit plans.  Hirt v. Equitable Ret. Plan for Emps., Managers, & Agents, 533 F.3d 102, 104 (2d Cir. 2008).  A defined contribution plan is one that "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses."  29 U.S.C. § 1002(34).  In contrast, a defined benefit plan guarantees each participant a set amount of retirement income, traditionally based on years of service and final salary.  See Hirt, 533 F.3d at 104-05.

---

[1] Except as otherwise noted, the facts contained in this section are drawn from the complaint.  The complaint's allegations are accepted as true and any ambiguity is construed in the plaintiff's favor.

Frontier opted to administer a 401(k) defined contribution plan for its employees.  The Plan is participant-directed, meaning it provides participants with "the opportunity to direct the investment of all the assets allocated to their individual accounts."[2]  Frontier's board of directors formed a Retirement Investment & Administration Committee (the "Committee"), which is the named fiduciary of the Plan, responsible for "selecting, monitoring, administering, and removing the Plan's investment options."  Those options include the "Frontier Communications Corporation Common Stock Fund," which consists exclusively of Frontier Corporation Common Stock, and a variety of pooled investment funds, which include U.S. equities, international equities, and fixed income securities.[3]  The options also include a brokerage option "whereby participants invest in publicly traded registered investment companies not offered directly by the plan."  2016 Form 5500 at *30.

---

[2] Department of Labor, Instructions for Form 5500 at 19 (2018), available at: https://www.dol.gov/sites/dolgov/files/EBSA/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2018-instructions.pdf.  The court may take judicial notice of documents publicly available on government websites.  Volpe v. Am. Lang. Commc'n Ctr., Inc., 200 F. Supp. 3d 428, 431 n.1 (S.D.N.Y. 2016).

[3] Department of Labor Form 5500, Frontier Communications 401(k) Savings Plan, at *35 (2016) (hereinafter "2016 Form 5500"), available at: https://efast.dol.gov (search "Frontier Communications 401(k) Savings Plan).  See, e.g., Cunningham v. Cornell Univ., No. 16-cv-6525 (PKC), 2017 WL 4358769, at *4 (S.D.N.Y. Sept. 29, 2017) (taking judicial notice of Form 5500 at motion to dismiss stage "as . . . publicly filed with a government regulatory agency").

B.   <u>The Acquisitions</u>

In July 2010, Verizon spun off a subsidiary ("Spinco"), and Frontier merged with that subsidiary, resulting in a number of former Verizon employees becoming Frontier employees.  As part of the merger, in December 2011, assets associated with the employees' Verizon retirement accounts were transferred into the Frontier Plan.  In October 2014, Frontier acquired certain aspects of AT&T's landline business in Connecticut.  As with the Spinco merger, AT&T 401(k) plan assets corresponding to the employees transferred from AT&T to Frontier were subsequently transferred into the Frontier Plan.  And in April 2016, Frontier acquired Verizon's wireline properties in California, Texas, and Florida.  Again, the new employees from Verizon brought with them into the Frontier Plan the assets they had previously invested in their Verizon retirement accounts.

In each instance, a significant portion of the assets transferred into the Plan were held in the legacy employer's stock.  In 2016, after the second Verizon acquisition, the Plan held $354,735,963 in Verizon common stock, which represented an increase from $108,993,863 in 2015.  In the Plan's 2016 Form 5500, the Master Trust[4] reported total assets of $2,698,459,794. <u>Id.</u> at *32.  Of that sum, $20,033,187 was held in Frontier

---

[4] "The Plan's investments are in a Master Trust, which provides for the investment of assets of the Plan."  2016 Form 5500 at *29; <u>see also</u> Compl. ¶ 25.

common stock, $354,735,963 in Verizon common stock, and
$122,671,845 in AT&T common stock.  Id. at 32.

The Committee retained the Verizon Stock Fund as an
investment of the Plan, even as the mergers and acquisitions
continued to increase the Plan's investments in
telecommunications stocks.  Defendants did not offer the Verizon
Stock Fund as an investment option on the "menu" provided to all
Plan participants.  Rather, the Fund was closed to new
investment, so the only participants permitted to hold such
stock were former Verizon employees who transferred their
holdings from their Verizon retirement accounts.  Nonetheless,
as detailed above, the Plan's holdings in Verizon stock
increased significantly with each merger and acquisition as
defendants declined to divest new employees of their holdings in
the Verizon Stock Fund.

## II. Legal Standard

"The function of a motion to dismiss under Rule 12(b)(6) is
to determine whether the plaintiff has stated a legally
cognizable claim that, if proven, would entitle her to relief."
Abuhamdan v. Blyth, Inc., 9 F. Supp. 3d 175, 187 (D. Conn.
2014).  Accordingly, to survive a motion to dismiss, "a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard if it is supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### III. Discussion

ERISA mandates uniform standards for pension plans, including rules concerning fiduciary responsibility.  See Varity v. Howe, 516 U.S. 489, 496 (1996).[5]  Section 404(a)(1) requires plan fiduciaries to discharge their duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."  29 U.S.C. § 1104(a)(1). In particular, a fiduciary must "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." Id.  ERISA Section 409(a) provides that "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this title shall be personally liable to make good to such

---

[5] ERISA is intended to "promote the interests of employers and their beneficiaries in employee benefit plans."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990).  It is "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests – not all in favor of potential plaintiffs."  Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993).

plan any losses to the plan resulting from each such breach."
29 U.S.C. §1109(a).

ERISA Section 502(a)(2) authorizes plan participants to
bring actions on behalf a plan to recover for violations of the
fiduciary obligations defined in Section 409(a).  29 U.S.C. 28
U.S.C. § 1132(a)(2).  As construed by the Supreme Court, this
statute authorizes a plan participant with an individual account
in a defined contribution plan to sue for fiduciary breaches
that impair the value of his or her account.  LaRue v. DeWolff,
Boberg & Associates, Inc., 552 U.S. 248, 251 (2008).  To state a
claim for relief, a plaintiff allege facts showing that the
defendant engaged in conduct constituting a breach of fiduciary
duty.  See Kokoshka v. Investment Advisory Committee of Columbia
University, 19 Civ. 10670 (JPC), 2021 WL 3683508, *5 (S.D.N.Y.
Aug. 19, 2021).

The gravamen of plaintiff's complaint is that, as a result
of the Verizon and AT&T acquisitions, the Plan was
overconcentrated in telecommunications stocks, and the Committee
and its members breached fiduciary duties owed to the Plan by
failing to prudently monitor and diversify the Plan's
investments.  According to the complaint, defendants' fiduciary
duties required them to order divestiture of Verizon stock from
the Plan, and their failure to do so caused her to retain
Verizon stock in her individual account, resulting in a

7

diminution in her account's value when the stock price fell. Compl. ¶ 13. The complaint alleges that Frontier is responsible for the other defendants' breaches both under a theory of respondeat superior and because it violated a fiduciary duty to monitor their activities.

A.   Standing

A plaintiff has standing under Article III to seek redress in federal district court for a defendant's allegedly illegal conduct if she has sustained a concrete injury that is fairly traceable to the conduct at issue and likely to be redressed by a favorable judicial decision.  See Spokeo, Inc. v. Robbins, 578 U.S. 330, 338 (2016).

Accepting plaintiff's allegations as true, the defendants' failure to prudently monitor and diversify the Plan's investments caused monetary harm to her and other Plan participants.  These allegations are sufficient to provide her with Article III standing to seek relief for the harm she claims to have sustained personally.  See Graden v. Conexant Systems, Inc., 496 F.3d 291, 297 (3rd Cir. 2007)("ERISA entitles individual-account-plan participants not only to what is in their accounts, but also to what should be there given the terms of the plan and ERISA's fiduciary obligations.")(emphasis in the original).

8

Defendants contend that plaintiff lacks Article III standing to pursue a claim for any other relief.  They argue that, since she did not become a Plan participant until 2016, she "cannot possibly have been harmed by [their] alleged decision – years earlier – not to forcefully divest the *first* set of former Verizon employees of their stock holdings."  Def. Mem. at 21 (emphasis original).  And, they continue, because the Plan is a defined contribution plan with participant-directed individual accounts, she cannot have standing "to complain about the supposed over-concentration of Verizon stock in other participants' investment accounts."  Id.

The Second Circuit has not decided what must be alleged by a plan participant to support Article III standing in a representative capacity in a suit pursuant to ERISA Section 502(a)(2).  See Garthwait v. Eversource Energy Co., 3:20-CV-00902(JCH), 2022 WL 1657469, at *7 (D. Conn. May 25, 2022).  District court decisions vary.  Some hold that plan participants have constitutional standing to seek redress on behalf of the plan "only for mismanagement that caused injury to them as individual participants."  See, e.g., In re Omnicom ERISA Litigation, No. 20-cv-4141 (CM), 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021).  Others hold that a participant can seek recovery for injuries arising from fiduciaries' actions with respect to funds in which the participant did not invest,

so long as the participant was directly harmed "due to the same decisions or courses of conduct." See, e.g., Collins v. Northeast Grocery, 5:24-CV-80, 2024 WL 3829636, at *6 (N.D.N.Y. Aug. 15, 2024).

I think the Second Circuit probably would adopt the latter rule, which has been endorsed by the Third, Seventh and Eighth Circuits. See id., at *7 (citing cases). This rule requires a plan participant to satisfy Article III's requirement of an actual, redressable injury caused by the defendant, while also giving effect to Congress's intent to allow plan participants to sue for relief on behalf of the plan. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985); see also Vellali v. Yale University, Civil No. 3:16-cv-1345(AWT), 2022 WL 13684612, at *16 (D. Conn. Oct. 21, 2022). Cf. Fletcher v. Convergex Group, L.L.C., 679 Fed. App'x. 19, 20-21 (2d Cir. 2017)(allegations of breach of fiduciary duties and resulting financial loss sustained by plan sufficient to confer Article III standing on plaintiff in representative capacity as plan participant).

In this case, plaintiff alleges that defendants' failure to reduce the Plan's investment in Verizon stock imprudently exposed participants to concentration risk without any offsetting benefit. Though plaintiff was not directly affected by defendants' acceptance of the Verizon stock transferred into

the Plan pursuant to the acquisition in 2010, or their retention
of the stock through the date of the acquisition in 2016, as she
was not yet a Plan participant, she was directly affected when
they imprudently accepted and retained yet more Verizon stock
pursuant to the 2016 acquisition.  Because "the same decisions
or courses of conduct" are at issue with respect to plaintiff's
alleged injury-in-fact and those of other putative class
members, she has Article III standing to seek recovery for
injuries suffered by other participants.

This conclusion comports with the Second Circuit's test for
"class standing," which district courts have applied in
evaluating Article III standing in ERISA suits.  See, e.g.,
Ruilova v. Yale-New Haven Hospital, No. 3:22-cv-00111-MPS, 2023
WL 2301962, at *11 (D. Conn. Mar. 1, 2023).  The two-part test
requires a plaintiff to show that (1) she "personally" suffered
"actual injury" because of the defendant's illegal conduct and
(2) "such conduct" implicates "the same set of concerns" as
those of the rest of the putative class.  NECA-IBEW Health &
Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir.
2012)(cleaned up)("NECA").  See Fletcher, 679 Fed. App'x. at 21
(remanding issue of plaintiff's standing to represent members of
ERISA plans of which he was not a member for determination of
whether conduct by defendant that allegedly caused injury to
plaintiff's plan implicated same set of concerns as conduct by

defendant that allegedly caused injury to participants in other plans).  The two-part test ensures that the named plaintiff's incentives are adequately aligned with those of absent class members to litigate effectively on their behalf.  Retire. Bd. of Policemen's Annuity & Ben Fund of City of Chicago v. Bank of N.Y. Mellon, 775 F.3d 154, 161 (2d Cir. 2014).

Plaintiff clearly satisfies the first part of the test. With regard to the second part, defendants contend that plaintiff's injury does not implicate "the same set of concerns" as the injuries of other putative class members because she was not affected by the alleged failure to force a divestment of Verizon stock in 2010 or by the alleged overconcentration of Verizon stock in other participants' accounts.  I disagree. A plaintiff's individual claim can implicate the same set of concerns as claims of absent class members even though the claims do not arise from the same event or involve a common class-wide injury.  To hold otherwise would "impose a more restrictive standing requirement than the one articulated in NECA."  Ruilova, 2023 WL 2301962, at *12 (declining to impose requirement that named plaintiff have invested in each fund at issue).  Rather, a participant has standing when "the proof contemplated for all of the claims would be sufficiently similar."  Retirement Bd., 775 F.3d at 161.

Plaintiff satisfies this standard.  Her individual claim
alleges that the defendants breached their fiduciary duties with
respect to the Plan by facilitating its overconcentration in
Verizon common stock.  Compl. At ¶ 1.  In particular, she
alleges that they "failed to conduct an appropriate
investigation of continued investment in Verizon common stock"
or "timely diversify the Plan's assets" by liquidating its
significant holdings in Verizon.  Id. at ¶¶ 104-05.  In other
words, she challenges defendants' asset management and
investigation procedures, which allegedly affected the value of
many participants' accounts.  "Because the alleged harms are
premised on the process Defendants used to manage the Plan, the
claims involve similar inquiries and proof, and thus implicate
the same set of concerns."  Moreno v. Deutsche Bank Americas
Holding Corp., 15 Civ. 9936 (LGS), 2017 WL 3868803, at *10
(S.D.N.Y. Sept. 5, 2017).  See also Ruilova, 2023 WL 2301962, at
*12 (class standing test satisfied because plaintiffs'
individual claims challenged plan management processes that
caused harm to absent class members in the same manner).

B.   Timeliness

Defendants contend that plaintiffs' claims based on the
2010-11 Verizon stock additions are untimely under ERISA § 413,
which requires that suit be brought within "six years after (A)
the date of the last action which caused a part of the breach or

violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113.[6]  Plaintiff responds that claims based on the 2010-11 Verizon stock additions are timely because the defendants breached continuing duties to monitor investments and remove imprudent ones.

In Tibble v. Edison Int'l, 575 U.S. 523 (2015), a unanimous Supreme Court held that fiduciaries who select investment options for a 401(k) plan ordinarily have "a continuing duty to monitor trust investments and remove imprudent ones.  This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset."  575 U.S. at 528-29.  Therefore, a participant in a 401(k) Plan who alleges a fiduciary's "fail[ure] to properly monitor investments and remove imprudent ones" brings a timely claim "so long as the alleged breach of the continuing duty occurred within six years of suit."  Id. at 530.

In accordance with Tibble, plaintiff can pursue a claim for breach of fiduciary duty based on defendants' retention of the

---

[6] The statute of limitations is an affirmative defense for which the defendant bears the burden of proof.  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).  A Rule 12(b)(6) dismissal based on an affirmative defense is permitted only when "it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." Id. (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

2010-11 Verizon stock additions during the period beginning six years prior to the filing of the complaint.  See Koch v. Dwyer, No. 98-cv-5519 (RPP), 1999 WL 528181, at *6 (S.D.N.Y. July 22, 1999); Reich v. Glasser, No. 95-cv-8288 (JFK), 1996 WL 243243, at *3 (S.D.N.Y. May 10, 1996) ("[A]lthough ERISA's six-year statute of limitations 'may protect defendants from liability for the initial purchase decision and for subsequent failure to take corrective action at times more than six years prior to the date the action is filed, it does not bar suit for defendants' continued failure to take steps to terminate the Fund's insurance arrangement after that date.'") (quoting Buccino v. Continental Assur. Co., 578 F. Supp. 1518, 1520 (S.D.N.Y. 1983) (alteration omitted)); see also Bona v. Barasch, No. 01-cv-2289 (MBM), 2003 WL 1395932, at *16-19 (S.D.N.Y. Mar. 20, 2003)(statute of limitations barred claim based on decision to enter into investment services contracts but not claim based on decision to renew them).

Defendants argue that the continuing duty to monitor recognized in Tibble provides a basis for a claim only when changed circumstances give rise to a duty to review the prudence of an investment.  Def. Mem. at 23 (quoting In re Lehman Bros. Sec. & ERISA Litig., 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015). In Tibble, the Court rejected the view that "*only* a significant change in circumstances could engender a new breach of fiduciary

15

duty," 575 U.S. at 528, and remanded for consideration of whether the defendants in fact "conduct[ed] the sort of review that a prudent fiduciary would have conducted absent a significant change in circumstances." Id. Here, plaintiff claims that a prudent fiduciary would have reviewed the Plan's retention of the 2010-11 Verizon stock additions within the relevant six-year period, recognized the need to divest the Plan of Verizon stock to minimize the risk of large losses, and ordered divestiture. These allegations are sufficient to withstand defendants' motion based on the limitations period in ERISA Section 413.

C.   Sufficiency of Allegations of Breach of Fiduciary Duties

Plaintiff's pleading burden requires her to allege facts permitting a reasonable inference that the defendants violated a fiduciary duty imposed by ERISA Section 404(a)(1). 29 U.S.C. § 1104(a)(1)(C). The duty to "diversify[] the investments of the plan" is an element of the duty to act with the "care, skill, prudence and diligence" a prudent person would use in the circumstances. The Second Circuit has ruled that the duty to diversify applies to the plan as a whole rather than investment options within a plan. See Young v. Gen. Motors Inv. Mgmt. Corp. 325 Fed. App'x 31, 33 (2d Cir. 2009).[7]

---

[7] Thus, to the extent plaintiff's breach of fiduciary duty claim relies on the theory that the Verizon Stock Fund itself was insufficiently diverse, see Compl. ¶ 6(a), the claim is ill-founded.

Plaintiff claims that defendants breached their duty to diversify the investments of the Plan by failing to order divestiture of Verizon stock.  Defendants move to dismiss this claim on the ground that fiduciaries of defined contribution plans need only offer a diverse menu of investment options from which plan participants may choose.  In a participant-directed defined contribution plan, fiduciaries are ordinarily required to provide participants with a menu of diverse investment options.  See 29 C.F.R. § 2550.404c-1(b)(ii).  Defendants' argument, as I understand it, is that providing such a menu shields them from liability for failing to order divestiture of Verizon stock.  I disagree.

ERISA mandates that fiduciaries "diversify[] the investments of the plan . . . unless under the circumstances it is clearly prudent not to do so."  29 U.S.C. § 1104(a)(1)(C).  ERISA's text does not provide an exemption from this duty for fiduciaries of participant-directed defined contribution plans.  Instead, it provides certain safe harbors that can be raised as affirmative defenses.  Of relevance here, ERISA Section 404(c) establishes a safe harbor from liability for fiduciaries of plans that "provide[] for individual accounts and permit[] a participant . . . to exercise control over the assets in his account."  29 U.S.C. § 104(c)(1)(A).  Under Department of Labor regulations, this safe harbor is available if, among other

17

things, the plan offers a "broad range of investment alternatives."  29 C.F.R. § 2550.404c-1(b)(1)(i)-(ii).  When the requirements in the regulations are met, "no person who is otherwise a fiduciary shall be liable . . .  for any loss, or by reason of any breach, which results from such participant's . . . exercise of control."  29 U.S.C. § 1104(c)(1)(A)(ii).[8]  But the safe harbor does not apply when, as here, a claim is based on a breach of fiduciary duty involving the imprudence of maintaining a fund as an investment option.  See Kokoshka, 2021 WL 3683508, at *6 (and cases cited).[9]  Thus, offering a broad range of investment options does not invariably satisfy the duty to diversify the investments of a plan.  Rather, fiduciaries still bear the burden of showing that their decisions not to diversify the Plan's assets were prudent.  To hold otherwise would effectively create a new safe harbor with potentially far-ranging consequences.

Indeed, even when ERISA expressly exempts fiduciaries from the duty to diversify under Section 404(a)(1)(C), it still

---

[8] Defendants intend to raise the safe harbor as an affirmative defense. See Pfeil v. State Street Bank & Trust Co., 671 F.3d 585, 598 (6th Cir. 2012), abrogated on other grounds by Dudenhoeffer, 573 U.S. 409 (2014) (noting that this safe harbor is an affirmative defense inappropriate for adjudication on a motion to dismiss).

[9] See also Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed. Reg. 46906, 46924 n.27 (Oct. 13, 1992)("the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which . . . is not a direct or necessary result of any participant direction").

requires fiduciaries to make prudent decisions regarding the selection and retention of investments.  For instance, fiduciaries of employee stock ownership plans ("ESOPs"), which are "designed to invest primarily in" the stock of plan participants' employer, 29 U.S.C. § 1107(d)(6)(A), are not bound by the general duty to diversify.  See id. § 1104(a)(2) ("In the case of [ESOPs], the diversification requirement of paragraph 1(C) and the prudence requirement (only to the extent it requires diversification) of paragraph 1(B) is not violated by acquisition or holding of [employer stock].").  See also Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 412 (2014)("ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets.").  Therefore, an ESOP fiduciary may invest 100% of a plan's assets in the participants' employer's stock without violating his fiduciary duties.  However, ESOP fiduciaries have the burden of showing that decisions to retain or buy shares of employer stock were prudent under the circumstances.  See id. at 420.  Thus, an ESOP fiduciary, despite having no general duty to diversify, can be held to have breached the duty of prudence by buying additional shares of employer stock, thereby increasing the ESOP's concentration risk.

Because the exemption from the general duty to diversify provided to ESOP fiduciaries does not shield them from potential liability for imprudently increasing concentration risk, it follows that offering a menu of diverse options does not shield defendants from potential liability for breach of the duty of prudence alleged here.  Defendants provide no evidence of congressional intent to justify a different conclusion.  See Andrus v. Glover Const. Co., 446 U.S. 608, 616-17 (1980)("Where Congress explicitly enumerates certain exceptions to a general [rule], additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent.")

Defendants contend that plaintiff's claim for breach of the duty of prudence is barred by Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409 (2014).  Dudenhoeffer established that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule."  573 U.S. 409, 426 (2014).  Plaintiff's claim is not premised on an allegation that defendants misvalued Verizon stock.  Rather, she claims that defendants' failure to order divestiture of Verizon stock exposed her to a concentration risk that was not reflected in the stock price.  This claim is not barred by Dudenhoeffer.

Defendants submit that ERISA's drafters "did not contemplate a failure-to-diversify claim . . . where correlated stocks make up at most 17.7% of a plan's assets."  Def. Reply at 8.  But whether the investments of the Plan were insufficiently diversified is a question of fact unsuitable for determination at this stage and, accordingly, I do not address defendants' argument.

D. Claim Against Frontier

Defendants move to dismiss plaintiff's claim that Frontier owed fiduciary duties to the Plan.  A fiduciary is one who "has any discretionary authority or discretionary responsibility in [a plan's] administration."  29 U.S.C. § 1002(21)(A)).  I decline to dismiss Frontier as a defendant at this stage because a plan sponsor who appoints a plan's named fiduciaries exercises such authority.  See 29 C.F.R. § 2509.75-8 (quoting 29 U.S.C. § 1002(21)(A)) (When "the board of directors [is] responsible for the selection and retention of plan fiduciaries," its members "exercise 'discretionary authority or discretionary control respecting management of such plan'").  The fiduciary duty arising from the power to appoint is the duty to monitor named fiduciaries "to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."  Id.

Plaintiff also seeks to hold Frontier responsible for its employees' alleged breaches as if they were Frontier's own under a theory of respondeat superior.  There is a circuit split regarding whether ERISA recognizes this form of liability; the Second Circuit has not addressed the issue.  See In re Bank of Am. Corp. Sec., Derivative & ERISA Lit., 756 F. Supp. 2d 330, 347 (S.D.N.Y. 2010).  I join most district courts in this Circuit in declining to do so.  See, e.g., id.  As the Supreme Court has observed, "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute. . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."  Russell, 473 U.S. at 146.

## IV. Conclusion

Accordingly, the motion to dismiss is hereby granted in part and denied in part.  The motion is granted as to any claims for alleged breaches of fiduciary duty that took place before September 11, 2012; and any claims against Frontier for breaches of its employees' fiduciary duties under a theory of respondeat superior.  Otherwise, the motion is denied.

So ordered this 20th day of September 2024.


_____/RNC/_____
Robert N. Chatigny
United States District Judge